## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-3268-CMA-KMT

JUANITA RAMOS, individually and derivatively on behalf of defendant WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES,

      Plaintiff,

v.

WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES, FOLIUM EQUITY HOLDING LLC, KASHIF SHAN, and QUAN NGUYEN,

      Defendants.

---

## FIRST AMENDED VERIFIED COMPLAINT

---

Plaintiff Juanita Ramos, on behalf of herself individually and derivatively on behalf of Whole Hemp Company LLC d/b/a Folium Biosciences hereby alleges and verifies the following allegations, based upon her personal knowledge and her investigation and investigation by counsel:

### PRELIMINARY STATEMENT

1.     Plaintiff Juanita Ramos was recruited by Defendant Whole Hemp Company LLC (d/b/a Folium Biosciences) ("Folium") to move from Utah to Colorado Springs to become a senior executive at the company.

2.     Folium is a producer, manufacturer, and distributor of bulk cannabinoid extracts ("CBD") derived from hemp. Folium supplies wholesale CBD, including CBD Oil and Isolates, to various companies to use in their CBD infused products.

3.     Ramos was hired to help guide Folium in working with government agencies.  She agreed to work at the company – and eventually to take equity in Folium – on the understanding that Folium was trying in good faith to provide a legal product to a new market.

4.     Ramos, however, came to learn that Folium was being used by its two largest shareholders and most senior officers, Defendants Kashif Shan and Quan Nguyen, to line their pockets through a criminal enterprise.

5.     Since leaving Folium, Ramos and Counsel have undertaken additional investigation and learned of more criminal activity (although likely not all of it).

6.     As alleged herein, Kashif Shan and Quan Nguyen, through Folium, have engaged in the following illegal conduct:

   a.     Transporting illegal hemp biomass (*i.e.*, biomass containing over the legal limit of 0.3% THC) across state lines, from which they extracted CBD products for distribution.

   b.     Knowingly shipping CBD products with mislabeled ingredients through U.S. and international commerce. They used US Mail, Federal Express, and UPS DHL to ship mislabeled products, which failed to identify, for example, non-food grade materials that were included in those products.

   c.     Altering Certificates of Analysis ("COA") to show that Folium's CBD Oil and Isolates were essentially free of THC, when in fact they were not.

   d.     Illegally shipping CBD Oil and Isolates to foreign countries, and knowingly preparing fraudulent certificates to foreign customers and governments that Folium's CBD Oil and Isolates met international standards when they did not.

e.      Operating a secret, unlicensed and unpermitted extracting facility when their initial facility was red tagged by the Hazmat department of the Colorado Springs Fire Department.

7.      In addition, through Folium, Kashif Shan and Quan Nguyen have defrauded investors, employees, the Internal Revenue Service, and members of Folium (including Ramos) by (among other things):

a.      Falsely representing that the company was in compliance with the law, and omitting information about the illegal activity described above.

b.      Diverting a substantial percentage of Folium's CBD products for personal sale, with the proceeds ending up in the bank accounts of Shan, Nguyen and their immediate relatives.

c.      Changing numerous employees, without notice or consent, from W-2 employment to independent contractors (and in one case vice versa), even though the employees' responsibilities did not change. Shan and Nguyen knew that the employees' classification should not change but they knew or directed this change in order to preserve cash through tax evasion.

d.      Promising equity grants to senior employees and then failing to make those grants, and failing to make distributions in violation of their fiduciary duties.

8.      To cover up their crimes, Shan and Nguyen used Folium employees, including its counsel, to engage in illegal surveillance of employees. In violation of federal and state law (and Folium's own policy), Shan and Nguyen had Folium employees install video and audio devices throughout their facility to intercept employee communications, without their consent. Shan admitted to Ramos, for example, that Folium's security services had "cloned" her personal cell

phone and tracked her car with GPS because they believed she was speaking with third parties about illegal conduct at Folium.

9.      Shan and Nguyen terminated Ramos in order to keep her quiet, and to keep their scheme going. They believed that Ramos would reveal or had revealed their schemes to the authorities. In response, they fired her without cause on false pretenses. Prior to firing her, they directed the filing of a fraudulent police report falsely alleging that Ramos was involved in a "murder for hire" plot of Folium's general counsel. Their goal was to cover up their scheme by preemptively discrediting her statements to the police about what actually happened: that Shan and Nguyen had asked her to find someone to kidnap or kill a former employee with whom they had a dispute.

10.     These illegal activities are ongoing and will continue absent Court intervention.

11.     In addition to these illegal activities, Ramos brings claims concerning Shan and Nguyen's purported attempt to sell Folium without her consent.

12.     At Shan and Nguyen's direction, Folium recently purported to sell 100% of its equity to a new company called Folium Equity Holding LLC ("Folium Equity Holding"), presumably also controlled by Shan and Nguyen. Although she owned a 1% membership interest, Folium never sought Ramos' permission and she never provided her consent to this sale. This purported sale must therefore be declared invalid. *See* C.R.S. § 7-80-401(2) (requiring consent of every member to "[a]mend the articles of organization", "[a]mend the operating agreement" or to "[a]uthorize an act of the limited liability company that is not in the ordinary course of the business of the limited liability company.").

13.     This purported transaction also serves as a ground for judicial dissolution of Folium and the establishment of a receivership. It is "not reasonably practicable to carry on the business of the limited liability company in conformity with the operating agreement of said company" both due

4

to the illegal conduct described herein and also, as a separate and independent ground for dissolution, because the business cannot be carried on in conformity of the company's operating agreement with Ramos when it has purported to sell Ramos' shares to another company. C.R.S. § 7-80-810(2).

14.     Ramos brings all of the claims below on her own behalf and brings certain claims also derivatively on behalf of Folium. Defendants have violated numerous state and federal laws at her expense and the expense of the other minority members of Folium, including violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"); the Colorado Organized Crime Control Act, C.R.S. § 18-17-101 et seq., ("COCCA"); and the Wiretap Act, 18 U.S.C. § 2511 et seq, among others.

15.     Defendants also breached their contract with her and breached their fiduciary duties to Ramos and other members.

16.     Ramos seeks damages on behalf of herself and Folium, trebled, declaratory relief, judicial dissolution, and injunctive relief, including the removal of Shan and Nguyen from their positions of power at Folium and a return of all assets from Folium Equity Holding to Folium.

## PARTIES

17.     Plaintiff Juanita Ramos ("Ramos") is an individual with a primary residence in Colorado Springs, Colorado.

18.     Defendant Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium") is a Colorado limited liability company with a principal place of business located at 615 Wooten Road, Suite 110, Colorado Springs, CO 80915.

19.     Defendant Folium Equity Holding LLC ("Folium Equity Holding") is a Colorado limited liability company also with a principal place of business located at 615 Wooten Road, Suite

110, Colorado Springs, CO 80915. It was formed on December 16, 2018, *i.e.*, after Ramos became a member of Folium.

20.     Defendant Kashif Shan ("Shan") is an individual residing in Colorado Springs, Colorado.  Shan is the Chief Executive Officer of Folium and also the controlling equity holder of Folium. Shan dominates Folium's internal and corporate affairs.

21.     Defendant Quan Nguyen ("Nguyen") is an individual residing in Colorado Springs, Colorado.  Nguyen is the Vice President of Operations of Folium and, after Shan, the largest equity holder in Folium.

**ALLEGATIONS RELATING TO DERIVATIVE STANDING**

22.     As described below, Ramos has been a member of Folium since July 28, 2017. The events described herein occurred throughout the time that she has been a member, and before and after her employment.

23.     This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

24.     Shortly before filing this Complaint, on November 18, 2019, Ramos made a demand on Folium to bring suit against Shan and Nguyen relating to the allegations in this Complaint. She made a demand by sending a copy by Federal Express to its registered agent, and also emailing, Stan Garnett of Brownstein Hyatt Farber Schreck LLP, who is counsel for Folium, Shan and Nguyen. She also sent a copy by Federal Express to the registered agent of Folium Equity Holding LLC, which purports to own 100% of Folium.

25.     Exhibit A to this Complaint is a true and correct copy of the demand. Contrary to the representations in the initial Answer and Counterclaims, Ramos did <u>not</u> send her prior state court complaint as a demand letter. She sent her unfiled <u>federal</u> complaint, and the day after it was

made, Folium's in-house counsel asked about the <u>federal</u> complaint that he had received in her demand letter.

26.    Demand, although it was properly made, is futile. Shan and Nguyen so dominate the company that there is no prospect that they will undertake an independent investigation.

27.    Indeed, Shan and Nguyen have gone to great lengths to intimidate other former employees who have raised concerns about their conduct.

28.    When a former employee, Ryan Lewis, had a dispute with Shan and Nguyen, Shan asked Ramos to hire someone to kidnap Lewis. Ramos refused. He then approached her a few days later and asked her to find someone to kidnap and murder Ryan Lewis.  She again refused.

29.    On August 9, 2019, a demand was made on the company, Shan, and Nguyen by undersigned counsel on behalf of another former employee, Dale Takio.  The demand identified some of the same allegations below, relating to Shan and Nguyen's self-dealing. Rather than investigate the allegations, the company responded by filing a complaint against Mr. Takio on August 20, 2019. (The parties are currently litigating in state court.).

30.    Irreparable injury to Folium would result from waiting for the expiration of the statutory thirty-day waiting period prior to bringing suit. The criminal conspiracy set forth herein is ongoing and Shan and Nguyen are likely to cause Folium to commit numerous crimes if the Court does not intervene.

31.    Further, Shan and Nguyen are likely to take steps to cover up their criminality, as they have on prior occasions (including opening a secret extraction facility to evade an order by the Colorado Springs Fire Department to shut down). Shan once told Ramos that he would engage in "Jewish Lightning" if he was found out. Ramos asked for an explanation since she had not heard of

that term, and it seemed on its face offensive and derogatory. Shan responded, "blowing the motherf\*\*\*er up."

32.     They are also likely to take steps to remove their assets from the reach of Folium. On the first business day after Mr. Takio sent his demand to Folium, Shan transferred title to his house (assessed at over $1.5 million) to a limited liability company called "Motu LLC" for no value. On information and belief, Shan continues to live at that residence.

33.     Given Shan's prior solicitation of Lewis' murder, his fraudulent transfer of assets upon receipt of a prior related derivative demand, his threats to Ramos (described herein), Ramos' safety is at risk if she is required to wait thirty days to file this lawsuit and Folium's ability to recover anything from Shan shall be greatly diminished.

34.     Ramos fairly and adequately represents the interests of members who are similarly situated in enforcing the rights of Folium against Shan and Nguyen. Most of the factual allegations in this Verified Complaint are based on Ramos' knowledge or on information that she personally obtained from current and former employees.

## JURISDICTION AND VENUE

35.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises from the laws of the United States.

36.     This Court also has supplemental jurisdiction over the state law claims in this matter pursuant to 28 U.S.C. § 1367(a) because they are so related to claims in the action within the Court's original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

37.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the corporate defendants (Folium and Folium Equity Holding) have their principle places of business in this state

and are subject to its jurisdiction, and the individual defendants reside in this District. Further, a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Ramos' Employment at Folium

38.     In April 2017, Shan and Nguyen approached Ramos about working for Folium. Ramos lived in Utah at the time.

39.     Shan and Nguyen represented to her, as they have to the public, that Folium is the largest fully vertical cannabinoid extractor and producer in North America. That is, it purportedly grows its own hemp crop and extracts CBD products from that hemp to sell to the market.  In other words, Folium claims that it owns and controls its entire supply chain from seed to sale. They also claim that Folium is the largest vertically integrated distributor of CBD products in the world.

40.     Ramos agreed to join Folium in or around April 25, 2017, and to move to its headquarters in Colorado Springs. She became Folium's Executive Vice President of U.S. and Foreign Government Affairs.

41.     About two months after she began working at Folium, Shan said that he would reward her for her outstanding performance at the Company. Further, Shan sought to incentivize her to continue working at this high level.

42.     Specifically, as a reward for her prior performance and as an incentive to continue at her prior high level, he and the other members of Folium granted Ramos a 1% membership interest in Folium. The 1% membership interest was to be transferred from Shan's membership interest holdings in Folium.

43.     Shan promised that Ramos would receive monthly distributions based on her membership interest in Folium, "just like everybody else".

44. Ramos' membership interest in Folium was memorialized by a document titled "Written Consent of the Majority of the Members of Whole Hemp Company LLC," that was "Effective as of July 28, 2017" (the "Written Consent"). A copy of the Written Consent is attached to this Complaint as Exhibit B.

45. In the Written Consent, Ramos agreed to be bound by Folium's Operating Agreement (the "Operating Agreement"). However, the Operating Agreement was never provided to Ramos.

46. Ramos was also not initially provided the Written Consent after she had signed it. She waited until Nguyen left the office with a bag of cash (discussed more below), took it from his desk, made a copy for herself and then returned it to his desk. She left the building with the copy of the Written Consent that is at Exhibit B.

47. Defendants have alleged in their Answer and Counterclaims that this is a forged document and alleged that Ramos signed a different document. This is false. To the contrary, Defendants, consistent with their regular practice of forging documents to numerous government agencies, have forged Ramos' signature to a document that she did not sign and attached it as an exhibit to their Answer and Counterclaims.

48. Defendants have also falsely asserted that the signature pages on the Written Consent represent signatures for the operating agreement of a different limited liability company, Sacred Roots of Healing, LLC ("Sacred Roots"). They are not.

49. Defendants have also falsely alleged that Ramos purportedly had formed Sacred Roots and "attempted to persuade Folium to use the entity as a hemp oil retail brand." In fact, Shan and Nguyen formed Sacred Roots to create and sell Folium's product on Native American

reservations believing it would significantly increase revenue, boost image and expand distribution in casinos.

50.     Regardless, the Written Consent is what Ramos was provided by Shan to sign and she was told by Shan that this was the document that would allow her to become a member. It was the only document that she was given to sign. Ramos was identified on the cap table as a 1% member internally and also to other investors.

51.     Ramos asked for the Operating Agreement from Shan and Nguyen on several occasions, but they would not provide it to her. They said that they were still working on it.

52.     Ramos has never withdrawn from the Operating Agreement, or otherwise disclaimed her membership interest in Folium. Her membership interest was never purchased by other members or repurchased by Folium.

53.     Ramos received one distribution check of $10,000 in May 2018.  She received no other distributions or dividends on her equity in Folium.

54.     On behalf of Folium, Shan terminated Ramos on August 28, 2018. The basis on which Shan purported to terminate Ramos was false. He falsely accused her of stealing from the company and working with competitors.

55.     In fact, Shan terminated Ramos in retaliation for her refusal to go along with the illegal conduct in which Shan was engaged, including the kidnapping or murder of Ryan Lewis. Shan was also concerned that Ramos would report on the illegal activity she witnessed at Folium to government agencies and others.

56.     During the meeting, Shan admitted, among other things, that Folium had cloned Ramos' phone and surreptitiously placed a GPS system in her car.

57.     Shan said that she should work with Folium counsel on her severance package and suggested that she "not fight it." He further said that if she did fight him, he would, "smear her from coast to coast" and ruin her relationships with government lawmakers in every state.

58.     When Ramos followed up with Folium counsel on a severance package, he denied that she had any equity in the company and refused to discuss severance with her. Ramos has received no distributions other than the distribution in May 2018.

59.     Ramos has received no information for members of Folium.

60.     Ramos' experience is common. Shan has promised a number of senior employees and independent contractors that they will be compensated for the services they provide to Folium through equity grants and distributions thereon, only to fail to either issue the equity promised or to pay the promised distributions.

**B.  The Criminal Conspiracies of Shan and Nguyen**

61.     Shan and Nguyen are directors and officers of Folium. They also dominate the company's corporate affairs.  They owed the minority members (including Ramos) the fiduciary duties of due care and loyalty.

62.     Ramos learned while she was employed by Folium that Shan and Nguyen have been engaged in extensive criminal conspiracies to enrich themselves, at the expense of members (such as herself) and in violation of law.

63.     Since leaving Folium, Ramos (herself or through counsel investigation) has learned of additional criminal conduct.

1. <u>Shan and Nguyen Have Used Folium to Engage in Trafficking of Illegal Narcotics Across State Lines</u>.

64.     Under both the 2014 Farm Bill and the 2018 Farm Bill, hemp is defined as the cannabis sativa plant with less than 0.3% delta-9-tetrahydrocannabinol, which is commonly known as THC.

65.     The 2018 Farm Bill specifically removed hemp (again, defined as cannabis with less than 0.3% THC) from the list of Schedule 1 Narcotics as defined in the Controlled Substances Act.

66.     Cannabis with more than 0.3% THC remains a Schedule 1 Narcotic, meaning that on the Federal Level it is illegal to grow, manufacture, distribute, dispense, transport, or purchase, among other things.

67.     One problem with hemp, however, is that the plant can grow "hot," meaning that a cannabis sativa plant designed to be grown and sold legally as hemp can grow to have above the 0.3% THC threshold.  The 2018 Farm Bill provides certain safe guards for this problem, but in general, hemp that grows "hot," (i.e., above the 0.3% THC threshold), is supposed to be destroyed because it is characterized as an illegal Schedule 1 Narcotic. Even in States where cannabis is permitted to be sold under state law (such as Colorado), hemp that grows "hot" still must be destroyed because a different license, and a more rigorous review process, is required in order to legally grow cannabis with more than 0.3% THC.

68.     Folium has falsely represented itself to the public as a "fully vertically integrated" manufacturer of CBD products.

69.     While Folium claims to own the farms that grow all of its hemp biomass, that is not, in fact, true.  Instead, Folium buys most or all of its hemp biomass from third party farmers or intermediaries.

70.     In 2019 alone, Folium paid over $100,000 to the Kight Law Firm for purported "biomass".

71.     Because Folium does not own and control all of its own hemp farmers, from time to time, Folium has lacked the biomass necessary to meet the demand for its finished products.

72.     In order to meet demand, Shan and Nguyen have conspired at certain times to purchase cannabis with above the 0.3% THC threshold, move that cannabis across state lines and then order that the product be extracted from those plants.

73.     As recently reported in an article in Cannabis Law Report, in August 2018, Shan brokered a sale of illegal hemp biomass in California and then had his employees transfer the biomass to Colorado Springs.

74.     While she was employed at Folium, Ramos witnessed a discussion about this transaction. She saw an employee (Employee A) state to Nguyen that another employee (Employee B) had been directed to move such cannabis (*i.e.*, of more than 0.3% THC) from California to Colorado, and that Employee A (as directed) had extracted CBD oil from that cannabis even though Nguyen knew it was illegal to do so.

75.     In a separate incident, two employees purchased illegal hemp biomass in Kentucky and drove it non-stop for two days to Colorado, so that it would be extracted by Folium. The employees did not know that it was "hot" but Shan did.

76.     Even with normal hemp with THC below the 0.3% threshold, Folium's extraction process separates the THC from the cannabis.

77.     Because Folium has been certified by the Colorado Department of Public Health and Environment ("CDPHE") as THC-Free and been issued a Certificate of Health and Free Sale, it is required to log all THC that it has extracted on a monthly basis.  In addition, while the sale of

products with THC in them is legal in Colorado, because Folium does not have a license to sell products containing more than 0.3% THC, Folium is required to dispose of that THC in a specific manner, and to document that disposal.

78.     In situations where Folium purchased and extracted cannabis with THC in excess of the 0.3% threshold, Folium could not log or dispose of that THC in the usual manner because the elevated THC levels would have raised red flags with the CDPHE.  As a result, in this scenario, Shan and Nguyen directed Folium employees to dump the extracted THC onto Folium's driveway, at 828 Wooten Road in Colorado Springs, or into the garbage.

    2.   <u>Shan and Nguyen Have Used Folium to Run an Unlicensed Manufacturing Facility</u>.

79.     In September 2018, Folium's primary manufacturing facility at 615 Wooten Drive in Colorado Springs was closed on order of the Colorado Springs Fire Department.

80.     Rather than remedy the problems that caused the facility to be closed, Shan and Nguyen took a different tack and decided to open a secret, unlicensed, unpermitted, illegal extraction facility at a farm owned by a family member of a Folium employee.

81.     At Shan and Nguyen's direction, Folium quickly moved its extractor and began secretly extracting at a new, unlicensed facility at 20094 Highway 50, Rocky Ford, Colorado 81067. It is known internally at Folium as "The Burrito Factory".

82.     Folium does not have a license to extract at this facility in Rocky Ford, Colorado.

83.     This facility in Rocky Ford does not have proper permits to extract hemp.

84.     At Shan and Nguyen's direction, Folium for months has thus been engaged in illegal extraction and manufacturing of CBD products. This is a blatant violation of federal and state law.

85.     In addition, this means that potentially all products manufactured and sold during this period were misbranded and illegal.

3.   Folium Distributes CBD Products That Are Mislabeled

86.     Folium advertises its products as "THC Free". It has sent, via U.S. Mail, Federal Express, and UPS DHL Express, Certificates of Analysis ("COAs") to government agencies and customers certifying that its CBD products contain 0.0% THC.

87.     In reality, many of these COAs are doctored by Folium, at Shan and Nguyen's direction or knowledge, because the Certificates of Analysis show that the products are not THC Free.

88.     Folium also sells finished CBD products and it provides ingredient lists to customers.

89.     At Shan and Nguyen's direction or knowledge, Folium knowingly provides false and incomplete ingredient lists to customers. In particular, Folium includes bulk cosmetics products in its HydroPCR product. Its HydroPCR product is sold to customers to dissolve in liquids for a CBD-enhanced beverage.

4.   Shan and Nguyen Are Directing That Folium Sell Products in International Markets That Violate the Drug Laws of Those Countries.

90.     Shan and Nguyen have also sought to sell Folium's CBD products in countries that prohibit their product, i.e., Japan and the European Union.

91.     Japan and the European Union only permit the sale of CBD products that are extracted from the seed, stalk or stem of the hemp plant. The laws in these countries specifically prohibit the importation and sale of products derived from hemp flower or the fruiting tops of the cannabis plant.

92.     Like most extraction companies, Folium extracts its CBD Oil and Isolate from the flower and fruiting top of the hemp plant.  In fact, it would be nearly impossible to obtain the

16

volume of CBD Oil and Isolate sold by Folium without using the flower or fruiting tops of the

plant.  This is because hemp seeds do not contain CBD and the stalks and stems of the plant contain

only negligible amounts. As a result, in order to produce the volume of oil that Folium produces and

sells, it would require tens or hundreds of times the amount of biomass it currently uses.

93.     These prohibitions have kept most CBD companies from doing business in Japan

and the European Union.  But they did not deter Shan and Nguyen.

94.     Instead, Shan and Nguyen directed the sale of Folium's CBD Oil and Isolate to these

countries.  Shan and Nguyen directed Folium employees to alter the COAs that were submitted to

Japanese and European Union customers and government officials, including altering the pictures of

the product contained in those COAs. The COAs, as altered, falsely represented the CBD products

being shipped were extracted from the seed, stalk, or stem, when in fact the CBD products were

being extracted from other parts of the plant. In fact, the stalk, stem and seed were excluded from

extraction because they would jam the machine.

95.     Shan and Nguyen directed Folium employees to sign false COAs that Folium's

products complied with the laws of Japan and the European Union when in fact they did not.

96.     In addition, Shan and Nguyen directed Folium to sell CBD products in Mexico.

Mexico prohibits the import of Folium products for sale but allows "samples" to be imported. Shan

and Nguyen have illegally sold Folium products in Mexico by having their products labeled as

"samples" for import, when in fact they are (as Shan and Nguyen are aware) repackaged for sale on

the Mexican market and sold as +Vita (Plus Vita).

     5.     Shan and Nguyen's Money Laundering and Accounting Fraud.

97.     Shan and Nguyen have been selling a substantial portion of Folium's CBD output

each month directly to customers in cash, without recording the sales on Folium's books and

17

records. The cash is then forwarded to their bank accounts or to the bank accounts of family members or other corporate entities that they control.

98.     The former Chief Financial Officer of Folium informed Ramos, while he and Ramos were still employed, that Shan and Nguyen maintain at least three sets of books and records in order to facilitate their fraud on the company and its members.

99.     Ramos shared an office with Nguyen.  At least twice a week, Nguyen took paper bags of large amounts of cash out the door in his backpack

100.    While she was still employed by Folium, Ramos witnessed Shan, Nguyen and certain other Folium officers put CBD Oil and Isolate into their cars that were never recorded. On information and belief, they were selling these products on the open market.

101.    The result of this self-dealing and accounting fraud is that millions of dollars each month have been going into the pockets of Shan and Nguyen and their immediate family when those funds should be going into the company coffers and distributed to members, including Ramos.

102.    Illegal distributions include the following:

    a.     On January 8, 2019, Shan and Nguyen caused $585,070.55 to be transferred from Folium's bank account to Nguyen.  That same day, Shan and Nguyen caused $1,999,921.84 to be transferred to Shan's wife.

    b.     On January 18, 2019, Shan and Nguyen caused $464,745.69 to be transferred to Nguyen.  Also on January 18, 2019, Shan and Nguyen caused $1,664,672.54 to be transferred to Shan's wife.

    c.     In other words, in January 2019 alone, Shan and Nguyen caused $3,664,594.38 to be transferred to Shan's wife and $1,049,816.24 to be transferred to Nguyen.

    d.     In February 2019, Shan received $345,817.78 in distributions, Shan's wife received $2,000,000 in distributions, and Nguyen received $907,000 in distributions.

103.     It would be impossible for these distributions to be the result of legitimate, on the books transactions involving the sale of Folium products because Folium does not generate enough revenue on a monthly basis to allow for such distributions.

104.     The result of this illegal activity was a substantial devaluation of Ramos' membership interest in Folium.

105.     This is also a fraud on the government as it means that Shan and Nguyen are not reporting Folium's full income.

106.     Shan and Nguyen have also repeatedly and haphazardly changed Folium employees' status from W-2 to 1099, without the employees' knowledge and without changing the employees' work responsibilities, and in violation of numerous tax and labor laws.

107.     Changing the status of these employees to 1099 allows Folium to, among other things, stop paying unemployment taxes on those employees.

108.     Folium, at Shan and Nguyen's direction, did the opposite with Ramos – changing her from a 1099 employee to a W-2 employee without her consent – in order to evade taxes.

6.     <u>Shan and Nguyen's Violations of Wiretapping Law</u>

109.     In order to keep their illegal practices secret, Shan and Nguyen have directed Folium security personnel and others to employ illegal surveillance tactics to monitor employees and perceived enemies.

110.     As noted above, Shan admitted to illegally copying and interfering with Ramos' phone, and placing a GPS surveillance device on her car.

111.     Shan and Nguyen have also directed that security personnel install audio and video devices to record employee conversations without their consent.

112.    Recording employees' conversations without their consent is a violation of federal and state eavesdropping laws. *See* 18 U.S.C. § 2511; C.R.S. §§ 18-9-303, 18-9-304.

>   7.    <u>Shan and Nguyen's Retaliation Against Ramos</u>

113.    In or around August 2018, Shan and Nguyen found out from Folium's head of security that Ramos had complained that Folium's general counsel had sought to hire someone to kidnap or kill Ryan Lewis.

114.    They believed that Ramos was going to or had gone to authorities to reveal their scheme. If she did so, their criminal conspiracy would be revealed.

115.    They concocted a plan to discredit Ramos. They preemptively had their general counsel file a false police report asserting that Ramos was involved in a plot by Lewis to murder Folium's general counsel.

116.    Tellingly, however, after speaking with relevant witnesses – and after listening to tapes created by Folium's head of security that corroborated Ramos' story – the Colorado Springs police department quickly closed the case and determined that Ramos was not involved in a plot to murder anybody.

117.    Defendants, however, have used their false allegations to defame Ramos in front of other employees and in the press. They have also falsely asserted that she stole money from the company and that she was planning to work for a competitor. None of this was true and was an attempt to prevent Ramos from coming forward to identify their criminal activities.

118.    Ramos has been damaged by Defendants' actions in covering up their criminal activities, including loss of employment, the loss of her membership interest, the loss of her reputation, and has caused enormous damage to her job prospects going forward.

### C. The Unauthorized Sale to Folium Equity Holding

119.     On December 16, 2018, Folium Equity Holding was formed. The filing with the Colorado Secretary of State shows that its address is the same as Folium headquarters and that the registered agent is Folium's current general counsel, Ric Calzada.

120.     On October 31, 2019, Folium disclosed in a Rule 7.1 Corporate Disclosure Statement in the United States District Court for the Southern District of New York that Folium is a "wholly owned subsidiary" of Folium Equity Holding.

121.     Shan and Nguyen have continued in their positions as senior officers at the company and have continued to dominate the company's affairs. Folium, Shan and Nguyen filed responses to a state court complaint admitting that they still own a majority interest in Folium.

122.     The sale of 100% of all equity interest in Folium to Folium Equity Holding was outside the course of regular business.  Ramos was never provided with information about the transaction, was never provided with compensation for her membership interest, and was never asked to provide her consent to the sale.

123.     Ramos has never consented – and does not consent – to the sale of Folium's equity to Folium Equity Holding.

**FIRST CLAIM FOR RELIEF**
**(Violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.,*
Against Shan and Nguyen)**

124.     Ramos incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

125.     Ramos brings this claim on behalf of herself as an individual, and derivatively on behalf of Folium.

126.    As set forth above, Shan and Nguyen are employed by and associated with an enterprise (*i.e.*, Folium).

127.    Folium ships CBD Oil and Isolate across the United States and across the globe, and thus is engaged in and affects interstate and foreign commerce.

128.    Shan and Nguyen have knowingly conducted Folium's affairs or participated, directly or indirectly, in the conduct of Folium's affairs.

129.    Shan and Nguyen knowingly conducted and participated, directly, or indirectly in Folium's affairs through a pattern of racketeering activity as alleged herein.

130.    The racketeering activity, described herein, includes the following (without limitation):  dealing in a controlled substance or listed chemical (as defined in Section 102 of the Controlled Substances Act); acts that are indictable under 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1957; and the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States.

131.    Shan and Nguyen have derived income, directly or indirectly, from the racketeering activity as principals, and have used those funds to engage in additional racketeering activity.

132.    Shan and Nguyen's illegal activities will continue unless and until they are removed from Folium.

133.    Ramos' membership interest in Folium has been devalued and otherwise damaged by Shan and Nguyen's illegal conspiracy, in an amount to be determined at trial.

134.    Further Shan and Nguyen damaged Ramos directly through acts in furtherance of the conspiracy, including reputational damages, in an amount to be determined at trial. Ramos has been damaged by Defendants' actions in covering up their criminal activities, including loss of

employment, the loss of her membership interest, the loss of her reputation, and has caused enormous damage to her job prospects going forward.

135.    Shan and Nguyen have damaged Folium through their actions in an amount to be determined at trial.

136.    Ramos also seeks injunctive relief, on behalf of herself and on behalf of Folium, to prevent further illegal activity, to remove Shan and Nguyen from their positions at Folium, to reorganize Folium, and to install a court appointed receiver.

## SECOND CLAIM FOR RELIEF
### (Violations of Colorado Organized Crime Control Act, C.R.S. § 18-17-101 et seq., Against Shan and Nguyen)

137.    Ramos incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

138.    Ramos brings this claim on behalf of herself as an individual, and derivatively on behalf of Folium.

139.    As set forth above, Shan and Nguyen are employed by and associated with an enterprise (*i.e.*, Folium).

140.    At least two acts of racketeering occurred within the last ten years and occurred in Colorado.

141.    Shan and Nguyen have knowingly conducted Folium's affairs or participated, directly or indirectly, in the conduct of Folium's affairs.

142.    Shan and Nguyen knowingly conducted and participated, directly, or indirectly in Folium's affairs through a pattern of racketeering activity as alleged herein.

143.    The racketeering activity, described herein, includes the following (without limitation):  racketeering activity under 18 U.S.C. § 1961 (as described above); wiretapping and

eavesdropping in violation of C.R.S. §§ 18-9-303 and 18-9-304; Fraud upon the Department of Revenue, C.R.S. § 39-21-118; Offenses relating to Controlled Substances, and violation of the Telecommunications Act, C.R.S. § 18-9-309.

144.    Shan and Nguyen have derived income, directly or indirectly, from the racketeering activity as principals, and have used those funds to engage in additional racketeering activity.

145.    Shan and Nguyen's illegal activities will continue unless and until they are removed from Folium.

146.    Ramos' membership interest in Folium has been devalued and otherwise damaged by Shan and Nguyen's illegal conspiracy, in an amount to be determined at trial.

147.    Further Shan and Nguyen damaged Ramos directly through acts in furtherance of the conspiracy, including reputational damages, in an amount to be determined at trial. Ramos has been damaged by Defendants' actions in covering up their criminal activities, including loss of employment, the loss of her membership interest, the loss of her reputation, and has caused enormous damage to her job prospects going forward.

148.    Shan and Nguyen have damaged Folium through their actions in an amount to be determined at trial.

149.    Ramos, on behalf of herself and derivatively on behalf of Folium, also seeks injunctive relief to prevent further illegal activity, to remove Shan and Nguyen from their positions at Folium, and to install a court appointed receiver to end Folium's illegal activity under this Court's supervision.

**THIRD CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty,**
**Against Shan and Nguyen)**

150.     Ramos incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

151.     Ramos brings this claim on behalf of herself as an individual, and derivatively on behalf of Folium.

152.     As directors and officers of Folium, Shan and Nguyen owe duties of loyalty and care, among others, to the minority members of Folium (including Ramos).

153.     As directors and officers of Folium, Shan and Nguyen owe to Folium the duties of loyalty, among others.

154.     Shan and Nguyen have breached those duties to Ramos and to Folium by, among other things:

      a.     Engaging in illegal conduct, as described in detail above.

      b.     Engaging in self-dealing, including but not limited to paying themselves millions of dollars in distributions per month, while paying none to certain minority members (including Ramos).

      c.     Engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law, including selling a substantial portion of Folium's monthly output for cash, off Folium's books and records, and maintaining fraudulent books and records.

      d.     Failing to execute their rights and duties consistent with the contractual obligation of good faith and fair dealing.

e.      Failing to obtain member consents before transferring all of Folium's equity to Folium Equity Holding.

155.    As a result of the breaches of fiduciary duties by Shan and Nguyen, Ramos has been damaged in an amount to be determined at trial. Further, a constructive trust should be placed on the funds and property transferred, without authority, to or by Shan and Nguyen.

156.    Folium was been damaged by the breaches of fiduciary duty by Shan and Nguyen in an amount to be determined at trial.

157.    Ramos, on behalf of herself and on behalf of Folium, also seeks equitable relief requiring that (i) Shan and Nguyen stop engaging in illegal conduct and are removed from their positions at Folium, (ii) Shan and Nguyen stop selling Folium's CBD products for cash, unless such monies are properly transferred to Folium's bank accounts and properly recorded on the books and records, and (iii) they maintain Folium's books and records consistent with their fiduciary duties.

## FOURTH CLAIM FOR RELIEF
### (Violation of Wiretapping Act, 18 U.S.C. §§ 2511, 2520, Against Shan, Nguyen and Folium)

158.    Ramos incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

159.    Shan, Nguyen and Folium, by their own admission, "cloned" Ramos' phone.  That is, they intentionally intercepted, endeavored to intercept, and/or procured another person to intercept or endeavor to intercept the wire, oral, or electronic communications on her cell phone. Ramos provided no authorization to Defendants to engage in this conduct.

160.    Ramos has been damaged by Defendants' conduct.

161.     Ramos is entitled to the greater of actual damages and profits made by Defendants as a result, and $10,000; appropriate preliminary, equitable, and declaratory relief; her attorneys' fees and costs; and punitive damages.

### FIFTH CLAIM FOR RELIEF
### (Breach of Contract,
### Against Shan, Nguyen and Folium)

162.     Ramos incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

163.     Ramos, Folium and the other members of Folium (including Shan and Nguyen) formed a contract, *i.e.*, the Written Consent.

164.     Folium and its members (including Shan and Nguyen) breached the terms of the Written Consent by, among other things, failing to issue the promised equity to Ramos, or to pay the monthly distributions she was owed.

165.     Folium, Shan and Nguyen have also breached the duty of good faith and fair dealing inherent in all contracts.

166.     As a result of Defendants' breach of the Written Consent, Ramos has been damaged in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### (Declaratory Judgment under 28 U.S.C. § 2201 & C.R.S. §§ 13-51-101 et seq.,
### Against Folium, Shan, Nguyen, and Folium Equity Holding)

167.     Ramos incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

168.     Ramos has an interest in Folium established by a writing (*i.e.*, the Written Consent) and seeks a determination of that right.

169.     Specifically, Ramos has an equitable interest of 1% in Folium. Folium, Shan, and Nguyen have denied the existence of that right.

170.     Ramos seeks a declaration to resolve the controversy and to determine that she has a 1% membership interest in Folium pursuant to the Written Consent.

171.     Further, Ramos did not (and does not) provide her consent to the sale of Folium to Folium Equity Holding. Absent her consent, the sale was not permitted. *See* C.R.S. § 7-80-401(2).

172.     The Court should therefore issue a declaratory judgment that (a) Ramos owns a 1% membership interest in Folium, (b) the sale of Folium membership interests to Folium Equity Holding was null and void, and (c) any other action taken by Shan or Nguyen outside of the normal course of business to which Ramos did not provide her consent is null and void.

### SEVENTH CLAIM FOR RELIEF
**(Accounting and Member Communications,
Against Folium, Shan and Nguyen)**

173.     Ramos incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

174.     Ramos is entitled to an accounting of Folium, including financial statements and records of the board.

175.     Ramos is entitled to communications issued by Shan and other members of management to the other equity holders of Folium.

### EIGHTH CLAIM FOR RELIEF
**(Judicial Dissolution,
Against Folium)**

176.     Ramos incorporates the allegations in the paragraphs above, inclusive, as if fully set forth herein.

177.     Ramos is a member of Folium and holds a 1% interest.

178.    It is not reasonably practicable to carry on the business of Folium in conformity with its operating agreement because of the illegal activities to which Folium has been engaged, at the direction of Shan and Nguyen.

179.    As a separate ground for dissolution, it is not reasonably practicable to carry on the business of Folium in conformity with its operating agreement because Shan and Nguyen have purported to sell the membership interest in Folium to Folium Equity Holding without the consent of all of its members.

180.    Ramos asks the Court to issue injunctions, appoint a receiver or custodian pendente lite with all powers and duties the court directs, take other action required to preserve the limited liability company's assets wherever located, and carry on the business of the limited liability company until a full hearing can be held.

## JURY DEMAND

Ramos hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the judgment be entered on her Complaint and in her favor against all Defendants on all claims for relief as follows:

    a.    Awarding her injunctive relief against Defendants, including removing Shan and Nguyen from positions at Folium and cancelling the membership interests, and prohibiting Shan, Nguyen, and Folium from further violations of law;

    b.    Appointing a Receiver pursuant to Fed. R. Civ. P. 66 and C.R.S. § 7-80-812 to run the operations of Folium until such time as its business is wound up;

    c.    Awarding her actual and compensatory damages, in an amount to be determined at trial;

    d.    Awarding her declaratory relief concerning her rights with respect to the Defendants as to the subject matters of her claims for relief;

e.   Awarding her declaratory relief invalidating the transfer of Folium's membership interests to Folium Equity Holding;

f.   Awarding her treble damages;

g.   Awarding her punitive damages;

h.   Awarding her an accounting;

i.   Awarding damages (including treble damages and any exemplary damages) to Folium;

j.   Awarding injunctive relief to Folium;

k.   Awarding pre- and post-judgment and moratory interest, costs incurred and reasonable attorneys' fees as authorized by law; and

l.   Granting such other and further relief as the Court may deem just and proper.

Dated this 31st day of January, 2020.

Respectfully submitted,

FORTIS LAW PARTNERS, LLC

_s/ David F. Olsky_
Henry M. Baskerville, Atty. Reg. #49431
David F. Olsky, Atty Reg. #46694
1900 Wazee Street, Suite 300
Denver, CO 80202
Phone Number: (303) 565-8066
Fax Number: (303) 295-9701
hbaskerville@fortislawpartners.com
dolsky@fortislawpartners.com

*Attorneys for Plaintiff*

### Rule 23.1 Verification

I, Juanita Ramos, am the named Plaintiff to this action.  I am a member of Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium") and have been at all times from July 28, 2017 forward.  I approve the filing of this Complaint. I have reviewed the allegations made in this Amended Verified Complaint and state that the matters stated therein about which I have personal knowledge are true, and that the other matters stated therein are true and accurate to the best of my knowledge, information and belief, based upon my investigation (including my communications with current and former Folium employees and materials I have received from them), and investigation conducted by counsel. Having received a copy of this Verified Complaint, having reviewed it with my counsel, I hereby authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this $20$ day of January, 2020.

Juanita Ramos

31

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2020, I electronically filed the foregoing **FIRST AMENDED VERIFIED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Perry R. Sanders Jr.
Justin T. Bailey
Sanders Law Firm
31 N. Tejon, Suite 400
Colorado Springs, CO 80903
PRSanders@PerrySandersLaw.com
justin@perrysanderslaw.com
*Attorneys for Defendants*

                                        *s/Nicole Vanhooser*
                                        Nicole Vanhooser
                                        FORTIS LAW PARTNERS LLC