**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-03268-CMA-KMT

---

JUANITA RAMOS, *individually and derivatively on behalf of defendant Whole Hemp Company LLC d/b/a Folium Biosciences*,

    Plaintiff,

v.

WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES,
FOLIUM EQUITY HOLDING LLC,
KASHIF SHAN, and
QUAN NGUYEN,

    Defendants.

---

WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES,
FOLIUM EQUITY HOLDING LLC,
KASHIF SHAN,
and QUAN NGUYEN,

    Counterclaim-Plaintiffs,

v.

JUANITA RAMOS,

    Counterclaim-Defendant.

---

**DEFENDANTS' AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

---

## ANSWER[1]

Defendants Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium"),

Folium Equity Holding LLC ("Folium Equity"), Kashif Shan ("Shan"), and Quan Nguyen

("Nguyen") (individually and collectively, "Defendants"), by and through their

undersigned counsel, submit their Amended Answer and Affirmative Defenses in

response to the First Amended Verified Complaint (Dkt. No. 31) (the "Amended

Complaint") filed by Plaintiff Juanita Ramos ("Ramos" or "Plaintiff") and allege as

follows:

## PRELIMINARY STATEMENT[2]

1.      Defendants admit that Ramos was recruited to work for Folium by the

company as a result of her exaggerations and misrepresentations regarding her

background and experience with regulatory agencies and in the cannabis industry.

Defendants further admit that they understood that Ramos moved from Utah to

Colorado Springs in or about April 2017 to work for Folium. Defendants deny the

remainder of the allegations set forth in paragraph 1 of the Amended Complaint.

2.      Defendants admit the allegations set forth in paragraph 2 of the Amended

---

[1] Concurrently with this Amended Answer and Affirmative Defenses, Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium"), in its capacity as Nominal Defendant, will file a motion to dismiss the derivative claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 and C.R.S. § 7-80-714 in lieu of answering the Amended Complaint.

[2] Defendants have included the headings and subheadings listed in the Amended Complaint to assist in reading the pleadings and in doing so make no admission or concession about the accuracy of those headings.

Complaint.

3.      Defendants admit that Ramos was hired by Folium to assist the company in working with government agencies as a result of her exaggerations and misrepresentations regarding her background and experience with regulatory agencies and in the cannabis industry. Defendants lack knowledge or information sufficient to form a belief as to Ramos' understanding when she agreed to work for Folium, and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 3 of the Amended Complaint.

4.      Defendants deny each and every allegations set forth in paragraph 4 of the Amended Complaint except admit that Shan and Nguyen are the largest shareholder-members of Folium Equity and that Shan is the Chief Executive Officer and Nguyen is the Senior Vice President of Business Development of Folium.

5.      Defendants lack knowledge or information sufficient to form a belief as to any investigation or information obtained by Ramos or her counsel, and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 5 of the Amended Complaint.

6.      Paragraph 6 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 6 of the Amended Complaint.

7.      Paragraph 7 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 7 of the Amended Complaint.

8.     Paragraph 8 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 8 of the Amended Complaint, except admit that Folium, like many other business, installed video cameras throughout their facilities, some of which have audio capability, but deny that any such cameras were in violation of federal or state law, or Folium's own policy and further deny that these cameras were installed to intercept employee communications or without employees' consent.

9.     Defendants deny each and every allegation set forth in paragraph 9 of the Amended Complaint.

10.     Paragraph 10 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 10 of the Amended Complaint.

11.     Paragraph 11 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos alleges various claims in the Amended Complaint, all of which are based on outrageous distortions of the true facts and many of which fail to state a claim as a matter of law, and Defendants deny the remainder of the allegations set forth in paragraph 11 of the Amended Complaint.

12.     Paragraph 12 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that a special meeting of the members of Folium was held on December 7, 2018 where

the members present approved, among other things, the creation of Folium Equity, the contribution of membership units in Folium to Folium Equity in exchange for membership units in Folium Equity, and Folium Equity thereby became the only member of Folium. Defendants further admit that Ramos was not invited to the December 7, 2018 meeting because she was not a member of Folium at that time, either because she had never been granted membership interests or because she had involuntarily withdrawn as a member pursuant to the terms of Folium's Operating Agreement as a result of, *inter alia*, Ramos' clear breaches of fiduciary duties she owed to Folium as further explained in Defendants' Counterclaims. Defendants deny the remainder of the allegations set forth in paragraph 12 of the Amended Complaint.

13.     Paragraph 13 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 13 of the Amended Complaint.

14.     Paragraph 14 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos purports to bring claims on behalf of herself as an individual and derivatively on behalf of Folium, although Defendants maintain that such claims are irredeemably in conflict with each other and that Ramos has no possible standing to bring claims derivatively on behalf of Folium. Defendants deny the remainder of the allegations set forth in paragraph 14 of the Amended Complaint.

15.     Paragraph 15 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny

each and every allegation set forth in paragraph 15 of the Amended Complaint.

16.    Defendants admit that Ramos purports to seek certain relief on behalf of herself and on behalf of Folium in her Amended Complaint, although Defendants deny that the relief Ramos purports to seek on behalf of Folium is either genuine or would actually benefit Folium in any respect. Defendants deny the remainder of the allegations set forth in paragraph 16 of the Amended Complaint.

**PARTIES**

17.    Defendants admit that Ramos is an individual. Defendants lack knowledge or information sufficient to form a belief as to Ramos' primary residence, and accordingly deny the same.

18.    Defendants admit the allegations set forth in paragraph 18 of the Amended Complaint.

19.    Defendants admit the allegations set forth in paragraph 19 of the Amended Complaint, but deny any implication that Ramos was a member of Folium in December 2018 and/or that Ramos' allegations about her membership interests are otherwise accurate.

20.    Defendants admit that Shan is an individual residing in Colorado Springs, Colorado, and that he is the Chief Executive Officer of Folium and the largest shareholder/member of Folium Equity. Defendants deny the remainder of the allegations set forth in paragraph 20 of the Amended Complaint.

21.    Defendants admit that Nguyen is an individual residing in Colorado Springs, Colorado, and that he is the Senior Vice President of Business Development of

Folium, and the second largest shareholder/member of Folium Equity. Defendants deny the remainder of the allegations set forth in paragraph 21 of the Amended Complaint.

**ALLEGATIONS RELATING TO DERIVATIVE STANDING**

22.     Defendants deny each and every allegation set forth in paragraph 22 of the Amended Complaint, except admit that certain events described in Ramos' complaint occurred during her employment at Folium as otherwise described herein. Defendants deny the remainder of the allegations set forth in paragraph 22 of the Amended Complaint.

23.     Paragraph 23 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23 of the Amended Complaint, and accordingly deny the same.

24.     Defendants admit that Ramos, through her counsel, purported to make a demand on Folium on November 18, 2019 to bring suit against Shan and Nguyen, but deny that such document was legally sufficient to put Defendants on notice of Ramos' claims herein and deny that any such demand, even if it were sufficient to put Defendants on notice of Ramos' claims, could possibly entitle Ramos to seek relief derivatively on behalf of Folium. Defendants further admit that Stan Garnett of Brownstein Hyatt Farber Schreck LLP is counsel for Folium, Shan and Nguyen in certain matters, and that Folium is a wholly owned subsidiary of Folium Equity. Defendants deny the remainder of the allegations set forth in paragraph 24 of the Amended Complaint.

25.     Defendants admit that Exhibit A to the Amended Complaint appears to be a copy of Ramos' purported demand on Folium sent by e-mail to Folium's in-house counsel on November 18, 2019 – more specifically, the email and attachments sent by Ramos' counsel's office (from Ms. Megan McMillen) to Folium's in-house counsel on November 18, 2019. Defendants further admit that on November 19, 2019 Folium's in-house counsel received via FedEx from Ramos' counsel's office a copy of the demand letter appearing on page 3 of Exhibit A to the Amended Complaint along with a copy of Ramos' state court complaint.  Defendants further admit that Folium's in-house counsel responded to Ms. McMillen's November 18 e-mail on November 19, and requested a copy of the exhibit that was cited in the unfiled version of the Complaint attached to Ms. McMillen's November 18 email (which was not included as an attachment to Ms. McMillen's November 18 email). Defendants deny the remainder of the allegations set forth in paragraph 25 of the Amended Complaint.

26.     Paragraph 26 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 26 of the Amended Complaint.

27.     Defendants deny each and every allegation set forth in paragraph 27 of the Amended Complaint.

28.     Defendants deny each and every allegation set forth in paragraph 28 of the Amended Complaint.

29.     Paragraph 29 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit

that a demand was made by Ramos' counsel on behalf of another former employee, Dale Takio, on or about August 9, 2019. Defendants further admit that Folium initiated an action against Takio on or about August 20, 2019 in the United States District Court for the District of Colorado and that that action was voluntarily dismissed on or about September 19, 2019. Defendants also admit that Takio filed a verified complaint against Folium, Shan, and Nguyen on August 28, 2019 in El Paso County Court and that that action remains pending, and otherwise refers the Court to a true and correct copy of the complaint in that action for any overlapping allegations, if any. Defendants deny the remainder of the allegations set forth in paragraph 29 of the Amended Complaint.

30.     Paragraph 30 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 30 of the Amended Complaint.

31.     Defendants deny each and every allegation set forth in paragraph 31 of the Amended Complaint.

32.     Defendants deny each and every allegation set forth in paragraph 32 of the Amended Complaint, except Defendants admit that Shan legally transferred the title to the house in which he and his family reside to Motu LLC (an entity created in July 2019) on or about July 24, 2019 (the deed was recorded August 12, 2019), and that this house has been assessed at just over $1.5 million. Defendants deny any implication that this transfer was made to remove any asset from the reach of Folium, Mr. Takio or any other former Folium employee and Defendants deny the remainder of the allegations set forth in paragraph 32 of the Amended Complaint.

33.     Defendants deny each and every allegation set forth in paragraph 33 of the Amended Complaint.

34.     Paragraph 34 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Ramos fairly and adequately represents the interests of any actual members of Folium, and deny that any actual members of Folium have legitimate rights or grievances to enforce against Shan and Nguyen. Defendants lack knowledge or information sufficient to form a belief as to Ramos' knowledge or information she obtained, and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 34 of the Amended Complaint.

**JURISDICTION AND VENUE**

35.     Paragraph 35 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 35 of the Amended Complaint.

36.     Paragraph 36 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 36 of the Amended Complaint.

37.     Paragraph 37 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Folium and Folium Equity have their principle places of business in Colorado and that Shan and Nguyen reside in Colorado. Defendants deny the remainder of the allegations set forth in paragraph 37 of the Amended Complaint.

**FACTUAL ALLEGATIONS**

**A.      Ramos' Employment at Folium**

38.      Defendants admit that in or around April 2017, a former executive of Folium approached Ramos about working for Folium, and that it was their understanding that Ramos lived in Utah at or prior to that time. Defendants deny the remainder of the allegations set forth in paragraph 38 of the Amended Complaint.

39.      Defendants admit that Folium Biosciences is the largest known vertically-integrated producer, manufacturer, and distributor of hemp-derived phytocannabinoids in North America, and that Shan and Nguyen represented as much to Ramos. Defendants further admit that Folium Biosciences is the largest, fully and vertically integrated producer of phytocannabinoid-rich hemp oil (hereafter sometimes referred to as "CBD products") in North America. Defendants also admit that Folium's vertical integration allows the company to control every phase of the production process, from seed to sale. Defendants deny the remainder of the allegations set forth in paragraph 39 of the Amended Complaint.

40.      Defendants admit that Ramos agreed to join Folium in or around April 2017, and that Ramos moved to Colorado Springs. Defendants further admit that Ramos' initial title at Folium was Executive Vice President of Governmental Affairs. Defendants deny the remainder of the allegations set forth in paragraph 40 of the Amended Complaint.

41.      Defendants lack information or knowledge sufficient to form a belief as to when Shan discussed providing incentive interests to Ramos as part of her

compensation plan, but at or around that time (in mid-2017), Shan generally planned to offer four-year vesting of membership interests to key personnel to incentivize them and align their success with the company's success. Defendants deny the remainder of the allegations set forth in paragraph 41 of the Amended Complaint.

42. Defendants admit that Ramos appears to have signed a document titled the New Member's Consent on July 28, 2017, which provided that she would receive a total of one percent (1%) membership interest from Shan's membership interest in Folium which would vest over a period of four (4) years pursuant to an explicit schedule, provided that Ramos was still employed with the company, with the first .25% vesting if Ramos was still employed with Folium on July 1, 2018, an additional .25% vesting if Ramos was still employed with Folium on July 1, 2019, an additional .25% vesting if Ramos was still employed with Folium on July 1, 2020, and an additional .25% vesting if Ramos was still employed with Folium on July 1, 2021. Defendants further admit that these membership interests would have been offered to Ramos in part as an incentive to perform her work at a high level but deny that Ramos had provided valuable enough services to merit a 1% (or indeed even a .25%) interest in the Company at that time, or indeed at any time thereafter. However, Defendants deny that Ramos was granted any membership interest in Folium, as the New Member's Consent was attached to a document titled Written Consent of the Majority of the Members of Whole Hemp Company LLC (the "Written Consent") that was never signed by a majority of the membership interests in Folium. Defendants deny the remainder of the allegations set forth in paragraph 42 of the Amended Complaint.

43.     Defendants deny each and every allegation set forth in paragraph 43 of the Amended Complaint. Defendants deny that monthly distributions were paid to Folium's members, and believe Ramos is conflating a discretionary monthly revenue-share plan for non-executives which Ramos heard about. Defendants deny the remainder of the allegations set forth in paragraph 43 of the Amended Complaint.

44.     Defendants deny each and every allegation set forth in paragraph 44 of the Amended Complaint, except admit that a document titled "Written Consent of the Majority of the Members of Whole Hemp Company LLC" was prepared in or around July 2017, but was not signed by a majority of Folium's members. Defendants deny that the document attached as Exhibit B to the complaint is a true and correct copy of the Written Consent. Pages 6 and 7 of the pdf document in Exhibit B are from a completely unrelated document and were fraudulently included in that document by Ramos in order to make it appear like the Written Consent had been executed by a majority of the members of Whole Hemp Company LLC, when in fact, that is not the case because Shan (at the time the owner of 34.0315% the membership interests) never signed the Written Consent. Ramos has also failed to include any copy of the New Member's Consent which was prepared as an attachment to the Written Consent.

45.     Defendants admit that Ramos in the New Member's Consent agreed to be bound as a member of Folium by the terms of the Operating Agreement of Whole Hemp Company LLC as if she was a signatory thereof, and further acknowledged that she received a copy of the Operating Agreement of Whole Hemp Company LLC. Defendants deny the remainder of the allegations set forth in paragraph 45 of the

Amended Complaint.

46.     Defendants admit that Ramos was not initially provided a copy of the

Written Consent because it was not fully executed; indeed, it was never fully executed.

Defendants lack knowledge of information to form a belief as to what Ramos took,

copied, or left the building with and accordingly deny the same, except Defendants deny

that the document attached as Exhibit B to the Amended Complaint is a true and correct

copy of the Written Consent. Defendants deny the remainder of the allegations set forth

in paragraph 46 of the Amended Complaint.

47.     Defendants admit that Exhibit B is a forged document, in the sense that it

has been, at the very least, manipulated to include pages not actually contained in the

authentic document. Defendants further admit that pages 6 and 7 of the pdf document

attached as Exhibit B to the Amended Complaint are from a completely separate

document – the Limited Liability Company Operating Agreement for Sacred Roots of

Healing, LLC (the "Sacred Roots Agreement") – and were fraudulently included in that

document by Ramos in order to make it appear like the Written Consent had been

executed by a majority of the members of Whole Hemp Company LLC, when in fact,

that is not the case because Shan never signed the Written Consent. Defendants also

admit that Ramos signed the New Member's Consent. Defendants deny that they had

or have a regular practice of forging documents, and deny that they forged Ramos'

signature on the New Member's Consent that is attached as an exhibit hereto.

Defendants deny the remainder of the allegations set forth in paragraph 47 of the

Amended Complaint.

48.     Defendants admit that pages 6 and 7 of the pdf document attached as Exhibit B to the Amended Complaint are from the Sacred Roots Agreement and were fraudulently included in that document by Ramos in order to make it appear like the Written Consent had been executed by a majority of the members of Whole Hemp Company LLC, when in fact, that is not the case because Shan never signed the Written Consent. Defendants deny the remainder of the allegations set forth in paragraph 48 of the Amended Complaint.

49.     Defendants admit that Sacred Roots of Healing LLC was an entity that Ramos had formed prior to her work with the Defendants (upon information and belief, the entity was formed on or about August 4, 2016 with the name Roots of Healing, LLC), and that Ramos attempted to persuade Folium's principals to use the entity as a hemp oil retail brand. Defendants further admit that sales in casinos or on Native American reservations may have been discussed.  Defendants further admit that Folium's principals initially agreed to participate in the organization and were planning to give product to Ramos for the entity, so an operating agreement was prepared, but those plans were eventually abandoned and nothing ever came of the entity to the best of Defendants' knowledge. Defendants deny the remainder of the allegations set forth in paragraph 49 of the Amended Complaint.

50.     Defendants admit that Ramos was shown the Written Consent by Nguyen (not Shan), and that she was provided the New Member's Consent to sign (which she did in fact sign). Defendants further admit that the Written Consent (although it was never fully executed) provided that Ramos would receive a total of one percent (1%)

membership interest from Shan's membership interest in Folium, subject to certain conditions. Defendants further admit that Ramos was identified in the table that appears on the face of the Written Consent as a 1.00% member subject to a four-year vesting schedule. Defendants deny the remainder of the allegations set forth in paragraph 50 of the Amended Complaint.

51. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters set forth in paragraph 51 of the Amended Complaint and accordingly deny the same.

52. Defendants deny that Ramos has never withdrawn from the Operating Agreement or otherwise disclaimed her membership interest in Folium. Defendants admit that Ramos has involuntarily withdrawn as a member of Folium pursuant to the terms of the Operating Agreement, based on her actions, including breaches of fiduciary duties she owed to Folium. Defendants further admit that Ramos' purported membership interest was never repurchased by Folium or any members of Folium. Defendants deny the remainder of the allegations set forth in paragraph 52 of the Amended Complaint.

53. Defendants admit that Ramos received a check of $10,000 in or around May 2018 as a bonus but deny that this check represented a distribution for any purported membership interest, as Ramos (even to the extent she could be deemed to have been granted some contingent membership interest) had not yet vested any membership interest in Folium at that time. Defendants admit that Ramos received no other distributions or dividends but deny that Ramos was entitled to same and deny the

remainder of the allegations set forth in paragraph 53 of the Amended Complaint.

54.     Defendants admit that Ramos was terminated for cause on or about August 28, 2018 by Folium as a result of, among other things, her active solicitation of and work on behalf of Folium's competitors in violation of Ramos' fiduciary duties to Folium, her fraudulent expense submissions and the evidence concerning her involvement in the murder for hire plot against Brand. Defendants deny the remainder of the allegations set forth in paragraph 54 of the Amended Complaint.

55.     Defendants deny each and every allegation set forth in Paragraph 55 of the Amended Complaint except admit that Ramos was terminated for cause on or about August 28, 2018 by Folium as a result of, among other things, the conduct described in response to paragraph 54 above.

56.     Defendants deny each and every allegation set forth in Paragraph 56 of the Amended Complaint.

57.     Defendants deny each and every allegation contained in Paragraph 57 of the Amended Complaint except Defendants admit that Shan said she should not fight her termination as it would look bad for her if the facts about her actions were made public. Defendants deny that any severance package was ever discussed or offered to Ramos because of her duplicity. Defendants deny the remainder of the allegations set forth in Paragraph 57 of the Amended Complaint.

58.     Defendants admit that Ramos has not received any distributions since her termination for cause and further admit that Folium's counsel denied Ramos' request for severance, stated that Ramos' claim that she was "'granted' 1% of the company" was

mistaken, and further reminded Ramos that she was terminated for cause. Defendants deny the remainder of the allegations set forth in Paragraph 58 of the Amended Complaint.

59.     Defendants lack knowledge or information sufficient to form a belief as to the meaning of the allegations contained in paragraph 59 of the Amended Complaint or their truth (whether or not Ramos has received information for members of Folium), and accordingly deny same.

60.     Defendants deny each and every allegation contained in paragraph 60 of the Amended Complaint.

**B.     The Criminal Conspiracies of Shan and Nguyen**

61.     Paragraph 61 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Shan is the Chief Executive Officer and Nguyen is the Senior Vice President of Business Development of Folium. Defendants lack knowledge or information sufficient to form a belief as to the meaning of the term "dominate," and accordingly deny the allegation that Shan and Nguyen dominate Folium's corporate affairs. Defendants admit that Shan and Nguyen owed minority members of Folium fiduciary duties of due care and loyalty, but deny that they violated any such duties and deny that Ms. Ramos is a minority member of Folium. Defendants deny the remainder of the allegations set forth in paragraph 61 of the Amended Complaint.

62.     Paragraph 62 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny

each and every allegation contained in paragraph 62 of the Amended Complaint. Defendants lack knowledge or information sufficient to form a belief as to what Ramos purports to have learned, and accordingly deny the same.

63. Defendants lack knowledge or information sufficient to form a belief as to what Ramos or her counsel purport to have "learned" through "investigation" of otherwise, and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 63 of the Amended Complaint.

1. <u>Shan and Nguyen Have Used Folium to Engage in Trafficking of Illegal Narcotics Across State Lines</u>

64. Defendants admit that Section 10113 of the 2018 Farm Bill defines "hemp" as the "plant *Cannabis sativa L.* and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Defendants further admit that delta-9-tetrahydrocannabinol is commonly known as THC. Defendants deny the remainder of the allegations set forth in paragraph 64 of the Amended Complaint and refer the Court to the actual text of the 2014 Farm Bill for its definitions.

65. Defendants admit that the 2018 Farm Bill expressly excluded hemp from the definition of "marihuana" under Schedule 1 of the Controlled Substances Act (CSA). Defendants deny the remainder of the allegations set forth in paragraph 65 of the Amended Complaint.

66. Paragraph 66 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny

each and every allegation set forth in paragraph 66 of the Amended Complaint.

67. Paragraph 67 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that a cannabis sativa plant designed to be grown and sold legally as hemp can grow "hot," meaning that it will have above the .3% THC threshold, and thus has the potential to be characterized as "marihuana" under Schedule 1 of the CSA. Defendants further admit that the 2018 Farm Bill provides certain safe guards for this problem, and that under certain circumstances, depending on a variety of factors, a grower/cultivator may have to destroy raw material that has grown "hot." Defendants further admit that the 2018 Farm Bill provides that licensed hemp producers must submit a plan to correct and/or handle such "hot" hemp. Defendants further admit that in Colorado, different licensure is required to grow hemp and cannabis/marijuana with THC above the .3% threshold. Defendants deny the remainder of the allegations set forth in paragraph 67 of the Amended Complaint, and refer the Court to the variety of state, local and federal laws that might apply to any specific producer, manufacturer or distributor of hemp, cannabis or any other product that utilizes the *cannabis sativa L.* plant.

68. Defendants admit that Folium is vertically integrated and that it has represented itself as a vertically integrated manufacturer of CBD products to the public. Defendants deny the remainder of the allegations set forth in paragraph 68 of the Amended Complaint.

69. Defendants deny that Folium claims to own all of its own hemp farms. Rather, Folium claims to be vertically integrated, which can be defined as "a strategy

whereby a company owns or controls its suppliers, distributors, or retail locations to control its value or supply chain." Defendants admit that Folium has an exclusive contract with Diamond A Farms, which owns some nine percent (9%) equity interest in Folium Equity and has 600 acres of land in Colorado and 300 acres of land in Arizona growing plants exclusively for Folium using Folium-provided seeds. Defendants admit that Folium produces proprietary seeds for farmers that are used to cultivate industrial hemp biomass sold to Folium. Defendants deny the remainder of the allegations set forth in paragraph 69 of the Amended Complaint.

70.    Defendants admit that Folium paid over $100,000 to the Kight Law Firm, which was acting as an escrow agent on behalf of certain hemp farmers in North Carolina, for biomass in 2019. Defendants deny the remainder of the allegations set forth in paragraph 70 of the Amended Complaint.

71.    Defendants admit that Folium does not own all of its own hemp farms, and that it has at certain times in the past looked to purchase biomass from producers with which it did not have a preexisting relationship in order to meet the demand for its finished products. In such cases, Folium approves the farmer's seed genetics and farming operations prior to entering into a biomass procurement contract. Defendants deny the remainder of the allegations set forth in paragraph 71 of the Amended Complaint.

72.    Defendants deny each and every allegation set forth in paragraph 72 of the Amended Complaint.

73.    Defendants deny each and every allegation contained in paragraph 73 of

the Amended Complaint except admit that Cannabis Law Report has published several articles about Folium, including, but not limited to, an article that was published on or about August 29, 2019, and that this article contains various false allegations and distortions of actual events. Defendants deny that this August 2019 Cannabis Law Report article constituted "reporting" and deny the remainder of the allegations set forth in paragraph 73 of the Amended Complaint.

74.     Paragraph 74 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to what Ramos witnessed, saw or heard while she was employed at Folium, and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 74 of the Amended Complaint.

75.     Defendants deny each and every allegation set forth in paragraph 75 of the Amended Complaint, except admit that Folium has purchased biomass from Kentucky, and Defendants lack knowledge or information sufficient to form a belief as to what the purported employees knew, and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 75 of the Amended Complaint.

76.     Defendants lack knowledge or information sufficient to form a belief as to the meaning of the term "normal hemp," and accordingly deny any allegation that depends on meaning of that term. Defendants admit that Folium's extraction process separates THC from industrial hemp biomass to 0.0% THC. Defendants deny the remainder of the allegations set forth in paragraph 76 of the Amended Complaint.

77.     Paragraph 77 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit the allegations set forth in paragraph 77 of the Amended Complaint, except Defendants deny that the requirement to log THC extracted on a monthly basis has anything to do with Folium's Certificate of Health and Free Sale.

78.     Defendants deny each and every allegation set forth in paragraph 78 of the Amended Complaint.

2.     Shan and Nguyen Have Used Folium to Run an Unlicensed Manufacturing Facility

79.     Defendants deny that its manufacturing facility at 615 Wooten Drive in Colorado Springs was closed on order of the Colorado Springs Fire Department in September 2018. Defendants deny the remainder of the allegations set forth in paragraph 79 of the Amended Complaint.

80.     Paragraph 80 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 80 of the Amended Complaint.

81.     Defendants admit that Folium has a facility in Rocky Ford that is used by the company in the normal course of its business, and that certain employees of Folium have at various times referred to that facility as the "Burrito Factory" because it was formerly a burrito factory. Defendants deny the remainder of the allegations set forth in paragraph 81 of the Amended Complaint.

82.     Defendants admit that Folium does not have a "license to extract" at the facility in Rocky Ford, CO but deny that there is any such thing as a "license to extract"

and otherwise deny the remainder of the allegations set forth in paragraph 82 of the Amended Complaint.

83. Paragraph 83 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 83 of the Amended Complaint.

84. Paragraph 84 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 84 of the Amended Complaint.

85. Paragraph 85 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 85 of the Amended Complaint.

3. Folium Distributes CBD Products That Are Mislabeled

86. Defendants admit that Folium advertises its products as "THC Free" (defined as 0.0% THC) and that it has sent via U.S. Mail and other delivery services Certificates of Analysis (COAs) to customers which certify that Folium's hemp oil contains 0.0% THC, but refers the Court to the actual COAs for their specific terms, disclosures, explanations and information contained therein.

87. Defendants deny each and every allegation set forth in paragraph 87 of the Amended Complaint.

88. Defendants admit that Folium sells finished hemp oil products and that Folium has provided ingredient lists to customers.

89. Defendants deny that Folium knowingly provides false and incomplete

ingredient lists to customers and deny that any such activity occurs at Shan and Nguyen's direction or knowledge. Defendants admit that Folium's HydroPCR™ is offered for sale and sold to customers to create ready-to-drink, shelf-stable beverages and bottled water. Folium's HydroPCR™ may also be used to formulate cosmetics products. Defendants further admit that the listed ingredients of HydroPCR™ are 4% phytocannabinoid-rich (PCR) hemp oil, quillaja extract, and glycerin. Defendants deny the remainder of the allegations set forth in paragraph 89 of the Amended Complaint.

4. <u>Shan and Nguyen Are Directing That Folium Sell Products in International Markets That Violate the Drug Laws of Those Countries</u>

90. Paragraph 90 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 90 of the Amended Complaint, except admit that Folium has sought to sell certain of its products internationally in compliance with local law.

91. Paragraph 91 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 91 of the Amended Complaint.

92. Defendants lack knowledge or information sufficient to form a belief as to the practices of other extraction companies and their business, and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 92 of the Amended Complaint, except admit that while Folium generally extracts its hemp oil and CBD isolate from the flower and fruiting top of the hemp plant, Folium has

conceptually and scientifically demonstrated the capability to produce hemp oil from stalk and due to the enormous amount of stalk owned by Folium, it can commercially sell hemp oil derived from stalk. Defendants further admit that stalks and stems of the hemp plant generally contain much smaller amounts of CBD than the flower and fruiting top of the plant. Defendants deny the remainder of the allegations set forth in Paragraph 92 of the Amended Complaint.

93.     Paragraph 93 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the practices of other CBD companies and their business, and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 93 of the Amended Complaint.

94.     Defendants deny each and every allegation set forth in paragraph 94 of the Amended Complaint with the following exceptions. Defendants lack knowledge or information sufficient to form a belief as to the meaning of "these countries," and accordingly deny allegations relating to the same. Defendants admit that Folium directed the sale of hemp oil and CBD Isolate to the certain countries overseas but deny that Shan and Nguyen directed anyone to alter anything. Defendants deny the remainder of the allegations set forth in paragraph 94 of the Amended Complaint.

95.     Defendants deny each and every allegation set forth in paragraph 95 of the Amended Complaint.

96.     Paragraph 96 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny

that Folium sold products into Mexico until December 2019 when a customer obtained a permit to do so. Defendants admit that Folium had previously planned to sell hemp oil products into Mexico but did not, as Folium was waiting for the laws in Mexico to change. Defendants further admit that Folium had intended to create a brand called +Vita for sale to Latin Americans living in the United States but never launched that project. Defendants lack knowledge or information sufficient to form a belief as to the packaging or re-sale of its products by third parties, and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 96 of the Amended Complaint.

5.     Shan and Nguyen's Money Laundering and Accounting Fraud

97.     Defendants deny each and every allegation set forth in paragraph 97 of the Amended Complaint except admit that certain customers have made cash payments for Folium's products, but these payments were properly reflected in the company's books. Defendants deny the remainder of the allegations set forth in paragraph 97 of the Amended Complaint.

98.     Paragraph 98 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 98 of the Amended Complaint except that Defendants lack knowledge or information sufficient to form a belief as to what the former Chief Financial Officer of Folium informed Ramos while she was employed, and accordingly deny the same.

99.     Defendants admit that Ramos at one time shared an office with Nguyen,

that there were some cash payments for Folium's products, and that Nguyen occasionally deposited cash in company bank accounts. Defendants deny the remainder of the allegations set forth in paragraph 99 of the Amended Complaint.

100.    Defendants lack knowledge or information sufficient to form a belief as to what Ramos "witnessed" while she was still employed by Folium with respect to Folium officers putting hemp oil and CBD Isolate into their cars, and according deny the same. Defendants admit that at certain times Shan, Nguyen and certain other Folium officers may have put hemp oil and CBD Isolate into their cars but deny any impropriety regarding same or that such hemp oil and CBD Isolate sales and/or deliveries "were never recorded." Defendants deny the remainder of the allegations set forth in paragraph 100 of the Amended Complaint.

101.    Paragraph 101 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 101 of the Amended Complaint.

102.    Paragraph 102 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that the specific dollar amounts listed were in fact transferred to bank accounts owned or controlled by Shan and Nguyen and Shan's wife, that Shan, on occasion, directed his legal distributions to be paid to his wife's account, and that these transfers were all legal distributions made pro rata to all members according to their interests in Folium. Defendants deny the remainder of the allegations set forth in paragraph 102 of the Amended Complaint.

103.     Paragraph 103 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 103 of the Amended Complaint.

104.     Paragraph 104 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 104 of the Amended Complaint.

105.     Paragraph 105 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 105 of the Amended Complaint.

106.     Paragraph 106 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 106 of the Amended Complaint except Defendants admit that certain sales personnel who were on salary have been changed to independent contractors, but deny that any change in status was repeated, haphazard, or without the employees' knowledge, and further deny that any such change was in violation of any applicable law.

107.     Paragraph 107 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 107 of the Amended Complaint.

108.     Paragraph 108 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 108 of the Amended Complaint

Defendants, except Defendants admit that Ramos' status changed from an independent contractor (receiving a 1099) to an employee (receiving a W-2) at some point, but deny that any such change was without Ramos' consent and deny that any such change was made in order to evade taxes; in fact it cost Folium more in taxes.

6.   Shan and Nguyen's Violations of Wiretapping Law

109.   Paragraph 109 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 109 of the Amended Complaint.

110.   Paragraph 110 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 110 of the Amended Complaint.

111.   Defendants deny the allegations set forth in paragraph 111 of the Amended Complaint, except Defendants admit that security personnel have installed security cameras, some of which have audio capabilities, as part of Folium's standard and legal workplace security measures.

112.   Paragraph 112 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 112 of the Amended Complaint.

7.   Shan and Nguyen's Retaliation Against Ramos

113.   Defendants deny each and every allegation set forth in paragraph 113 of the Amended Complaint.

114.   Paragraph 114 of the Amended Complaint sets forth legal conclusions to

which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 114 of the Amended Complaint.

115.    Defendants deny each and every allegation set forth in paragraph 115 of the Amended Complaint, except admit that they reported a murder for hire plot and arson threat (the latter of which involved Ramos) to the Colorado Springs Police Department on or about August 29, 2018.

116.    Defendants admit that the Colorado Springs Police Department appear to have closed the case referenced in the above paragraph 115. Defendants lack knowledge or information sufficient to form a belief as to the investigation conducted, and conclusions made, by the police department and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 116 of the Amended Complaint.

117.    Paragraph 117 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 117 of the Amended Complaint, except admit that Ramos used company funds for personal use and was heard on tapes discussing working for Ryan Lewis, among other potential competitors.

118.    Paragraph 118 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 118 of the Amended Complaint.

**C.    The Unauthorized Sale to Folium Equity Holding**

119.    Defendants admit the allegations set forth in paragraph 119 of the

Amended Complaint.

120.    Defendants admit the allegations set forth in paragraph 120 of the Amended Complaint.

121.    Defendants admit that Shan is the Chief Executive Officer of Folium and the largest shareholder of Folium Equity, and Nguyen is the Senior Vice President of Business Development of Folium and the second largest shareholder of Folium Equity. Defendants lack knowledge or information sufficient to form a belief as to the meaning of the term "dominate," and accordingly deny the allegation that Shan and Nguyen dominate Folium's affairs. Defendants deny the remainder of the allegations set forth in paragraph 121 of the Amended Complaint.

122.    Defendants admit that Ramos was not invited to the special meeting of the members of Folium that was held on December 7, 2018, and that Ramos was not asked to provide her consent to the creation of Folium Equity or the transfer of membership interests from Folium to Folium Equity. Defendants deny the remainder of the allegations set forth in paragraph 122 of the Amended Complaint.

123.    Defendants lack knowledge or information sufficient to form a belief as to what Ramos has consented to, or does consent to with regard to the "sale of Folium's equity to Folium Equity Holding", and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 123 of the Amended Complaint.

### FIRST CLAIM FOR RELIEF
**(Violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, Against Shan and Nguyen)**

124.    Defendants repeat and reallege the answers to the allegations in

paragraphs 1 through 123 of the Amended Complaint above as if fully set forth herein.

125.    Paragraph 125 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos purports to bring claims on behalf of herself as an individual and derivatively on behalf of Folium, but deny that Ramos is entitled to bring any derivative claims on behalf of Folium, including without limitation, any RICO claim. Defendants deny the remainder of the allegations set forth in paragraph 125 of the Amended Complaint.

126.    Paragraph 126 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Shan is the Chief Executive Officer and Nguyen is the Senior Vice President of Business Development of Folium. Defendants deny the remainder of the allegations set forth in paragraph 126 of the Amended Complaint.

127.    Paragraph 127 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Folium ships hemp oil and CBD Isolate to different locations in the United States and to certain other countries around the world. Defendants lack knowledge or information sufficient to form a belief as to whether Folium is "engaged in and affects interstate and foreign commerce" and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 127 of the Amended Complaint.

128.    Paragraph 128 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Shan and Nguyen have conducted certain of Folium's affairs and have participated

in the conduct of Folium's affairs, but deny that Folium constitutes an enterprise for the purposes of the RICO statute. Defendants deny the remainder of the allegations set forth in paragraph 128 of the Amended Complaint.

129.    Paragraph 129 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 129 of the Amended Complaint.

130.    Paragraph 130 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 130 of the Amended Complaint.

131.    Paragraph 131 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 131 of the Amended Complaint.

132.    Paragraph 132 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 132 of the Amended Complaint.

133.    Paragraph 133 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 133 of the Amended Complaint.

134.    Paragraph 134 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 134 of the Amended Complaint.

135.    Paragraph 135 of the Amended Complaint sets forth legal conclusions to

which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 135 of the Amended Complaint.

136.    Paragraph 136 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos purports to seek certain injunctive relief on behalf of herself and on behalf of Folium in her claims but deny that she is entitled to any such relief. Defendants deny the remainder of the allegations set forth in paragraph 136 of the Amended Complaint.

**SECOND CLAIM FOR RELIEF**
**(Violations of Colorado Organized Crime Control Act, C.R.S. § 18-17-101 *et seq.*,**
**Against Shan and Nguyen)**

137.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 136 of the Amended Complaint above as if fully set forth herein.

138.    Paragraph 138 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos purports to bring claims on behalf of herself as an individual and derivatively on behalf of Folium but deny that Ramos is entitled to bring any derivative claims on behalf of Folium, including without limitation, any COCCA claim. Defendants deny the remainder of the allegations set forth in paragraph 138 of the Amended Complaint.

139.    Paragraph 139 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Shan is the Chief Executive Officer and Nguyen is the Senior Vice President of Business Development of Folium. Defendants deny the remainder of the allegations set forth in paragraph 139 of the Amended Complaint.

140. Paragraph 140 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 140 of the Amended Complaint, and accordingly deny the same.

141. Paragraph 141 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Shan and Nguyen have conducted certain of Folium's affairs and have participated in the conduct of Folium's affairs, but deny that Folium constitutes an enterprise for the purposes of the COCCA statute. Defendants deny the remainder of the allegations set forth in paragraph 141 of the Amended Complaint.

142. Paragraph 142 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 142 of the Amended Complaint.

143. Paragraph 143 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 143 of the Amended Complaint.

144. Paragraph 144 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 144 of the Amended Complaint.

145. Paragraph 145 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 145 of the Amended Complaint.

146.    Paragraph 146 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 146 of the Amended Complaint.

147.    Paragraph 147 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 147 of the Amended Complaint.

148.    Paragraph 148 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 148 of the Amended Complaint.

149.    Paragraph 149 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos purports to seek certain injunctive relief on behalf of herself and on behalf of Folium in her claims but deny that she is entitled to any such relief. Defendants deny the remainder of the allegations set forth in paragraph 149 of the Amended Complaint.

## <u>THIRD CLAIM FOR RELIEF</u>
### (Breach of Fiduciary Duty, Against Shan and Nguyen)

150.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 149 of the Amended Complaint above as if fully set forth herein.

151.    Paragraph 151 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos purports to bring claims on behalf of herself as an individual and derivatively on behalf of Folium, but deny that Ramos is entitled to bring any derivative claims on behalf of Folium, including without limitation, any breach of fiduciary duty claim.

Defendants deny the remainder of the allegations set forth in paragraph 151 of the Amended Complaint.

152.    Paragraph 152 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Shan is the Chief Executive Officer and Nguyen is the Senior Vice President of Business Development of Folium. Defendants deny the remainder of the allegations set forth in paragraph 152 of the Amended Complaint.

153.    Paragraph 153 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Shan is the Chief Executive Officer and Nguyen is the Senior Vice President of Business Development of Folium. Defendants deny the remainder of the allegations set forth in paragraph 153 of the Amended Complaint.

154.    Paragraph 154 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 154 of the Amended Complaint.

155.    Paragraph 155 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 155 of the Amended Complaint.

156.    Paragraph 156 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 156 of the Amended Complaint.

157.    Paragraph 157 of the Amended Complaint sets forth legal conclusions to

which no response is required. To the extent a response is required, Defendants admit that Ramos purports to seek certain equitable relief on behalf of herself and on behalf of Folium in her claims but deny that she is entitled to any such relief. Defendants deny the remainder of the allegations set forth in paragraph 157 of the Amended Complaint.

## FOURTH CLAIM FOR RELIEF
**(Violation of Wiretapping Act, 18 U.S.C. §§ 2511, 2520, Against Shan, Nguyen, and Folium)**

158.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 157 of the Amended Complaint above as if fully set forth herein.

159.    Paragraph 159 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 159 of the Amended Complaint.

160.    Paragraph 160 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 160 of the Amended Complaint.

161.    Paragraph 161 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 161 of the Amended Complaint.

## FIFTH CLAIM FOR RELIEF
**(Breach of Contract, Against Shan, Nguyen and Folium)**

162.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 161 of the Amended Complaint above as if fully set forth herein.

163.    Paragraph 163 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny

each and every allegation set forth in paragraph 163 of the Amended Complaint.

164.    Paragraph 164 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 164 of the Amended Complaint.

165.    Paragraph 165 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 165 of the Amended Complaint.

166.    Paragraph 166 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 166 of the Amended Complaint.

**SIXTH CLAIM FOR RELIEF**
**(Declaratory Judgment under 28 U.S.C. § 2201 & C.R.S. § 13-51-101 *et seq.*,**
**Against Folium, Shan, Nguyen, and Folium Equity Holding)**

167.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 166 of the Amended Complaint above as if fully set forth herein.

168.    Paragraph 168 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos purports to seek a declaratory judgment regarding the determination of a purported right and/or interest in Folium, but Defendants deny that Ramos has any such interest or right. Defendants deny the remainder of the allegations set forth in paragraph 168 of the Amended Complaint.

169.    Paragraph 169 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit

that it is Folium's, Shan's, and Nguyen's understanding that Ramos does not have an equitable interest of 1% in Folium. Defendants deny the remainder of the allegations set forth in paragraph 169 of the Amended Complaint.

170. Paragraph 170 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos purports to seek a declaratory judgment regarding the determination of a purported right and/or interest in Folium, but Defendants deny that Ramos has any such interest or right. Defendants deny the remainder of the allegations set forth in paragraph 170 of the Amended Complaint.

171. Paragraph 171 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to what Ramos would have consented to, did consent to, or does consent to regarding the purported "sale of Folium to Folium Equity Holding", and accordingly deny the same. Defendants deny the remainder of the allegations set forth in paragraph 171 of the Amended Complaint.

172. Paragraph 172 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 172 of the Amended Complaint.

**SEVENTH CLAIM FOR RELIEF**
**(Accounting and Member Communications, Against Folium, Shan, and Nguyen)**

173. Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 172 of the Amended Complaint above as if fully set forth herein.

174. Defendants deny each and every allegation set forth in paragraph 174 of

the Amended Complaint.

175.    Defendants deny each and every allegation set forth in paragraph 175 of the Amended Complaint.

**EIGHTH CLAIM FOR RELIEF**
**(Judicial Dissolution, Against Folium)**

176.    Defendants repeat and reallege the answers to the allegations in paragraphs 1 through 175 of the Amended Complaint above as if fully set forth herein.

177.    Defendants deny each and every allegation set forth in paragraph 177 of the Amended Complaint.

178.    Paragraph 178 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 178 of the Amended Complaint.

179.    Paragraph 179 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation set forth in paragraph 179 of the Amended Complaint.

180.    Paragraph 180 of the Amended Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Ramos purports to seek certain relief involving the appointment of a receiver or custodian and the issuance of injunctions, but deny that Ramos is entitled to any such relief, including without limitation, any injunctive relief or the appointment of any receiver or custodian. Defendants deny the remainder of the allegations set forth in paragraph 180 of the Amended Complaint.

**JURY DEMAND**

181.    No response is required to Ramos' demand for jury trial set forth in the Amended Complaint. To the extent a response is required, Defendants admit that Ramos demands a trial by jury on all issues triable by jury, but deny that any such issues exist with respect to the direct and derivative claims set forth in the Amended Complaint.

## PRAYER FOR RELIEF

182.    Defendants deny that Ramos is entitled to any of the relief sought in her Prayer for Relief, whether on behalf of herself individually or nominally on behalf of Folium. Defendants request that this Court deny all of the relief sought by Ramos in the WHEREFORE clause, including each subpart therein, and dismiss the Amended Complaint and all of the claims therein in their entirety and with prejudice. Defendants further request that they each be awarded attorneys' fees and costs and such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses to the Amended Complaint:

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

183.    The Amended Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Lack of Standing – No Membership Interest)**

184.    Ramos' claims are barred, in whole or in part, because Ramos was never granted a membership interest in Folium as the Written Consent was never executed by

a majority of the vested membership interests in Folium, and/or because a majority vote of the existing Membership interests was never held to admit Ramos as a new Member.

185.    Ramos' claims are barred, in whole or in part, because she has involuntarily withdrawn as a member of Folium pursuant to the Operating Agreement and no longer has a membership interest in Folium.

## THIRD AFFIRMATIVE DEFENSE
### (Lack of Standing – Failure of Conditions Precedent – Pre-Suit Demand)

186.    Ramos' claims are barred, in whole or in part, because she failed to comply with one or more conditions precedent, including the pre-suit demand requirements under Colorado law.

## FOURTH AFFIRMATIVE DEFENSE
### (Lack of Standing – RICO AND COCCA)

187.    Ramos' claims are barred, in whole or in part, because she does not have standing to sue personally or derivatively under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and/or the Colorado Organized Crime Control Act (COCCA), C.R.S. § 18-17-101 *et seq.*, for alleged injuries to Folium.

## FIFTH AFFIRMATIVE DEFENSE
### (Lack of Standing – RICO AND COCCA – No Cognizable Damage)

188.    Ramos' claims are barred, in whole or in part, because she does not have standing to sue under RICO and/or COCCA for reputational harm or any other harm alleged to have been suffered by Ramos personally in the Amended Complaint.

## SIXTH AFFIRMATIVE DEFENSE
### (Wrongful/Tortious Conduct)

189.    Ramos' claims are barred, in whole or in part, by her own wrongful or

tortious conduct.

## SEVENTH AFFIRMATIVE DEFENSE
### (Conflict of Interest)

190.    Ramos' claims are barred, in whole or in part, because there exists a
substantial and irredeemable conflict between Ramos' direct claims against Folium and
her derivative claims purportedly on behalf of Folium.

## EIGHTH AFFIRMATIVE DEFENSE
### (Breach of Contract/Implied Covenant of Good Faith and Fair Dealing)

191.    Ramos' claims are barred, in whole or in part, by her own material
breaches of the Operating Agreement of Whole Hemp Company LLC, and the New
Member's Consent, including the implied covenant of good faith and fair dealing
inherent in those contracts.

## NINTH AFFIRMATIVE DEFENSE
### (Fraud)

192.    Ramos' claims are barred, in whole or in part, by her own fraudulent acts.
As an example, Ramos filed Exhibit B (Dkt. No. 31-2) concurrently with the Amended
Complaint. Exhibit B purports to be the fully-executed Written Consent of the Majority of
the Members of Whole Hemp Company, LLC (the "Written Consent"), effective as of
July 28, 2017, and appears to have been signed by Shan, Ramos, William Brill,
Nguyen, Ryan Lewis, Rajesh Gupta, Bradley Jones, and Jenna Lubieniecki. The Written
Consent, however, was never fully executed. The first two purported signature pages of
Exhibit B (pages 6 and 7 of the pdf) were actually taken from a ***different agreement***,
the Limited Liability Company Operating Agreement for Sacred Roots of Healing, LLC,
dated August 10, 2017, and contain signatures from that separate agreement. The final

signature page (page 8 of the pdf) is clearly from a separate agreement with a different table and different signature blocks. Thus, Exhibit B is a forgery and plain evidence of Ramos' blatant lies and fraudulent acts.

**TENTH AFFIRMATIVE DEFENSE**
**(No Personal Damages)**

193.    Ramos is barred from personally recovering damages, if any, in whole or in part, as a result of any derivative claim because she has no membership interest in Folium.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Breach of Fiduciary Duty)**

194.    Ramos' claims are barred, in whole or in part, because Ramos breached the fiduciary duties she owed to Defendants.

**TWELFTH AFFIRMATIVE DEFENSE**
**(Abuse of Process)**

195.    Ramos' claims are barred, in whole or in part, because they constitute an abuse of process.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(No Causation)**

196.    Ramos' claims are barred, in whole or in part, because any alleged injury and damage to Ramos or Folium were not legally or proximately caused by any acts or omissions of Defendants and were caused, if at all, solely and proximately by the conduct of Ramos through her own negligent, careless, reckless or intentional acts, or those of other parties.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

197.    Ramos' claims are barred, in whole or in part, and Ramos is barred from recovery, if any, by reason of Ramos' own unclean hands.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (Waiver)

198.    Ramos intentionally and voluntarily relinquished or surrendered a known right, benefit or advantage in connection with one or more of the causes of action set forth in the Amended Complaint and the facts underlying each of those causes of action.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Estoppel)

199.    Ramos' claims are barred, in whole or in part, by the doctrine of estoppel.

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (Speculative Damages)

200.    Neither Ramos nor Folium are entitled to recover the alleged damages, if any, because such damages are uncertain, contingent, and speculative.

### EIGHTEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

201.    Ramos has failed to mitigate her damages, if any, or has otherwise contributed to her own damages.

### NINETEENTH AFFIRMATIVE DEFENSE
### (Laches)

202.    Ramos' claims are barred, in whole or in part, by the doctrine of laches.

### TWENTIETH AFFIRMATIVE DEFENSE
### (Limitation of Damages)

203.    Ramos' demand for damages under any legal theory, whether in tort,

contract or otherwise, is barred to the extent it seeks damages other than as permitted by the contracts at issue, including, without limitation, paragraphs 28 through 36 of Folium's Operating Agreement.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Limitation to .25% Membership Interest in Folium)

204.   To the extent Ramos is found to have been granted some membership interest in Folium and is found not to have been involuntarily withdrawn as a member of Folium, Ramos' claims are barred, in whole or in part, as she could only possibly have a .25% membership interest in Folium at most pursuant to the New Member's Consent that Ramos signed.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (No Double Recovery)

205.   Ramos' demands for damages are barred, in whole or in part, to the extent she seeks a double recovery for the same damages.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Lack of Subject Matter Jurisdiction)

206.   Ramos' claims are barred, in whole or in part, because this Court lacks subject matter jurisdiction over Ramos' claims. Ramos' claims under the RICO statute and the Wiretapping Act both fail to state a claim for relief and are subject to dismissal.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Lack of Injury)

207.   Ramos' claims against Defendants are barred, in whole or in part, because she did not suffer any injury or damages.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Lack of Scienter)

208.  Ramos' claims against Defendants are barred because Defendants did not act with the requisite scienter and acted at all times in good faith with a reasonable basis, in accordance with applicable law, and without knowledge of any wrongful acts or intent.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Assumption of Risk)

209.  Ramos' claims against Defendants are barred, in whole or in part, because Ramos voluntarily assumed the risk of injury and damages alleged in the Amended Complaint, if in fact any injury or damages have been sustained (which Defendants expressly deny).

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (Superseding and Intervening Causes)

210.  Ramos' claims against Defendants are barred, in whole or in part, because Ramos' injuries or damages, to the extent that any exist, which Defendants expressly deny, were caused by independent superseding and intervening events unconnected to Defendants and for which Defendants cannot be held liable.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### (Relief Broader than Necessary to Remedy Alleged Harm)

211.  Ramos' claims against Defendants are barred, in whole or in part, because the relief sought is broader than what is necessary to remedy the alleged harm.

### TWENTY-NINTH AFFIRMATIVE DEFENSE
### (Actions Outside of the Scope of Authority)

212.  Folium is not liable for the conduct of any of its current or former

employees and/or agents to the extent that any or all of those current or former employees and/or agents acted outside the scope of their authority.

## THIRTIETH AFFIRMATIVE DEFENSE
### (Offset)

213. Ramos' claims against Defendants are barred, in whole or in part, because any claimed injury or damage has been offset by benefits or payments Ramos received.

## THIRTY-FIRST AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

214. Ramos would be unjustly enriched if she were permitted to obtain any recovery in this action.

## THIRTY-SECOND AFFIRMATIVE DEFENSE
### (Mediation and Arbitration Clause)

215. To the extent Ramos is deemed to have been granted any membership interests in Folium, or to the extent Ramos is otherwise deemed to be bound to Folium's operating agreement, Ramos' claims against Defendants herein are barred, in whole or in part, based on the mediation and arbitration clause contained in Folium's operating agreement.

## THIRTY-THIRD AFFIRMATIVE DEFENSE
### (Reservation of Rights)

216. Defendants reserve the right to allege additional Affirmative Defenses as they become known, and accordingly to amend this Amended Answer and Affirmative Defenses.

\*        \*        \*        \*        \*

## COUNTERCLAIMS

Counterclaim-Plaintiffs Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium"), Folium Equity Holding LLC ("Folium Equity"), Kashif Shan ("Shan"), and Quan Nguyen ("Nguyen") (individually and collectively, "Counterclaim-Plaintiffs"), by and through their undersigned counsel, submit their Amended Counterclaims against Counterclaim-Defendant Juanita Ramos ("Ramos" or "Counterclaim-Defendant") and allege as follows:

## NATURE OF THE ACTION

1.      This case arises out of the misconduct and campaign of disparagement launched by a disgruntled former employee, Counterclaim-Defendant Juanita Ramos, against her former employer, Counterclaim-Plaintiff Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium" or "Counterclaim-Plaintiff").

2.      Since being terminated for cause in August 2018, Ramos has launched a vicious campaign of attack on Folium and its principals, aiming to destroy the business and disparage Folium's principals in any way she can. Ramos was terminated as a result of, *inter alia*, her work on behalf of Folium's competitors while she was still a company employee and her involvement in a murder-for-hire threat by a former Folium employee targeting Folium's then-general counsel, which Ramos herself reported to Folium.

3.      When it was discovered that Ramos was working with the former Folium employee who had allegedly made the murder threat by offering $100,000 dollars to a convicted felon to carry it out, and further discovered that Ramos was actually

partnering with that convicted felon in a competing hemp-related business, Ramos changed her story and began attempting to convince anyone who would listen that it was actually the other way around – that, in fact, it was Folium's then-general counsel who had asked the felon to murder the former Folium employee.

4.     Folium's principals also learned that Ramos had developed an intense animosity towards Folium's principals and she discussed watching the company's facility burn to the ground.  It was also discovered that Ramos had undermined Folium in various other ways, including by improperly submitting personal expenses to be reimbursed by the company, and recruiting individuals who were working for Folium to leave and join one of her competing ventures.

5.     After being terminated, Ramos continued to damage and undermine Folium and its principals in a number of ways that are more fully described below, but included, among others, upon information and belief, alerting regulatory agencies to perceived regulatory violations (some of which Ramos had been in charge of preventing), and spreading false and malicious rumors about Folium and its principals having allegedly committed a litany of criminal acts to third parties who Ramos knew and intended would publish such false allegations publicly, all in an intentional effort to damage the company and its principals.

6.     Despite the substantial evidence of Ramos' disloyal and outrageous conduct, and her multiple breaches of fiduciary duty towards Folium, Ramos sought to be compensated by Folium upon her departure and has now brought a federal lawsuit based on a purported membership interest in Folium which Ramos was never actually

granted because the document purporting to grant her the interest was never signed by a majority of the company's members. In fact, nearly the entire basis for Ramos' complaints in this case rests on a fraudulent document that Ramos attaches as Exhibit B to her Amended Complaint. She argues that this document, the Written Consent, provided her a membership interest in Folium, but Ramos manipulated this document to make it appear as if it was fully executed, when in fact, it was not. This document (Ramos' Exhibit B) is fraudulent because it includes two signature pages – pages 6 and 7 of the 8-page pdf – taken from an entirely separate agreement. The true and correct copy of the Written Consent was never actually signed by a majority of the membership interests in Folium, which was required to give Ramos an actual membership interest in the company.

7.      Furthermore, while it appears that Ramos herself did sign a one-page attachment to this Written Consent which explicitly included a 4-year vesting schedule and irrefutably provides that Ramos could only possibly have been entitled to a .25% membership interest, she intentionally failed to attach this document to her complaints and deceptively argues that she is entitled to a 1% interest instead.

8.      By her filings in this case, Ramos has committed an abuse of process and Counterclaim-Plaintiffs seek, in addition to compensatory damages, punitive damages against Ramos for her intentional and malicious misconduct. Compensatory damages in this case include the economic and non-economic damage to Counterclaim-Plaintiffs, including the damage to their reputations which has resulted from Ramos' malicious campaign of lies and misrepresentations about them.

9.     Counterclaim-Plaintiffs also seek to hold Ramos accountable for her multiple breaches of fiduciary duty and seek declaratory judgments (1) that Ramos was never granted any membership interest in Folium, (2) that even to the extent she was ever granted a membership interest, any such interest has been involuntarily withdrawn under the terms of Folium's Operating Agreement, and (3) that Ramos is not entitled to any compensation for her alleged membership interest, if any. Counterclaim-Plaintiffs also bring claims in the alternative, seeking a declaratory judgment that Ramos is expelled from Folium's membership, and for breaches of contract based on Folium's Operating Agreement, and the New Member Consent document which Ramos appears to have signed, in the event the Court finds she was ever granted a membership interest (which Counterclaim-Plaintiffs dispute).

## **PARTIES**

10.     Counterclaim-Plaintiff Folium is a limited liability company organized and existing under the laws of the State of Colorado with its principal place of business at 615 Wooten Road, Suite 110, Colorado Springs, Colorado 80915. Folium is the largest known vertically-integrated producer, manufacturer, and global distributor of hemp oil in North America. Folium is a wholly owned subsidiary of Folium Equity.

11.     Counterclaim-Plaintiff Folium Equity is a limited liability company organized and existing under the laws of the State of Colorado with its principal place of business at 615 Wooten Road, Suite 110, Colorado Springs, Colorado 80915. The creation of Folium Equity was ratified and approved by the members of Folium on or about December 7, 2018. Folium Equity's Articles of Organization were filed with the

Colorado Secretary of State on or about December 16, 2018. Folium Equity has no parent company.

12.     Counterclaim-Plaintiff Shan is an individual with a principal place of business and residence in Colorado. Shan is the Chief Executive Officer of Folium, the Chairman, Chief Executive Officer, and President of Folium Equity, and the largest shareholder-member of Folium Equity.

13.     Counterclaim-Plaintiff Nguyen is an individual with a principal place of business and residence in Colorado. Nguyen is the Senior Vice President of Business Development of Folium, a founding member and Secretary of Folium Equity, and the second largest shareholder-member of Folium Equity.

14.     Upon information and belief, Counterclaim-Defendant Ramos is an individual with a primary residence in Colorado Springs, Colorado. Ramos was the former Executive Vice President of Governmental Affairs of Folium. She was terminated for cause on or about August 28, 2018 by Folium as a result of, among other things, her active solicitation of and work on behalf of Folium's competitors in violation of Ramos' fiduciary duties to Folium. Upon information and belief, Ramos is currently a consultant for Global Hemp Summit Group.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

16.     This Court may exercise personal jurisdiction over Ramos pursuant to C.R.S. § 13-1-124 as she is a resident of the state of Colorado and the claims set forth

in these Counterclaims arise from the transaction of business and the commission of tortious acts by Ramos within Colorado.

17.     Venue is proper in this District pursuant to 28 U.SC. §§ 1391(b)(1) and (b)(2).

## STATEMENT OF FACTS

### Folium: An Industry Innovator

18.     Folium is the largest known vertically-integrated producer, manufacturer, and global distributor of hemp oil in North America. The company is a business-to-business, bulk, and wholesale supplier of hemp-derived THC free (0.0% THC) hemp oil, water-soluble technology, and hemp oil finished products for human wellness and animal health.

19.     Folium was founded in 2014 in Colorado Springs, Colorado by Shan. It is fully licensed and registered with the Colorado Department of Agriculture, and all of its phytocannabinoid-rich hemp is grown in compliance with the landmark Agricultural Improvement Act of 2018, also known as the 2018 Farm Bill.

20.     Upon information and belief, Folium is the world's first hemp company issued a Certificate of Health and Free Sale and a Manufactured Food Establishment License by the Colorado Department of Public Health & Environment, certifying its 0.0% THC (non-detectable THC) hemp oil products meet the requirements for human consumption as well as legal distribution.

21.     Folium has over 300,000 sq. ft. of manufacturing space in southern Colorado, which supports processing, extraction, and purification operations. Folium currently employs more than 200 people.

22.     In or about March 2019, Folium successfully acquired the cannabinoid assets of FeyeCon Development and Implementation, BV and FeyeCon, BV (collectively, "FeyeCon"), located in Amsterdam. FeyeCon is one of Amsterdam's first licensed cannabis researchers and developers which designs and fabricates large scale processing equipment and supercritical $CO_2$ extraction machinery.

23.     As the industry's premier hemp company for manufacturing, processing, and distributing phytocannabinoid-rich bulk hemp oil and related food products, Folium has attracted prospective outside buyers for the company.

24.     Early in 2019, Australis Capital Inc. ("Australis") announced that it had invested $3,000,000 in Folium in a private offering investment. Subsequently, on or about December 10, 2019, Australis, Folium Equity, and a newly-formed and wholly-owned Colorado subsidiary of Australis, Folium Merger Sub, LLC ("Merger Sub"), entered into an agreement and plan of merger pursuant to which Australis would acquire all of the outstanding Folium Equity membership units not already owned by Australis (the "Australis Transaction"). The contemplated Australis Transaction was planned to be completed by way of a merger between Folium Equity and Merger Sub, with the resulting merged entity becoming a wholly-owned subsidiary of Australis, and Australis then being rebranded as "Folium Biosciences" and carrying on the current business of Folium Equity. Upon completion of the planned merger, Folium's members

would have held 89 percent of the resulting company and Australis' shareholders would have held 11 percent, resulting in a reverse takeover of Australis. However, upon information and belief, partially because of Ramos' continued hostile actions towards Defendants, including the widely-disseminated baseless allegations contained in her original Complaint and Amended Complaint, Australis pulled out of the planned merger this month.

25. Upon information and belief, Ramos' actions against Folium and its principals were and are part of a coordinated effort to interfere with the acquisition of Folium Equity, depress Folium's value, benefit Folium's competitors, and publicly disparage Folium and its principals in retaliation for Ramos' termination for cause, as well as an attempt by Ramos to acquire an interest in Folium – an interest to which she is clearly not entitled.

**Ramos' Employment and Subsequent Termination by Folium**

26. Upon information and belief, prior to her employment with Folium, Ramos had little, if any background and experience with regulatory agencies and limited involvement in advocacy in the cannabis space specifically. Yet she convinced Folium's principals that she had a wealth of experience and relationships with a variety of influential leaders. Ramos claimed that she had been a government relations representative in Utah and had a number of government contacts, but those claims proved to be gross exaggerations.

27. Ramos was hired on or about April 25, 2017 by Folium as a government relations representative and internal lobbyist. Because Folium was growing so fast at

the time Ramos was hired, management did not have time to conduct a thorough background check or verify Ramos' previous employers or contacts. Nevertheless, based on her misrepresentations about her experience, Folium hired her and provided her a very large salary and an expense account.

28.     While Ramos appeared to have exaggerated her influence and contacts, during the first few weeks of Ramos' employment, she seemed to be doing her job, meeting with people and attempting to make political connections.

29.     Folium was operating in a rapidly expanding and competitive industry in a small geographical market. It sought to incentivize its senior-level employees and executives to remain with the company and contribute to the company's success. Shan spoke with Ramos about offering her membership interests in the company in part as an incentive to perform her work at a high level, but always made clear that any such membership interest would vest over a four-year period of time and would be contingent on Ramos remaining with the company.

30.     However, after she was at the job only a few months, Ramos began acting in ways that were detrimental to the interests of Folium.

31.     Upon information and belief, after Ramos had been on the job for approximately six months, Folium began to notice irregularities in Ramos' expense account, and it later became clear that Ramos had been paying personal expenses with company funds (expenses which were reimbursed by Folium).

32.     On several occasions, Ramos lied about her whereabouts, telling Folium executives that she was traveling to perform work for the company or to attend

meetings, when in fact, she stayed home and simply did not go to work or attend the meetings she said she was attending.

33.     Although Ramos was supposed to act as a liaison to the various local, state and federal regulatory agencies who had authority over Folium's business, and was tasked with ensuring that Folium was complying with its various obligations, she often failed to properly apprise Folium personnel about the relevant regulations and how they would be enforced. Despite establishing contacts with various agencies, she often neglected to follow through with necessary actions that would have ensured Folium remained in compliance with all its applicable obligations.

34.     As Folium very quickly grew into an industry-leading company with a proprietary extraction processes in the rapidly-expanding market for hemp oil, management was understandably concerned about its proprietary information being used by competitors. Ramos used these concerns to her advantage by spreading rumors and insinuations about a number of Folium employees.

35.     Ramos is a manipulative person, and she showed herself to be particularly adept at spreading suspicions about her co-workers. Ramos was able to convince Folium's then-general counsel that there were several employees at the company that were diverting information and customers to other competitors, but it soon became clear that Ramos herself had been the one diverting business and opportunities away from Folium.

36.     For instance, after an executive of the company left Folium and started a competing business, Ramos diverted business to the former executive's company and she brokered sales of biomass for at least one other competitor of Folium.

37.     Ramos' misrepresentations often had an air of truth or some basis in fact. But as Folium's then-general counsel began to investigate Ramos' stories, it became clear that Ramos was often guilty of the precise behaviors that she attributed to others. For instance, Ramos once complained that Folium resources were being used to pay for personal expenses or investments of certain Folium executives, including a restaurant in Florida. An investigation into Ramos' own spending turned up personal expenses that Ramos charged to Folium, effectively embezzling this money from her employer.

38.     Viewed through this lens, the murder-for-hire allegations in Ramos' complaint are simply a logical extension of a well-established pattern of behavior.

39.     Later, after Ramos has turned completely against Folium, she found a curiously similar and sympathetic mouthpiece in the "journalist" (who, upon information and belief, was actually a journalist-for-hire) Teri Buhl, and was able to spread her lies, insinuations and mistruths about Folium to a broader audience through Buhl.

**The Murder-For-Hire Plots Raised by Ramos**

40.     Ramos was friendly with Folium's head of security, Luke Smith. Smith had previously been acquainted with Ramos through her daughter, who had dated one of Smith's friends.

41.     Ryan Lewis was a former executive of Folium who left Folium in or around January 2018 and founded a competing company, Global Cannibinoids. Ramos later became friendly with Ryan Lewis.

42.     In or around August of 2018, Ramos called Luke Smith and told him that Ryan Lewis had offered Shaun Vanderpool, a convicted felon and an acquaintance of Ramos', $100,000k to "take out" Folium's then-general counsel, Craig Brand.  Smith informed Folium management of this murder-for-hire plot.

43.      Upon learning this information, Brand and Folium's management became understandably very concerned and asked Luke Smith to investigate these allegations.

44.     Smith proceeded to investigate the allegations on behalf of Folium and as part of his investigation, he met with Ramos. Because Ramos and Smith had been friends, Ramos spoke freely to Smith. Smith recorded certain conversations he had with Ramos. These recordings made clear that Ramos had developed a great deal of animosity towards Folium and its principals.

45.     On or about August 23, 2018, Ramos was recorded discussing with Smith a murder for hire plot whereby Ryan Lewis offered Shaun R. Vanderpool, a convicted felon and Ramos' acquaintance, $100,000 to kill Folium's then-general counsel, Craig Brand. On or about the next day, Ramos was heard discussing her desire to take the company (Folium) down and describing how she would watch from the parking lot while Folium's facility burned to the ground. The murder for hire plot and the arson threat were reported to the Colorado Springs Police Department on or about August 29, 2018.

Attached hereto as **Exhibit 1** is a true and correct copy of Case Report #2018-00032107 from the Colorado Springs Police Department.

46.     In the days and weeks leading up to her termination, Ramos demonstrated hostility towards Folium and its principals. She became extremely distrustful and antagonistic towards Folium's executive team and began actively soliciting business on behalf of other companies in competition with Folium. Upon information and belief, Ramos decided to turn the tables on Folium's then-general counsel and made up a story about Brand soliciting Vanderpool to kill Lewis, which was an attempt to deflect attention and suspicion of Mr. Lewis, who had recently offered Ramos a lucrative position at his competing hemp processing and extraction company.

47.     Upon information and belief, Ramos devised the plan with Shaun Vanderpool to try to convince Luke Smith that Craig Brand had actually solicited Vanderpool to kill Ryan Lewis. Ramos and Vanderpool attempted to convince Smith that while Ryan Lewis was not serious about his threat to kill Brand and his offer of $100,000 to Vanderpool to do it, Brand was actually capable of so heinous a crime as murder-for-hire, and much more likely to actually go through with it.

48.     Ramos attempted to solicit Luke Smith to come work for a competitor of Folium that she had begun working for while she was still employed at Folium.

49.     Ramos was terminated for cause on or about August 28, 2018 by Folium as a result of, among other things, her active solicitation of and work on behalf of Folium's competitors in violation of Ramos' fiduciary duties to Folium, her fraudulent

expense submissions and the evidence concerning her involvement in the murder for hire plot against Brand.

50.　　After she was terminated, Ramos' tortious acts towards Folium and its principals continued. Among other things, Ramos, upon information and belief, contacted several government agencies, both local and federal, to report false or misleading accusations against Folium, and contacted current Folium employees in an attempt to turn them against Folium. Upon information and belief, Ramos also shared Folium's confidential and proprietary information, including Folium's trade secrets, with at least one of Folium's competitors, and contacted at least one Folium customer in an attempt to sabotage the relationship.

51.　　Although Ramos falsely claims that she remains a member of Folium and has a one percent (1%) membership interest in the company, she has nevertheless continued her pattern of egregious and willful misconduct against Folium, Folium Equity, and their principals.

**The Agreements: the New Member's Consent and the Operating Agreement**

52.　　On or about July 28, 2017, about three months after she was hired by Folium, Ramos was presented with a document entitled "New Member's Consent." The New Member's Consent was attached as an exhibit to a document entitled "Written Consent of the Majority of the Members of Whole Hemp Company LLC." Attached hereto as **Exhibit 2** is a true and correct copy of the Written Consent, which on its face states that it is "Effective as of July 28, 2017" . But this document was never fully signed. In order to be effective, the Written Consent, by its plain terms had to be signed

by a majority of the vested membership interests in Folium. As is evident from the document attached here as Exhibit 2, it was signed only by Quan Nguyen (who had a 19.50% interest), but not by Kashif Shan (who had a 34.01315% interest).

53.     At this time, July 2017, it had become the customary practice of Folium to have Messrs. Nguyen and Shan, who together owned a majority of the vested membership interests in Folium, sign similar written consent forms when granting membership interests to Folium executives and senior-level employees.

54.     Shan never signed the Written Consent purporting to grant Ramos a membership interest in Folium.

55.     Because a majority of the vested membership interests in Folium never signed the Written Consent, this agreement never became effective, and Ramos was never actually granted any membership interest.

56.     Alternatively, even to the extent that the Written Consent could be deemed to show some intention on the part of Folium at that time (July 2017) to grant Ramos some membership interest, the New Member's Consent which was attached to it as an exhibit makes clear that Ramos was entitled to, at most, a .25% membership interest in Folium.

57.     The New Member's Consent provided that Ramos would receive a total of one percent (1%) membership interest in Folium that would vest over a period of four (4) years pursuant to an expressly delineated schedule, with the first .25% vesting if Ramos was still employed with Folium on July 1, 2018, an additional .25% vesting if Ramos was still employed with Folium on July 1, 2019, and so on until July 1, 2021.

Filed herewith as **Exhibit 3** is a true and correct copy of the New Member's Consent,

dated July 28, 2017.

58.     The New Member's Consent states in part:

The undersigned agrees to be bound as a member of Whole Hemp
Company LLC by the terms of the Operating Agreement of Whole Hemp
Company LLC as if the undersigned was a signatory thereof, in exchange
for a total 1.0% membership interest in Whole Hemp Company LLC, which
will be vested over four years on the following schedule:

- 0.25% will vest if the undersigned is still employed with Whole Hemp
  Company LLC on July 1, 2018;

- An additional 0.25% will vest if the undersigned is still employed with
  Whole Hemp Company LLC on July 1, 2019;

- An additional 0.25% will vest if the undersigned is still employed with
  Whole Hemp Company LLC on July 1, 2020;

- An additional 0.25% will vest if the undersigned is still employed with
  Whole Hemp Company LLC on July 1, 2021.

…

The undersigned acknowledges that the undersigned has received a copy
of the Operating Agreement of Whole Hemp Company LLC.

59.     Pursuant to its terms, the New Member's Consent provided that Ramos

would receive a quarter of a percent (.25%) membership interest in Folium on July 1,

2018. As Ramos was terminated on or about August 28, 2018 by Folium, no additional

or further membership interests in Folium could have possibly vested (assuming that

any membership interest could have vested at all, despite the fact that the Written

Consent was never executed and a majority of the vested membership interests never

voted to grant Ramos any membership interests).

60.     In breach of the explicit terms of the New Member's Consent, Ramos has claimed and continues to claim that she has a one percent (1%) membership interest in Folium.

61.     The New Member's Consent further provides that Ramos agreed to be bound as a member of Folium by the terms of the Operating Agreement of Whole Hemp Company LLC (the "Operating Agreement"). Filed herewith as **Exhibit 4** is a true and correct copy of the Operating Agreement that was prepared in or about July 2017. The New Member's Consent provided that Ramos received a copy of the Operating Agreement.

62.     Ramos has also alleged that she agreed to be bound by the Operating Agreement.

63.     The Operating Agreement was prepared in or around July 2017. This July 2017 version of the Operating Agreement was never signed by the listed members. In lieu of signing the Operating Agreement, it was Folium's practice to have the members sign consents to be bound by the Operating Agreement.

64.     Although it was never signed, page 15 of the Operating Agreement set forth Ramos' contingent and conditional membership interest, and the applicable vesting schedule, in Folium and provided in relevant part:

> **Juanita Ramos'** percentage of ownership will be vested through 4 years. The schedule of vesting as scheduled:
>
> Year 1: 0.25%
> Year 2: Additional 0.25%
> Year 3: Additional 0.25%
> Year 4: Additional 0.25%

**Total: 1.0%**

Juanita's start date will be 07/01/2017 and vesting will begin on this date.

65.    Paragraph 20 of the Operating Agreement sets forth the duty of loyalty of

the members of Folium and provided:

**Duty of Loyalty**

No Member or Manager will engage in any business, venture or transaction, whether directly or indirectly, that might be competitive with the business of the Company or that would be in direct conflict of interest to the Company. Any potential conflicts of interest will be deemed an Involuntary Withdrawal of the offending Member or Manager and may be treated accordingly by the remaining Members. A withdrawing Member or Manager will not carry on a similar business to the business of the Company within any established or contemplated market regions of the Company for a period of at least 5 years after the date of withdrawal.

66.    Upon information and belief, Ramos violated this provision of the

Operating Agreement by directly engaging in businesses and transactions that were

directly competitive with Folium, including by entering into agreements with, *inter alia*,

Shaun Vanderpool and his entity Hempire (in which Ramos stated she was a 25%

owner), Ryan Lewis, and a Canadian entity owned by a man named Kaleed for the sale

of hemp biomass.

67.    Paragraph 25 of the Operating Agreement set forth the requirements for

meetings of the members of Folium and provided:

**Member Meetings**

There must be at least 50.00% of the Ownership interests present at a meeting for any decisions to be binding.

68.     Paragraph 26 of the Operating Agreement provided that "A new Member may only be admitted to the Company with a majority vote of the existing Membership interests."

69.     No meeting of the members of Folium was ever held to vote on the grant of any membership interests to Ramos.

70.     No vote was ever held among members about whether to admit Ramos as a member of Folium.

71.     Accordingly, Ramos was not admitted as a member of the company (Folium) pursuant to the terms of the Operating Agreement, because a majority vote of the existing Membership interests did not take place to admit Ramos.

72.     Paragraph 27 of the Operating Agreement provided, in part, that "The new Member agrees to be bound by all the covenants, terms, and conditions of this Agreement, inclusive of all current and future amendments."

73.     Paragraph 29 of the Operating Agreement provided for the involuntary withdrawal and expulsion of members of Folium and stated:

**Disassociation of a Member**

Involuntary Withdrawal: Events leading to the involuntary withdrawal of a Member (the "Dissociated Member") from the Company will include but not be limited to: death of a Member; Member mental incapacity; Member disability preventing reasonable participation in the Company; Member incompetence; breach of fiduciary duties by a Member; criminal conviction of a Member; Operation of Law against a Member or a legal judgment against a Member that can reasonably be expected to bring the business or societal reputation of the Company into disrepute. Expulsion of a Member can also occur on application by the Company or another Member, where it has been judicially determined that the Member: has engaged in wrongful conduct that adversely and materially affected the Company's business; has willfully or persistently committed a material breach of the Operating

Agreement or of a duty owed to the Company or to the other Members; or has engaged in conduct relating to the Company's business that makes it not reasonably practicable to carry on the business with the Member. The withdrawal of such Member will have no effect upon the continuance of the Company business. If the remaining Members elect to purchase the interest of the withdrawing Member, the remaining Members will serve written notice of such election, including the purchase price and method and schedule of payment for the withdrawing Member's interest, upon the withdrawing Member, their executor, administrator, trustee, committee or analogous fiduciary within a reasonable period after acquiring knowledge of the change in circumstance to the affected Member. The purchase amount of any buyout of a Member's interest will be determined as outlined in the Valuation of Interest section of this Agreement.

74.    Paragraphs 52, 55, and 57 of the Operating Agreement set forth at least some acts that members of Folium are prohibited from performing and provided:

**Forbidden Acts**

52. No Member may do any act in contravention of this Agreement. . . .

55. No Member will have the right or authority to bind or obligate the Company to any extent with regard to any matter outside the intended purpose of the Company. . . .

57. Any violation of the above forbidden acts will be deemed an Involuntary Withdrawal of the offending Member and may be treated accordingly by the remaining Members.

75.    In breach of the Operating Agreement, Ramos has done a number of acts in contravention of the Operating Agreement. She has engaged in business and transactions that are directly competitive with the business of the Company and which were in direct conflict of interest to the Company; she became associated with and took an ownership stake in competing businesses and attempted to recruit Folium's head of security to join her in a competing business. She also attempted to obligate the Company to pursue frivolous derivative litigation against its principals, a matter decidedly outside the intended purpose of the Company.

76.     As a direct result of her own actions set forth in detail herein, Ramos has involuntarily withdrawn as a member from Folium because of, among other things, her "potential conflicts of interest" to and with Folium, "breach of fiduciary duties" owed to Folium and its members, "act[s] in contravention of [the Operating] Agreement," and attempts "to bind or obligate [Folium]… with regard to any matter outside the intended purpose of [Folium]" in contravention of paragraphs 20, 29, 52, 55, and 57 of the Operating Agreement.

77.     Accordingly, to the extent Ramos ever had any membership interest in Folium (which Counterclaim-Plaintiffs dispute), Counterclaim-Plaintiffs seek a declaratory judgment that Ramos has involuntarily withdrawn as a member of Folium.

78.     To the extent Ramos has not already involuntarily withdrawn as a member of Folium, Counterclaim-Plaintiffs seek a declaratory judgment expelling Ramos as a member of Folium upon a finding that Ramos has "engaged in wrongful conduct that adversely and materially affected [Folium's] business; has willfully or persistently committed a material breach of the Operating Agreement or of a duty owed to [Folium] or to the other Members; or has engaged in conduct relating to [Folium's] business that makes it not reasonably practicable to carry on the business with [Ramos]" pursuant to paragraph 29 of the Operating Agreement.

**The Special Meeting: the Creation of Folium Equity & Transfer of Membership Interests**

79.     On or about December 7, 2018, a special meeting of the members of Folium was held at 615 Wooten Road, Suite 110, Colorado Springs, Colorado (the "Special Meeting").

80.     All then-members of Folium were given requisite notice of the Special Meeting pursuant to paragraph 23 of the Operating Agreement. A few members elected not to attend the Special Meeting.

81.     Ramos was not given notice of the Special Meeting because, even to the extent she had ever been a member of Folium with vested membership interests, as of the date of the Special Meeting, she was no longer a member of Folium because she had involuntarily withdrawn as a member as a result of the misconduct described above.

82.     Over 55 members were present for the Special Meeting, representing over 90% of the outstanding membership interests in Folium at the time.

83.     At the Special Meeting, the present members examined and unanimously approved and adopted nine new resolutions. The members of Folium ratified and approved, among other things, the creation of Folium Equity, and the contribution of each of their membership units in Folium to Folium Equity in exchange for membership units in Folium Equity.  The members also unanimously approved and adopted a resolution confirming that Folium became a wholly-owned subsidiary of Folium Equity (the entity in which the members now hold membership units), and it was agreed that the only member of Folium going forward would be Folium Equity. Because at least 50% of Folium's membership interest was represented at the Special Meeting, the decisions from the Special Meeting are binding pursuant to paragraph 25 of the Operating Agreement.

**The Abuse of Process: Ramos' Baseless Litigation & Fraudulent Exhibit B**

84.      On or about September 20, 2019, more than a year after she was

terminated by Folium for cause, Ramos filed a complaint in Colorado state court against

Folium, Shan, and Nguyen, purporting to bring claims for breach of contract, declaratory

judgment for distribution of shares under C.R.S. § 13-51-101 *et seq.*, breach of fiduciary

duty, and accounting and member communications. The case was filed in Colorado

state district court in El Paso County, Colorado (the "Ramos State Complaint"). *See*

*Ramos v. Whole Hemp Company LLC et al.*, Case No. 2019CV32196 (Colo. Dist. Ct.,

El Paso Cty).  Filed herewith as **Exhibit 5** is a true and correct copy of the Ramos State

Complaint with its exhibit A.

85.      On or about November 4, 2019, the Ramos State Complaint was

voluntarily withdrawn and the case was dismissed without prejudice.

86.      On or about November 18, 2019, Ramos, through her counsel, purported

to make a derivative proceeding demand upon Folium pursuant to C.R.S. § 7-80-714

(the "Purported Demand"). Filed herewith as **Exhibit 6** is a true and correct copy of the

Purported Demand received via electronic mail. The Purported Demand was sent by e-

mail to Stan Garnett, counsel for Folium, and by FedEx and e-mail to Ricardo Calzada,

II, in-house counsel at Folium and the registered agent for both Folium and Folium

Equity. The Purported Demand letter states in relevant part:

> I am writing to inform you that my client, Juanita Ramos, hereby demands
> pursuant to C.R.S. § 7-80-714 that Whole Hemp Company LLC d/b/a
> Folium Biosciences ("Folium Biosciences") take action against Kashif Shan
> and Quan Nguyen for the actions identified in her Verified Complaint, which
> is attached.

The physical copy of the Purported Demand Mr. Calzada received on November 19, 2019 via FedEx did not attach a "Verified Complaint," but rather the unverified Ramos State Complaint, which did not purport to allege any derivative claims on behalf of Folium. However, the Purported Demand which was emailed to Mr. Calzada on or about November 18, 2019 did include as an attachment an unfiled copy of the original verified complaint in this Action.[3]

87.     That same day, on November 18, 2019, without waiting the requisite 30-day notice period, Ramos initiated this action purporting to bring direct and derivative claims against Counterclaim-Plaintiffs, including violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. § 1961 *et seq.*), violations of the Colorado Organized Crime Control Act (COCCA) (C.R.S. § 18-17-101 *et seq.*), breach of fiduciary duty, violation of the Wiretapping Act (18 U.S.C. §§ 2511, 2520), breach of contract, declaratory judgment under 28 U.S.C. § 2201 and C.R.S. § 13-51-101 *et seq.*, accounting and member communications, and judicial dissolution (the "Original Federal Complaint"). *See* Dkt. No. 1.

88.     Subsequently, in connection with Folium's motion to dismiss the derivative claims of the Original Federal Complaint, counsel for Ramos and Folium met and conferred, and Ramos agreed to file an amended complaint.  Despite being alerted to deficiencies in her original pleading, Ramos filed a First Amended Verified Complaint (the "Amended Federal Complaint") on January 31, 2020.

---

[3] Folium, in its capacity as nominal defendant, is filing a motion to dismiss these purported derivative claims, because, *inter alia*, demand was not properly made.

89.     As set forth above, paragraph 55 of the Operating Agreement provided: "No Member will have the right or authority to bind or obligate the Company to any extent with regard to any matter outside the intended purpose of the Company." Ramos is not a member of Folium, but even if she were, in her Original Federal Complaint and again in the Amended Federal Complaint, Ramos has improperly attempted to bind Folium outside the intended purpose of the company by purporting to bring derivative claims on behalf of Folium for violations of RICO, violations of COCCA, and breach of fiduciary duty against Shan and Nguyen, for which there is no basis in law or fact.

90.     Moreover, as set forth above, the New Member's Consent (even to the extent it was valid in the absence of a majority of the membership interests signing the Written Consent), provided that Ramos received, at most, a quarter of a percent (.25%) membership interest in Folium as of the date of her termination for cause. Ramos nevertheless improperly purports to bring derivative claims on behalf of Folium based on an alleged one percent (1%) membership interest in Folium.

91.     Each of the Ramos State Complaint, the Original Federal Complaint, and the Amended Federal Complaint are centered around and rely upon an exhibit (Exhibit B to the Amended Federal Complaint) filed concurrently therewith that is a fraudulent document. *See Ramos v. Whole Hemp Company LLC et al.*, Case No. 2019-CV-32196 (Colo. Dist. Ct., El Paso Cty); Dkt. Nos. 1-1, 31-2 in this case. Exhibit B purports to be the fully executed Written Consent of the Majority of the Members of Whole Hemp Company, LLC (the "Written Consent"), effective as of July 28, 2017, and signed by Shan, Ramos, William Brill, Nguyen, Ryan Lewis, Rajesh Gupta, Bradley Jones, and

Jenna Lubieniecki. The Written Consent, however, was never fully executed. Exhibit B is in fact evidence of Ramos' blatant fraud, forgery, and lies.

92.     Indeed, the Written Consent is clearly void and unenforceable. Upon examination, it is apparent that the first two purported signature pages of Exhibit B, on pages 6 and 7 of the 8-page pdf (the "Fraudulent Signature Pages") are fraudulent additions to the Written Consent. This is made obvious by: (i) the floating row at the top of page 8 (Minkz Ngo & Dawn Ngo | 0.04167%), which is actually a continuation of the table set forth on pages 1-5, (as is evident in the true and correct copy of the Written Consent attached hereto as Exhibit 2); and (ii) the difference in fonts between pages 1-5 and 8, on one hand, and the Fraudulent Signature Pages (pages 6 and 7), on the other hand.

93.     The relevant document that Ramos did actually sign was the New Member's Consent. *See* Exhibit 3. The New Member's Consent, which Ramos omitted from her pleadings, sets forth the true and correct vesting schedule of any purported membership interest in Folium (to the extent she ever had any membership interest at all, which Counterclaim-Plaintiffs dispute).

94.     The Fraudulent Signature Pages are actually from a completely separate document, the Limited Liability Company Operating Agreement for Sacred Roots of Healing, LLC, dated August 10, 2017 (the "Sacred Roots Agreement"). Filed herewith as **Exhibit 7** is a true and correct copy of the Sacred Roots Agreement. Sacred Roots of Healing LLC was an entity that Ramos had started, and she attempted to persuade Folium's principals to use the entity as a hemp oil retail brand. Folium's principals

initially agreed to participate in the organization and were planning to give product to

Ramos for the entity, so an operating agreement was prepared, but those plans were

eventually abandoned and nothing ever came of the entity to the best of Counterclaim-

Plaintiffs' knowledge.

95.     Upon information and belief, Counterclaim-Plaintiffs strongly suspect that

Ramos filed both the vexatious and frivolous Ramos State Complaint, the Original

Federal Complaint, and the Amended Federal Complaint, along with the fraudulent

Exhibit B, as part of a coordinated effort to, *inter alia*, benefit Folium's competitors, and

publicly disparage Folium, Folium Equity, and their principals in retaliation for her

termination for cause and in an attempt to acquire an interest in Folium that she is

clearly not entitled to.

96.     Indeed, Ramos, through her counsel, has certified that the *Whole Hemp

Company LLC et al. v. Buhl*, Case No. 1:19-cv-10073 (S.D.N.Y.), case Folium has filed

against "reporter" Teri Buhl for defamation and other claims in the Southern District of

New York is related to the present action. *See* Dkt. No. 5. Upon information and belief,

Ramos is one of Buhl's alleged "sources" for her numerous libelous articles and

slanderous social media posts about Folium and its principals.

## <u>COUNTERCLAIM I</u>
**(Declaratory Judgment that Ramos Was Never Granted Any Membership Interest
in Folium)**

97.     Counterclaim-Plaintiffs repeat, reallege, and incorporate each and every

allegation contained in paragraphs 1 through 96 of the Counterclaims as though fully set

forth herein.

98.     As set forth above, Exhibit B to the Amended Federal Complaint purports to be the fully-executed Written Consent. Exhibit B, however, is blatantly fraudulent. The true and correct copy of the Written Consent was never fully executed, and thus it is void and unenforceable.

99.     Despite the fact that the Written Consent was never executed by a majority of the vested membership interests in Folium, Ramos has claimed that she was granted membership interests in Folium by a forged and fraudulent version of the Written Consent.

100.    An actual and genuine controversy has arisen and now exists between Counterclaim-Plaintiffs and Ramos concerning her rights under the Written Consent.

101.    Counterclaim-Plaintiffs therefore seek a declaratory judgment that the Written Consent is void and unenforceable and that Counterclaim-Plaintiffs have no obligations to Ramos under that agreement and in fact never had any obligations to Ramos under that agreement, such that Ramos was never granted any membership interests in Folium.

## COUNTERCLAIM II
**(Abuse of Process)**

102.    Counterclaim-Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 through 101 of the Counterclaims as though fully set forth herein.

103.    Ramos was terminated for cause on or about August 28, 2018 by Folium as a result of, among other things, her active solicitation of and work on behalf of Folium's competitors in violation of Ramos' fiduciary duties to Folium, her fraudulent

expense submissions and the evidence concerning her involvement in the murder for hire plot against Brand.

104.    Over a year later, on or about September 20, 2019, Ramos filed the Ramos State Complaint against Folium, Shan, and Nguyen, purporting to allege claims of breach of contract, declaratory judgment for distribution of shares under C.R.S. § 13-51-101 *et seq.*, breach of fiduciary duty, and accounting and member communications in Colorado state district court in El Paso County, Colorado. The Ramos State Complaint lacked a reasonable factual basis and was devoid of any cognizable legal merit.

105.    The Ramos State Complaint was voluntarily withdrawn and dismissed without prejudice on November 4, 2019.

106.    On November 18, 2019, Ramos, through her counsel, sent Folium's counsel the Purported Demand. The Purported Demand was insufficient because it did not give Folium an opportunity to take suitable action. Ramos did not wait the requisite 30 days before filing her purported derivative action against Counterclaim-Plaintiffs.

107.    On November 18, 2019, the same day the Purported Demand was sent, Ramos filed the Ramos Federal Complaint against Counterclaim-Plaintiffs, purporting to allege violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. § 1961 *et seq.*), violations of the Colorado Organized Crime Control Act (C.R.S. § 18-17-101 *et seq.*), breach of fiduciary duty, violation of the Wiretapping Act (18 U.S.C. §§ 2511, 2520**)**, breach of contract, declaratory judgment under 28 U.S.C. § 2201 and C.R.S. § 13-51-101 *et seq.*, accounting and member communications, and

judicial dissolution. The Original Federal Complaint also lacks a reasonable factual basis and is devoid of any cognizable legal merit.

108.    On January 31, 2020, Ramos filed the Amended Federal Complaint, alleging the same legal claims but attempting to supplement the pleadings to avoid a motion to dismiss by Folium in its capacity as a nominal defendant. Nonetheless, the Amended Federal Complaint also lacks a reasonable factual basis and is devoid of any cognizable legal merit.

109.    Even to the extent that Ramos could argue that she was ever effectively granted a membership interest in Folium (which Folium disputes), and could somehow further argue that Ramos' actions in competition with Folium while she was an employee were insufficient to cause Ramos' involuntary withdrawal as a member, the filing of the Ramos State Complaint, the Original Federal Complaint and the Amended Federal Complaint, each represent willful action by Ramos to use the process of the courts in an improper manner because Ramos presented the Written Consent as a true copy of that document but included signature pages that were taken from a completely separate agreement, each time attempting to pass the entirety of the document off as if it were not only accurate, but also complete. Upon information and belief, Ramos intentionally failed to attach the New Member's Consent and falsely alleges that she has a one percent (1%) membership interest in Folium when, at most, she had a quarter of a percent (.25%) membership interest in Folium before she was involuntarily withdrawn as a member of Folium.

110.    As the exhibit to each of the Ramos State Complaint, Original Federal Complaint, and Amended Federal Complaint is a blatantly manipulated document, and no copy of the Written Consent was ever fully executed, the Written Consent is plainly void and unenforceable. Ramos has nevertheless utilized this Court, and other courts of this state, in an attempt to enforce the Written Consent.

111.    All of Ramos' improper filings against Counterclaim-Plaintiffs, as detailed above, lacked a reasonable factual basis as they were all premised on a falsified document, and all of her filings further lacked any cognizable basis in law.

112.    Upon information and belief, Ramos intentionally filed the vexatious and frivolous Ramos State Complaint, Original Federal Complaint, and Amended Federal Complaint, along with the fraudulent Exhibit B, in an attempt to impose civil liability upon Counterclaim-Plaintiffs in retaliation for her termination for cause, to harm Folium's business and its principals, and to destroy the value of the company, and in an attempt to acquire an interest in Folium to which she is clearly not entitled.

113.    Ramos willfully used the legal process and the courts (including this Court) in a manner that was not proper in the regular conduct of a judicial proceeding and her actions constitute an abuse of process.

114.    As a direct and proximate result of Ramos' abuse of process, Counterclaim-Plaintiffs have been damaged in an amount to be determined at trial but believed to be in excess of $19,000,000, including, without limitation, attorneys' fees expended in defending against the Ramos State Complaint, Original Federal Complaint, and Amended Federal Complaint, the loss of business suffered as a result of Ramos'

false allegations against the company, and the diminution in value of Folium and Folium Equity as going concerns as a result of Ramos' false allegations.

115.    The activities of Ramos described above, and particularly the filing of forged and false documents, were willful and malicious. Counterclaim-Plaintiffs are therefore entitled to punitive damages against Ramos in an amount sufficient to punish and deter her from similar future conduct, estimated by Counterclaim-Plaintiffs to be a minimum amount of $19,000,000 or such greater sum as may be assessed by the trier of fact.

**<u>COUNTERCLAIM III</u>**
**(Breach of Contract - Operating Agreement)**

116.    Counterclaim-Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 through 115 of the Counterclaims as though fully set forth herein.

117.    To the extent Ramos is deemed to have bound herself to the Operating Agreement by reason of signing the New Member's Consent, Ramos entered into a contract – the Operating Agreement – with the other members of Folium at that time. Ramos breached her obligations under the terms of the Operating Agreement as detailed above.

118.    Specifically, Ramos breached the Operating Agreement by, among other things: engaging in a business, venture or transaction that might be (and in fact was) competitive with the business of Folium and that was in direct conflict of interest to the company. As examples, Ramos joined the business of Shaun Vanderpool, Hempire, as a partial owner and brokered transactions for the sale of biomass for that business and

for one of Ryan Lewis' businesses which operated in direct competition with Folium. Ramos engaged in a variety of actions detailed above which constituted breaches of Ramos' fiduciary duty to Folium and to the members of Folium, which were acts in contravention of the Operating Agreement. Furthermore, Ramos, without seeking proper permission or serving upon Folium any sufficient demand for action, has purported to bring a derivative action on behalf of the company in an attempt to bind or obligate the company in a matter outside the intended purpose of the company (and without any substantial justification for same).

119.    Shan, Nguyen and Folium have performed the conditions, covenants, and promises required of them pursuant to the terms of the Operating Agreement, except those conditions, covenants, and promises which have been prevented or otherwise excused by the conduct of Ramos.

120.    Additionally, under Colorado law, there exists an implied covenant of good faith and fair dealing in the Operating Agreement, creating a duty in Ramos to cooperate with Shan and Nguyen to achieve the objectives of the Operating Agreement and to refrain from doing anything that would render the other member's performance unreasonably difficult or impossible, or that would prevent them from realizing the benefit of the bargain.

121.    Ramos breached the implied covenant of good faith and fair dealing by, among other acts detailed above, engaging in businesses and transactions that benefited competitors of Folium and businesses in which Ramos had an interest to the exclusion of Folium; attempting to recruit Luke Smith and possibly other employees

and/or independent contractors doing business with Folium to work for competing businesses; upon information and belief, alerting local agencies to potential regulatory issues or suspicions of impropriety at Folium's facilities; spreading false and malicious rumors, insinuations and false allegations about Folium's business practices and the business practices of its principals to other employees and former employees of Folium, and to outside parties who Ramos knew would publish such false allegations publicly; and accusing and attempting to accuse Folium's then-general counsel of attempting to solicit the murder for hire of Ryan Lewis.

122.     Counterclaim-Plaintiffs have been damaged by Ramos' actions in an amount to be determined at trial but believed to exceed $19,000,000.

**COUNTERCLAIM IV**
**(Breach of Contract - New Member's Consent)**

123.     Counterclaim-Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 through 122 of the Counterclaims as though fully set forth herein.

124.     In signing the New Member's Consent, Ramos entered into an agreement with the members of Folium. Ramos breached her obligations under the terms of the New Member's Consent as detailed above.

125.     Specifically, Ramos breached the New Member's Consent by, among other things, falsely claiming in the Ramos State Complaint, Original Federal Complaint, and Amended Federal Complaint that she was granted and has a one percent (1%) membership interest in Folium, when in reality, the clear terms of the New Member's Consent could only have possibly entitled Ramos to a .25% membership interest in

Folium, if any (which Counterclaim-Plaintiffs dispute, both because such interest was never granted, and even to the extent it was granted, it was involuntarily withdrawn and/or should be deemed extinguished).

126. Folium, Shan and Nguyen have performed the conditions, covenants, and promises required of them pursuant to the terms of the New Member's Consent, except those conditions, covenants, and promises which have been prevented or otherwise excused by the conduct of Ramos.

127. Counterclaim-Plaintiffs have been damaged by Ramos' actions in an amount to be determined at trial but believed to exceed $19,000,000.

**COUNTERCLAIM V**
**(Breach of Fiduciary Duty)**

128. Counterclaim-Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 through 127 of the Counterclaims as though fully set forth herein.

129. While she was an employee of Folium, Ramos owed a fiduciary duty of loyalty to Folium; she particularly owed Folium fiduciary duties to protect its business interests, to preserve and promote its business opportunities, and not to act contrary to its business interests.

130. Furthermore, to the extent Ramos was ever granted any membership interest in Folium which vested, Ramos owed fiduciary duties to Folium and its members to treat them with care and loyalty; she particularly owed Folium fiduciary duties to protect its business interests, to preserve and promote its business opportunities, and not to act contrary to its business interests. To the extent Ramos has

not been involuntarily withdrawn or expelled as a member of Folium, she still owes the above-described fiduciary duties to the members of Folium.

131. Ramos breached her fiduciary duties to Folium and its members as more specifically described above, by, among other things: engaging in competing businesses and transactions involving the hemp business with, *inter alia*, Shaun Vanderpool, Ryan Lewis, and Ramos' Canadian contacts and business partners; soliciting Folium's head of security, Luke Smith to work for a different business that was or would be in competition with Folium; failing to properly manage her job responsibilities and failing to properly liaise with local, state and federal authorities with regulatory authority over Folium's business; upon information and belief, spreading misleading information to regulatory agencies with regulatory authority over Folium for the purpose of harming Folium's business after she was no longer employed at Folium; spreading false or misleading information, insinuations, and otherwise unverified rumors to external parties, including members of the press, about Folium's and its principals' business practices with the intention that such information would be publicized and damage Folium's business and Shan's and Nguyen's respective reputations in the community; submitting improper personal expenses to Folium for reimbursement; and accusing and attempting to accuse Folium's then-general counsel of attempting to solicit the murder-for-hire of Ryan Lewis.

132. As a result of the activities described above which were undertaken by Ramos during a time when she was obligated to act as a faithful servant in her role as an employee of Folium and/or as a member of Folium, Ramos must forfeit all income

she received from Folium, including any distributions she received as a member of Folium during the time of such faithlessness, and Counterclaim-Plaintiffs are entitled to disgorge all such monies.

133.    As a direct and proximate result of Ramos' breach of fiduciary duty described herein, Counterclaim-Plaintiffs are entitled to a declaration that Ramos has been involuntarily withdrawn as a member of Folium.

134.    As a direct and proximate result of Ramos' breach of fiduciary duty described herein, and to the extent Ramos has not been involuntarily withdrawn as a member of Folium, Counterclaim-Plaintiffs are entitled to a declaration that Ramos shall be and hereby is expelled as a member of Folium.

135.    As a direct and proximate result of Ramos' actions and multiple breaches of fiduciary duties, Counterclaim-Plaintiffs have been damaged in an amount to be determined at trial but believed to be in excess of $19,000,000. Shan, Nguyen, and Folium presently cannot ascertain the exact amount of damages they have sustained as a direct and proximate result of these breaches but they include, without limitation, loss of profits, damage to reputation, emotional distress, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and or/expectancy, as well as legal fees expended to combat and defend against Ramos' actions.

136.    The activities of Ramos described above, and particularly her involvement in a murder-for-hire plot and arson threat directed against Folium and its executives, as well as her spreading of misleading information to various regulatory agencies and to

external parties, including members of the press, were willful and malicious. Counterclaim-Plaintiffs are therefore entitled to punitive damages against Ramos in an amount sufficient to punish and deter her from similar future conduct, estimated by Counterclaim-Plaintiffs to be a minimum amount of $19,000,000 or such greater sum as may be assessed by the trier of fact.

## COUNTERCLAIM VI
### (Declaratory Judgment that Ramos has Involuntarily Withdrawn as a Member of Folium)

137.    Counterclaim-Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 through 136 of the Counterclaims as though fully set forth herein.

138.    As set forth above, Ramos, among other things, engaged in acts that are in direct conflict of interest with Folium, breached her fiduciary duties to Folium and its members, acted in contravention of the Operating Agreement, and has attempted to bind or obligate Folium with regard to a matter outside the intended purpose of the company. As such, Ramos has involuntarily withdrawn as a member of Folium pursuant to paragraphs 20, 29, 52, 55, and/or 57 of the Operating Agreement.

139.    An actual and genuine controversy has arisen and now exists between Counterclaim-Plaintiffs and Ramos concerning her alleged membership interest in Folium.

140.    Counterclaim-Plaintiffs seek a declaratory judgment that Ramos has involuntarily withdrawn as a member of Folium because she, among other things, engaged in acts that are in direct conflict of interest with Folium, breached her fiduciary

duties to Folium and its members, acted in contravention of the Operating Agreement, and attempted to bind or obligate Folium with regard to a matter outside the intended purpose of the company. As a result of her involuntary withdrawal, Counterclaim-Plaintiffs are further entitled to a declaratory judgment that Ramos had no right to notice of any member meeting of Folium after the date of her termination and no right to vote at any meeting of Folium's members, including, without limitation, the special meeting of the members of Folium held on or about December 7, 2018, and that she has no such membership rights going forward.

141.    Counterclaim-Plaintiffs further seek a declaratory judgment that under paragraph 31 of the Operating Agreement, they or any one of them, may seek damages against Ramos because such dissociation resulted from a malicious act by the dissociated member (Ramos) or a breach of fiduciary duty to Folium, or a breach of the Operating Agreement or that Ramos has acted in a way that could reasonably be foreseen to bring harm or damage to Folium or to the reputation of Folium. Ramos' actions fit each of these alternative bases for relief and Counterclaim-Plaintiffs are entitled to a judicial declaration that Ramos is not entitled to any value or set-off for the value of her purported membership interest in Folium, if any, as a result of her misconduct.

### COUNTERCLAIM VII
**(Declaratory Judgment that Ramos is Expelled as a Member of Folium)**

142.    Counterclaim-Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 through 141 of the Counterclaims as though fully set forth herein.

143.    As further set forth above, Ramos has, among other things, engaged in wrongful conduct that adversely and materially affected Folium's business, she willfully or persistently committed a material breach of the Operating Agreement and a material breach of a duty owed to Folium or to the other members, and she engaged in conduct relating to Folium's business that makes it not reasonably practicable to carry on the business with her. Counterclaim-Plaintiffs seek and are entitled to a judicial determination of the same by this Court. Pursuant to paragraph 29 of the Operating Agreement, expulsion of a member can occur on application by Folium or another member where it has been judicially determined that a member has engaged in the foregoing conduct.

144.    Folium, Shan, and Nguyen each hereby make an application for the expulsion of Ramos as a member of Folium pursuant to paragraph 29 of the Operating Agreement.

145.    An actual and genuine controversy has arisen and now exists between Counterclaim-Plaintiffs and Ramos concerning her alleged membership interest in Folium.

146.    To the extent Ramos has not involuntarily withdrawn as a member of Folium, Counterclaim-Plaintiffs seek a declaratory judgment that Ramos shall be and hereby is expelled as a member of Folium upon this Court finding that Ramos has, among other things, engaged in wrongful conduct that adversely and materially affected Folium's business, willfully or persistently committed a material breach of the Operating Agreement or of a duty owed to Folium or to the other Members, or engaged in conduct

relating to Folium's business that makes it not reasonably practicable to carry on the business with her. As a result of her expulsion, Counterclaim-Plaintiffs are further entitled to a declaratory judgment that Ramos had no right to notice of any member meeting of Folium after the date of her termination and no right to vote at any meeting of Folium's members, including, without limitation, the special meeting of the members of Folium held on or about December 7, 2018, and that she has no such membership rights going forward.

147.    Counterclaim-Plaintiffs further seek a declaratory judgment that under paragraph 31 of the Operating Agreement, they or any one of them, may seek damages against Ramos because such dissociation resulted from a malicious act by the dissociated member (Ramos) or a breach of fiduciary duty to Folium, or a breach of the Operating Agreement or that Ramos has acted in a way that could reasonably be foreseen to bring harm or damage to Folium or to the reputation of Folium. Ramos' actions fit each of these alternative bases for relief and Counterclaim-Plaintiffs are entitled to a judicial declaration that Ramos is not entitled to any value or set-off for the value of her purported membership interest in Folium, if any, as a result of her misconduct.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim-Plaintiffs Folium, Folium Equity, Shan, and Nguyen respectfully request that the Court enter an Order and Judgment in their favor and against Counterclaim-Defendant Ramos on their causes of action, and grant the following relief:

a. Neither Ramos nor Ramos on behalf of Folium take anything by way of Ramos' First Amended Verified Complaint and that the First Amended Verified Complaint be dismissed with prejudice;

b. Counterclaim-Plaintiffs be awarded all compensatory monetary damages available at law, in an amount to be determined at trial, but in no event less than $19,000,000;

c. Counterclaim-Plaintiffs be awarded punitive damages as a result of Ramos' egregious and willful conduct described herein, or conscious disregard of the rights of Counterclaim-Plaintiffs or conduct so reckless as to amount to such disregard as further described herein, in an amount to be determined at trial, but in no event less than $19,000,000;

d. A declaratory judgment that the purported Written Consent of the Majority of the Members of Whole Hemp Company LLC is void and unenforceable;

e. In the alternative to (d), a declaratory judgment that Ramos has been involuntarily withdrawn as a member of Folium;

f. In the alternative to (d), a declaratory judgment that Ramos is expelled as a member of Folium;

g. A declaratory judgment that Ramos is not entitled to any value or set-off for the value of her purported membership interest in Folium, if any, as a result of her misconduct;

h. Counterclaim-Plaintiffs be awarded their full costs and attorneys' fees incurred herein to the full extent permissible by law; and

i. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Counterclaim-

Plaintiffs hereby demand a trial by jury in this action on all claims so triable.

\*        \*        \*        \*        \*

Dated: Colorado Springs, Colorado
      February 21, 2020

Respectfully submitted,

**SANDERS LAW FIRM**

 */s/ Perry R. Sanders Jr.*    
Perry R. Sanders Jr.
Justin T. Bailey
31 N. Tejon, Suite 400
Colorado Springs, CO 80903
Tel.: (719) 630-1556
Fax: (719) 630-7004
PRSanders@PerrySandersLaw.com
Justin@PerrySandersLaw.com

***Attorneys for Defendants/
Counterclaim-Plaintiffs Whole Hemp
Company LLC d/b/a Folium
Biosciences, Folium Equity Holding
LLC, Kashif Shan, and Quan Nguyen***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: *<u>/s/ Perry R. Sanders Jr.</u>*
    Perry R. Sanders Jr.

## VERIFICATION OF KASHIF SHAN

I, Kashif Shan, on behalf of myself, Whole Hemp Company LLC d/b/a Folium

Biosciences ("Folium"), and Folium Equity Holding LLC ("Folium Equity"), verify under

penalty of perjury that the factual statements in Defendants' Amended Answer,

Affirmative Defenses and Counterclaims concerning myself, Folium, and Folium Equity

are true and correct to my knowledge, except as to those matters therein stated to be

alleged upon information and belief, and as to those matters, I believe them to be true.

Executed this ___21___ day of February, 2020.

_____

Kashif Shan
Chief Executive Officer of Folium
Chairman, Chief Executive Officer, and President of Folium Equity

## VERIFICATION OF QUAN NGUYEN

I, Quan Nguyen, verify under penalty of perjury that the factual statements in

Defendants' Amended Answer, Affirmative Defenses and Counterclaims concerning

myself are true and correct to my knowledge, except as to those matters therein stated

to be alleged upon information and belief, and as to those matters, I believe them to be

true.

Executed this _21_ day of February, 2020.

_____

Quan Nguyen
Senior Vice President of Business Development of Folium
Founding Member and Secretary of Folium Equity