IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19–cv–03268–CMA–KMT

JUANITA RAMOS, an individually and derivatively on behalf of defendant WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES,

        Plaintiff/Counter-Defendant,

v.

WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES,
FOLIUM EQUITY HOLDING LLC,
KASHIF SHAN, and
QUAN NGUYEN,

        Defendants/Counter-Claimants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

        Before the court is "Nominal Defendant Whole Hemp Company LLC's Motion to Dismiss the Derivative Claims Set Forth in Claims I-III of the Amended Complaint and Claims I-II in their Entirety." (["Motion"], Doc. No. 33.)  Plaintiff has responded in opposition to the Motion, and Nominal Defendant has replied. (["Response"], Doc. No. 36; ["Reply"], Doc. No. 41.)  For the following reasons, it is RECOMMENDED that the Motion be GRANTED in part, and DENIED in part.

## STATEMENT OF THE CASE

        Plaintiff Juanita Ramos brings this action, directly, as well as derivatively, on behalf of her former employer, Whole Hemp Company, LLC d/b/a Folium Biosciences ["Folium," or "the

LLC"], asserting claims against Folium, Folium Equity Holding LLC ["Folium Equity"], Kashif Shan, and Quan Nguyen.  (["Complaint"], Doc. No. 31.)  Folium is a Colorado limited liability company that produces, manufactures, and distributes bulk cannabinoid extracts ["CBD"] derived from hemp.  (*Id.* at ¶¶ 2, 18.)  Folium Equity is said to be the sole owner of Folium.  (*Id.* at ¶¶ 119-23.)  Kashif Shan is the Chief Executive Officer of Folium, and Quan Nguyen is the LLC's Senior Vice President of Business Development.  (*Id.* at ¶¶ 20-21, 61.)  Prior to Folium Equity's acquisition of Folium, Shan and Nguyen were the LLC's "largest shareholders and most senior officials."  (*Id.* at ¶ 4.)

Ramos began working for Folium, on April 25, 2017, as its Executive Vice President of Governmental Affairs.  (*Id.* at ¶ 40.)  According to the Amended Complaint, approximately two months after starting at Folium, Ramos was granted a one percent membership interest in the LLC, as a "reward" for her "outstanding" work performance, and "as an incentive to continue at her prior high level."  (*Id.* at ¶¶ 41-42.)  In addition, Kashif Shan reportedly "promised" Plaintiff that, as a member of the LLC, she would receive monthly distributions, "just like everybody else."  (*Id.* at ¶ 43.)  Plaintiff's "membership interest in Folium" was said to be "memorialized" by a document, entitled "Written Consent of the Majority of the Members of Whole Hemp LLC" ["Written Consent"].  (*Id.* at ¶ 44; *see* Compl. Ex. B.)  The Written Consent, which was purportedly signed by eight individuals—including Shan, Nguyen, and Ramos—confirms Plaintiff's "1.0% membership interest in [Folium], which will be taken from the 35.0315% membership interest currently retained by Kashif Shan."  (Compl. Ex. B at 1, 6-7.)  Pursuant to the terms of the Written Consent, Ramos "agree[d] to sign the attached [Operating Agreement],"

and agree[d] to be bound to the terms of the Operating Agreement." (*Id.* at 1.) Although there is no date of execution, the Written Consent states its effective date to be July 28, 2017. (*Id.*)

After signing the Written Consent, Ramos reportedly asked Shan and Nguyen for a copy of the Operating Agreement "on several occasions," but to no avail. (Compl. ¶ 51.) She alleges that the Operating Agreement was, in fact, "never provided to [her]." (*Id.* at ¶¶ 45, 51.) In addition, Plaintiff complains that, to date, she has received only one distribution check with respect to her equity interest in Folium, notwithstanding the representations made by Shan. (*Id.* at ¶ 54.) Plaintiff likewise complains that Folium, at the direction of Shan and Nguyen, "recently purported to sell 100% of its equity" to Folium Equity "without her consent." (*Id.* at ¶¶ 11-12, 122-23.) Ramos is adamant that the "purported sale" to Folium Equity, an entity which is said to be "controlled by Shan and Nguyen," is "invalid." (*Id.* at ¶ 12.)

In this action, Plaintiff also alleges that, throughout her employment with Folium, Shan and Nguyen were "engaged in extensive criminal conspiracies to enrich themselves, at the expense of [Folium] members (such as herself) and in violation of the law." (*Id.* at ¶¶ 4, 62.) Specifically, Plaintiff alleges that "Kashif Shan and Quan Nguyen, through Folium," engaged in various "illegal conduct," including the interstate transport of "illegal hemp biomass;" the interstate shipment of "CBD products with mislabeled ingredients;" the "[i]llegal[]" shipment of "CBD Oil and Isolates" to certain foreign countries; and the operation of "a secret, unlicensed, and unpermitted extracting facility." (*Id.* at ¶¶ 6, 64-96.) The Amended Complaint likewise alleges that Shan and Nguyen, through the LLC, "defrauded investors, employees, the Internal Revenue Service, and members of Folium (including Ramos)" by, among other things, "[f]alsely representing that [Folium] was in compliance with the law[,] . . . [d]iverting a substantial

percentage of Folium's CBD products for personal sale, . . . and failing to make [equity] distributions in violation of their fiduciary duties." (*Id.* at ¶¶ 7, 97-108.) Plaintiff further alleges that Shan and Nguyen "used Folium employees" to unlawfully "surveil[]" other employees, including herself. (*Id.* at ¶¶ 8, 109-12.) She claims that, on one occasion, Shan and Nguyen "asked her to find someone to kidnap or kill a former employee with whom they had a dispute." (*Id.* at ¶ 9.)

On August 28, 2018, Plaintiff was fired from her position with Folium for "stealing from the company and working with competitors." (*Id.* at ¶ 54.) Ramos now alleges that the purported basis for her termination was "false." (*Id.*) She claims that she was, in fact, fired "in retaliation for her refusal to go along with the illegal conduct in which Shan was engaged, including [] kidnapping or murder[,]" and because Shan was "concerned that [she] would report on the illegal activity she witnessed at Folium to government agencies and others." (*Id.* at ¶ 55.) According to Plaintiff, following her termination, Folium's legal counsel "denied that she had any equity in the company and refused to discuss severance with her." (*Id.* at ¶ 58.)

Approximately fifteen months after her termination, on November 18, 2019, Plaintiff, through her attorney, reportedly "made a demand on Folium to bring suit against Shan and Nguyen relating to the allegations in this Complaint." (*Id.* at ¶ 24; *see* Compl. Ex. A.) The demand letter was sent by Federal Express to the respective registered agents for Folium and Folium Equity, and by email to Folium's counsel. (*Id.*) Later that same day, November 18, 2019, Plaintiff commenced this derivative and direct action. (Doc. No. 1.)

In the Amended Complaint, which was filed on January 31, 2020, Plaintiff asserts the following causes of action: (1) violations of the Racketeer Influenced and Corrupt Organizations

Act ["RICO"], 18 U.S.C. § 1961 *et seq.*, against Shan and Nguyen; (2) violations of the Colorado

Organized Crime Control Act ["COCCA"], Colo. Rev. Stat. § 18-17-101 *et seq.*, against Shan

and Nguyen; (3) breach of fiduciary duty against Shan and Nguyen; (4) violations of the Wiretap

Act, 18 U.S.C. § 2511 *et seq.*, against Shan, Nguyen, and Folium; (5) breach of contract by Shan,

Nguyen, and Folium; (6) declaratory judgments, pursuant to 28 U.S.C. § 2201 and Colo. Rev.

Stat. §§ 13-51-101 *et seq.*, against all Defendants; (7) an accounting of Folium's financial

statements, records, and member communications against Shan, Nguyen, and Folium; and (8)

judicial dissolution of Folium.  (Compl. ¶¶ 124-80.)  Ramos pleads her first three claims for

relief directly and derivatively; the remaining causes of action are lodged as direct claims only.

(*Id.* at ¶¶ 125, 138, 151; 158-80.)

On February 22, 2020, Folium filed the present Motion, asking to dismiss each of the

derivative claims set forth in the Amended Complaint, pursuant to Federal Rules of Civil

Procedure 12(b)(6), for failure to comply with the derivative action pleading requirements set out

in Federal Rule of Civil Procedure 23.1 and Colorado Revised Statute § 7-80-714.  (Mot. 5-6,

12-14.)  Folium argues, specifically, that Plaintiff has failed to show "a sufficient written

demand" was made upon it to pursue derivative litigation.  (*Id.* at 12-14.)  The LLC also argues

that Ramos "is not a fair and adequate plaintiff to bring derivative claims" on its behalf, as is

required by Rule 23.1.  (*Id.* at 6, 14-17.)  In addition, Folium seeks dismissal of the RICO and

COCCA claims, in their entirety, on the basis that Ramos lacks standing to bring those claims.

(*Id.* at 6, 17-19.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 679–81.  Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court typically may not look beyond the pleadings.  *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010).  "Pleadings," for purposes of a Rule 12(b)(6) motion, however, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice.  *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).  Documents attached to a motion to dismiss are considered part of the pleadings, if they are referred to in the complaint, and are central to the plaintiff's claims.  *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Here, the briefing submitted by both Ramos and Folium references material that is not attached to, or incorporated into, the Amended Complaint.  (*See* Mot. 7-8; Resp. 8; *see also* Doc. Nos. 32, 37.)  Generally, a Rule 12(b)(6) motion "must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court.'"  *GFF Corp.*, 130 F.3d at 1384 (quoting Fed. R. Civ. P. 12(d)).  In this case, however, the court has not

relied on any extraneous materials to reach its conclusions.  Therefore, it is not necessary to convert the motion to dismiss into a motion for summary judgment.

## ANALYSIS

### B.  Derivative Claims I-III – Demand Requirements

Ramos alleges RICO, COCCA, and breach of fiduciary duty claims, derivatively, on behalf of Folium, which is a Colorado limited liability company ["LLC"].  (Compl. ¶¶ 18, 124-57.)  "Derivative actions empower shareholders to 'enforce a corporate cause of action against officers, directors, and third parties.'"  *City of Cambridge Retirement Sys. v. Ersek*, 921 F.3d 912, 918 (10th Cir. 2019) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991)).  In Colorado, "a derivative action is the mechanism by which shareholders can sue on behalf of a corporation when those in control of the corporation have opted not to pursue a claim belonging to it."  *Young v. Bush*, 277 P.3d 916, 920-21 (Colo. App. 2012) (citing *Curtis v. Nevins*, 31 P.3d 146, 151 (Colo. 2001)).  Like corporate shareholders, "LLC members may bring derivative claims to protect the interests of the LLC from the wrongful acts of its managers or controlling members."  *Id.* at 930 (citing Colo. Rev. Stat. §§ 7-80-713 to -719).  Because the cause of action ultimately belongs to the LLC, members, as a "precondition for the suit," must make a pre-suit demand on the LLC to pursue the litigation, "unless excused by extraordinary conditions."  *See Cambridge*, 921 F.3d at 918 (quoting *Kamen*, 500 U.S. at 96); *Eschino v. Lopez*, No. 14-cv-02686-PAB-NYW, 2015 WL 5047650, at *2 (D. Colo. Aug. 27, 2015) (citing Colo. Rev. Stat. § 7-80-714)) ("Colorado requires a demand as a prerequisite to a derivative [LLC] action.").

There are two components to the "demand" requirement; one procedural, the other substantive.  *See Kamen*, 500 U.S. at 108-09.  As to the procedural component, Rule 23.1

requires a derivative complaint to "state with particularity . . . any effort by the plaintiff to obtain

the desired action from the [LLC]" and "the reasons for not obtaining the action or not making

the effort."  Fed. R. Civ. P. 23.1(b)(3); *accord Cambridge*, 921 F.3d at 918.  Rule 23.1 imposes

"heightened pleading requirements" as to why the failure to make a pre-suit demand should be

excused; "[p]leading the grounds for excusing pre-suit demand requires a complaint to set forth

the who, what, when, where, and how of the reasons for failing to make the demand."  *Lieblein*

*ex rel. W. Union Co. v. Ersek*, No. 14-cv-00144-MSK-KLM, 2017 WL 4337719, at *3 (D. Colo.

Sept. 29, 2017); *see U.S. ex rel. Told v. Interwest Const. Co.*, 267 F. App'x 807, 810 (10th Cir.

2008) (detailing the heightened pleading standard under Rule 9(b)).  If the plaintiff's pleadings

are insufficient, the claims may be dismissed under Rule 12(b)(6) for failure to state a claim.

*Lieblein*, 2017 WL 4337719, at *2 (citing *McCall v. Scott*, 239 F.3d 808, 815-16 (6th Cir.

2001)).

While Rule 23.1 governs the procedural aspects of the demand requirement, "[w]hether

the complaint's particular allegations suffice depends upon the substantive law in which the

entity is incorporated[.]"  *Cambridge*, 921 F.3d at 918; *see Brooks v. Land Drilling Co.*, 564 F.

Supp. 1518, 1522 (D. Colo. 1983) ("Federal courts must look to state law to determine whether a

demand . . . is necessary before a derivative action may be maintained on behalf of a

corporation.").  Accordingly, the court looks to Colorado law to determine whether Plaintiff has

satisfied the underlying demand requirement here.  *See Cambridge*, 921 F.3d at 918.

Under the Colorado LLC Act, which governs member derivative actions, no LLC

member may commence a derivative action against an LLC unless:

    (a) A written demand has been made upon the limited liability company to take
        suitable action; and

(b) Thirty days have expired from the date the demand was made; except that the thirty-day limitation shall not be required where:

(I) The member has been notified prior to the expiration of the thirty-day period that the demand has been rejected by the limited liability company; or

(II) Irreparable injury to the limited liability company would result from waiting for the expiration of the thirty-day period.

Colo. Rev. Stat. § 7-80-714.

Here, Plaintiff made a written demand upon Folium, on November 18, 2019, which was the same day that she commenced this lawsuit. (Compl. ¶ 24, Ex. A; *see* Doc. No. 1.) As such, Plaintiff did not comply with the requisite statutory waiting period applicable to member derivative claims. Therefore, to avoid dismissal of her derivative claims, Ramos must have alleged, with particularity, either that Folium previously rejected "the demand;" or that the LLC would have suffered "irreparable injury," if she had waited for the thirty-day period to expire. *See Cambridge*, 921 F.3d at 918. Having carefully reviewed the Amended Complaint, the court finds that Plaintiff has failed to adequately allege either exception under Colorado law.

### a. *"Irreparable Injury"*

Section 7-80-714(1)(b)(II) excuses compliance with the thirty-day waiting period, if "irreparable injury" to the LLC would otherwise result. Colo. Rev. Stat. § 7-80-714(1)(b)(II). In the Amended Complaint, Ramos alleges that "[i]rreparable injury to Folium would result from waiting for the expiration of the statutory thirty-day waiting period prior to bringing suit." (Compl. ¶ 30.) Ramos alleges, specifically, that if she had waited thirty days to file her derivative action, Shan and Nguyen were "likely to cause Folium to commit numerous crimes," given that those Defendants' "criminal conspiracy" remained "ongoing." (*Id.*) Plaintiff likewise

alleges that Shan and Nguyen were "likely to take steps to cover up their criminality, as they have on prior occasions (including opening a secret extraction facility to evade an order by the Colorado Springs Fire Department to shut down)." (*Id.* at ¶ 31.) In addition, Plaintiff claims that, if she had waited to commence this lawsuit, Shan and Nguyen "were also likely to remove their assets from the reach of Folium." (*Id.* at ¶ 32.) In making that allegation, Plaintiff reports that Shan previously transferred title to his home "for no value," one day after his receipt of a "related derivative demand." (*Id.*) The Amended Complaint also alleges that any delay in filing this lawsuit would have jeopardized Plaintiff's "safety," given Shan's "prior solicitation of [a coworker's] murder," as well as his "threats to Ramos (described herein)." (*Id.* at ¶ 33.)

In its Motion, Folium argues that these allegations "fall[] woefully short" of establishing "irreparable injury" under § 7-80-714(1)(b)(II). (Mot. 13.) Folium contends, specifically, that Ramos has failed to show that any alleged harm is "certain," "imminent," or "great." (*Id.* at 13-14.) The LLC points to the fact that Plaintiff did not file this lawsuit until fifteen months after her termination, and nearly two months after she filed a related state court action. (*Id.* at 14 & n.4.) Folium likewise emphasizes that Ramos, to date, has not "sought any immediate remedy, such as a TRO or preliminary injunction against Folium, Shan, or Nguyen." (*Id.* at 14.) Plaintiff, on the other hand, is adamant that her pleadings establish "irreparable injury" to Folium, based on "the plain language" of § 7-80-714(1)(b)(II). (Resp. 6.)

In construing a Colorado statute, a federal court must adhere to the same rules of construction that Colorado courts would apply. *Phelps v. Hamilton*, 59 F.3d 1058, 1071 (10th Cir. 1995). Under Colorado law, "[l]egislative intent is the polestar of statutory construction." *Young v. Brighton Sch. Dist. 27J*, 325 P.3d 571, 576 (Colo. 2014) (quoting *State v. Nieto*, 933

P.2d 493, 502 (Colo. 2000)).  To determine legislative intent, the court must "look first to the statutory language[.]"  *In re Water Rights*, 361 P.3d 392, 397 (Colo. 2015) (quoting *Univex Int'l, Inc. v. Orex Credit All., Inc.*, 914 P.2d 1355, 1358 (Colo. 1996)).  "When the language is clear and unambiguous, there is no need to resort to interpretative rules[.]"  *Colo. Dep't of Rev. v. Woodmen of the World*, 919 P.2d 806, 809 (Colo. 1996) (en banc) (citation omitted); *People v. Iannicelli*, 449 P.3d 387, 393 (Colo. 2019) ("[W]hen the legislature defines a term in a statute, that definition governs.").  In the absence of a statutory definition, the court "must give terms their plain meaning, and this can include consideration of their dictionary definitions."  *Young v. Bush*, 277 P.3d 916, 922 (Colo. App. 2012); *see People v. Janousek*, 871 P.2d 1189, 1196 (Colo. 1994) (referring to the dictionary definition of "deceit" to determine the plain and ordinary meaning of that word).  "[B]ut if those definitions are insufficient by themselves to resolve the issue, the court should look to case law for guidance in determining whether the [applicable] statutory requirements . . . have been met."  *Young*, 277 P.3d at 922; *see Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629, 633 n.8 (Colo. 1999) (looking to cases and rules regarding demand requirements in corporate derivative actions for guidance in determining demand requirements in limited partnership derivative actions).

In this case, the Colorado LLC Act does not define "irreparable injury."  In ordinary usage, an "irreparable" injury is one that is "[in]capable of being repaired."  *Merriam-Webster's Collegiate Dictionary* 662, 1055 (11th Ed. 2007).  However, this definition, alone, does not clearly establish what a court must consider in evaluating whether alleged harm to an LLC is "irreparable."  The court must, therefore, turn to case law for further guidance.  *Young*, 277 P.3d at 923.

The Colorado Supreme Court has not construed "irreparable injury," as the term applies in § 7-80-714.  "When no decision of a state's highest court has addressed an issue of that state's law, the federal court confronted with that issue must predict how the state's highest court would rule." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 630 (10th Cir. 2008) (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001)).  In doing so, a federal court is "free to consider all resources available, including decisions of [Colorado] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *Boehme v. U.S. Postal Serv.*, 343 F.3d 1260, 1264 (10th Cir. 2003) (alteration in original); *Pehle v. Farm Bur. Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005) ("[I]n the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it").

In evaluating a request for injunctive relief, the Colorado Court of Appeals has interpreted "irreparable harm" to be "certain and imminent harm for which a monetary award does not adequately compensate." *Gitlitz v. Bellock*, 171 P.3d 1274, 1278-79 (Colo. App. 2007) ("Irreparable harm is a pliant term adaptable to the unique circumstances that an individual case might present."); *Romero v. City of Fountain*, 307 P.3d 120, 123 (Colo. App. 2011) ("[A] party seeking a preliminary injunction[] satisfies the irreparable harm requirement by demonstrating a danger of real, immediate, and irreparable injury that may be prevented by the requested relief."); *see Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (noting that irreparable harm, in the context of a preliminary injunction, is not harm that is "merely serious or substantial" rather, the injury "must be certain, great, actual and not theoretical"); *see also Caston v. Hoaglin*, No. 2:08-cv-200, 2009 WL 3078214, at *5 (S.D. Ohio Sept. 23, 2009)

(applying the injunctive relief definition of "irreparable harm" in the context of shareholder derivative litigation).

Here, Plaintiff has not pleaded with particularity that a "certain and imminent" harm would result from waiting thirty days after making a demand to file this lawsuit.  *See Gitlitz*, 171 P.3d at 1279.  Indeed, her speculative claims—that Shan and Nguyen will "likely" use Folium to "commit numerous crimes," and then "cover up their criminality" and "remove their assets" from the LLC's reach—are all couched in terms of mere possibility, rather than unequivocal certainty. Further, Plaintiff fails to explain how these allegations demonstrate irreparable injury *to Folium*, specifically, as is required by § 7-80-714(1)(b)(II).

To establish irreparable injury, Ramos also relies on the "ongoing" nature of the alleged criminal misconduct by Shan and Nguyen.  (Compl. ¶ 30.)  Importantly, however, Plaintiff, by her own admission, has known about Defendants' "extensive criminal conspiracies" pertaining to Folium, since at least August 2018.  (*See id.* at ¶ 62.)  Ramos offers no explanation as to why, upon learning of the criminal conspiracies, she then waited nearly one and a half years to seek redress on Folium's behalf.  Nor does she explain how the specific delay caused by waiting an additional thirty days to file this lawsuit would cause the LLC to suffer irreparable harm.  *See Seidl v. Am. Century Companies, Inc.*, 713 F. Supp. 2d 249, 259 & n.14 (S.D.N.Y. 2010) (finding a plaintiff's allegations of "irreparable harm" to be "spurious," given that the plaintiff "waited until August 2008—more than two years after the events about which she complains—to file the original complaint"); *Caston v. Hoaglin*, No. 2:08-cv-200, 2009 WL 3078214, at *5 (S.D. Ohio Sept. 23, 2009) (holding that a plaintiff could not establish "irreparable harm" under

Maryland law, simply "by listing harms that occurred during delay he caused by waiting four months to file his amended complaint").

Accordingly, Plaintiff has failed to plead with particularity, in accordance with Rule 23.1, that waiting for the thirty-day statutory period to expire would cause irreparable injury to Folium.

### b. Prior Notification that "the Demand has Been Rejected"

Ramos also contends that her failure to comply with Colorado's thirty-day waiting period is excused under § 7-80-714(1)(b)(I), on the basis that she received "notification prior to the expiration of the thirty-day period that the demand" was rejected by Folium. (Resp. 7.) Specifically, Plaintiff points to the following paragraph from her pleading:

> On August 9, 2019, a demand was made on [Folium], Shan, and Nguyen by undersigned counsel on behalf of another former employee, Dale Takio. The demand identified some of the same allegations below, relating to Shan and Nguyen's self-dealing. Rather than investigate the allegations, [Folium] responded by filing a complaint against Mr. Takio on August 20, 2019. (The parties are currently litigating in state court.)

(Compl. ¶ 29; *see id.*) Plaintiff contends that these allegations meet the requirements of § 7-80-714(1)(b)(I), because they establish that "Folium had rejected 'the' demand, when it was earlier made by Takio[,] and [that] Ramos had been notified of that fact." (Resp. 7.) However, § 7-80-714(1)(b)(I) unequivocally applies only when "*[t]he member* has been notified prior to the expiration of the thirty-day period that *the demand* has been rejected by the limited liability company[.]" In other words, for purposes of § 7-80-714(1)(b)(I), the demand at issue must have been made by Ramos, not "another former employee." *See Swanson v. Weil*, No. 11-cv-02412-WYD-KLM, 2012 WL 444795, at *12 (D. Colo. Sept. 26, 2012) ("Delaware courts have made clear that an earlier demand made by a different shareholder does not excuse a demand on the

board by a plaintiff in a derivative suit.").  Here, the Amended Complaint does not allege that

Folium rejected any written demand made by Ramos.  For that reason, § 7-80-714(1)(b)(I) is

inapplicable.[1]

### c. Futility

In the Amended Complaint, Plaintiff also alleges that demand would have been "futile,"

because "Shan and Nguyen so dominate the [LLC] that there is no prospect that they will

undertake an independent investigation."  (Compl. ¶ 26; *see* Resp. 4.)  In Colorado, a shareholder

derivative plaintiff may be excused from making a pre-suit demand upon a corporation's board,

if doing so would be "futile."  *See Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629, 634 (Colo.

1999) (citing *Bell v. Arnold*, 487 P.2d 545, 547 (Colo. 1971)).  The Colorado Supreme Court has

not addressed whether, in the context of member derivative actions, there is also a futility

exception to the demand requirements.  But the relevant provision governing member derivative

actions, § 7-80-714, by its plain language, does not contain any reference to "futility."

Accordingly, in the absence of clear Colorado case law to the contrary, the court declines to read

a futility exception into Colorado's demand requirements for member derivative actions.  *See*

*Long v. Cordain*, No. 11CV701, 2016 Colo. Dist. LEXIS 18, at *15-16 (Colo. Dist.—Arapahoe

May 11, 2016) (declining to apply the concept of futility to a member derivative action, on the

---

[1] Plaintiff also argues that she has satisfied the exception under § 7-80-714(1)(b)(I), based on certain allegations from outside of her pleadings.  (Resp. 8-9.)  Specifically, Plaintiff now alleges that, on March 9, 2020, she "made a demand through counsel that Folium take appropriate action against Shan and Nguyen," which Folium's counsel "rejected" the following day.  (*Id.*)  However, Plaintiff does not provide, nor has the court found, any authority suggesting that the rejection of such a demand, which was made nearly four months *after* the derivative action was filed, can satisfy Colorado's *pre-suit* demand requirements.  Accordingly, these new allegations, even if considered, would not change the court's analysis or conclusions.

basis that § 7-80-714 "does not set forth any such exception to its clear, specific and unambiguous requirements"); *see also Hirschfeld v. Beckerle*, 405 F. Supp. 3d 601, 609 (D. N.J. 2019) ("The fact is, Mississippi's written demand statute does not contain an exception for futility, and unless and until the Legislature decides to include one, it does not exist.") (citation omitted).

On this record, then, Plaintiff has failed to plead with particularity either exception to the Colorado LLC Act's thirty-day waiting period requirement, in accordance with Rule 23.1. Thus, Plaintiff has not complied with the federal and state demand requirements applicable to her derivative claims. For that reason, the derivative claims fail, as a matter of law, and should be dismissed, pursuant to Rule 12(b)(6). As such, there is no need to address Folium's other arguments for dismissal of those claims.

### B. *Claims I-II – Standing*

Plaintiff asserts claims, both directly and derivatively, against Shan and Nguyen, for alleged violations of RICO and COCCA. (Compl. ¶¶ 124-49.) Folium argues that Ramos lacks standing to bring RICO and COCCA claims, at all, because she has not alleged facts to show "a concrete and tangible personal injury," and because "any harm suffered by Ramos was not proximately caused by the alleged violations." (Mot. 17.)

Given that Plaintiff's derivative claims all fail to meet the requisite pleading standard, the court need not determine whether Plaintiff has standing to bring the derivative RICO and COCCA claims, specifically. To the extent Folium seeks dismissal of the direct RICO and COCCA claims, Ramos lodges the claims in her individual capacity, and asserts them exclusively against Shan and Nguyen. (*See* Compl. ¶¶ 124-49.) Folium lacks standing to

challenge such claims, which are neither asserted against it, nor brought on its behalf.  *See Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 463 n.4 (S.D.N.Y. 2018) ("Defendants do not have standing to move to dismiss the substantive [RICO] claims not actually asserted against them."); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 455 (E.D.N.Y. 2009) ("Movants do not have standing to move on behalf of other defendants to this action.").  Accordingly, Folium's motion to dismiss the direct RICO and COCCA claims should be denied.  *See Zhang v. Subaru of Am., Inc.*, No. C 12-0857 PJH, 2012 WL 1252713, at *2 (N.D. Cal. Apr. 13, 2012) ("While the court agrees that these claims are inadequately pled, the motion is DENIED because the claims are not asserted against Subaru, and Subaru thus has no basis to seek dismissal."); *Chabad Lubavitch of Litchfield Cty., Inc. v. Borough of Litchfield, Conn.*, No. 3:09-CV-1419(JCH), 2010 WL 1882308, at *3 (D. Conn. May 10, 2010) ("Counts Nine and Ten are not asserted against the moving defendants, and so those defendants cannot file a Rule 12(b) motion to dismiss.").

## C.  Request to Amend

Finally, in her Response, Plaintiff argues that she "should be permitted" to amend her claims, in lieu of their dismissal, based on certain evidence that she recently obtained "[w]hile this motion was pending."  (Resp. 8-9, 15.)  However, Plaintiff's request was not made in a separate document, as required by the Local Rules.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be filed in a separate document.").  Further, Plaintiff provides insufficient justification for the request, which was made nearly three weeks after the Scheduling Order deadline for amended pleadings.  (*See* Doc. No. 27 at 14.); *see also Gorsuch, Ltd., B.C. v. WellsFargo Nat'l Bank Ass'n*, 771 F.3d

1230, 1241 (10th Cir. 2014) ("After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Federal Rule of Civil Procedure 16(b)(4) and (2) satisfaction of the Rule 15(a) standard.").  For those reasons, the request to amend should be denied.

      **WHEREFORE**, for the foregoing reasons, this court respectfully

      **RECOMMENDS** that "Nominal Defendant Whole Hemp Company LLC's Motion to Dismiss the Derivative Claims Set Forth in Claims I-III of the Amended Complaint and Claims I-II in their Entirety" (Doc. No. 33) be **GRANTED, in part, and DENIED, in part**. Specifically, Plaintiff's derivative claims (Claims 1-3) should be dismissed with prejudice, pursuant to Rule 12(b)(6), for failure to satisfy the applicable demand requirements under Colorado law.  Plaintiff's remaining direct claims should all proceed.

### ADVISEMENT TO THE PARTIES

      Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of August, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge