UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-3268-CMA-KMT

JUANITA RAMOS, individually and derivatively on behalf of defendant WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES,

      Plaintiff,

v.

WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES, FOLIUM EQUITY HOLDING LLC, KASHIF SHAN, and QUAN NGUYEN,

      Defendants.

And

WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES, FOLIUM EQUITY HOLDING LLC, KASHIF SHAN, and QUAN NGUYEN,

      Counterclaim-Plaintiffs,

v.

JUANITA RAMOS,

      Counterclaim Defendant.

---

**PLAINTIFF JUANITA RAMOS' OBJECTIONS TO THE MAGISTRATE JUDGE'S RECOMMENDATION, DATED AUGUST 27, 2020**

---

      Pursuant to Federal Rule of Civil Procedure 72(b), Plaintiff/Counterclaim-

Defendant Juanita Ramos, by and through counsel, hereby files these Objections to the

Magistrate Judge's Recommendation, dated August 27, 2020 (Docket No. 57) (the

"Recommendation"), that the Motion to Dismiss filed by nominal Defendant Whole Hemp Company LLC ("Folium") (Doc. No. 33) (the "Motion" or "Mot.") be granted in part and denied in part.

Pursuant to Federal Rule of Civil Procedure 72(b), Ramos objects to the following specific sections of the Recommendation, and requests a de novo review by the District Court:

- Statement of the Case (Recommendation at 1-5).
- Standard of Review (Recommendation at 6-8).
- Analysis
    - B. Derivative Claims I-III Demand Requirements (Recommendation at 8-17).
    - C. Request to Amend and the Recommendation that Plaintiff's derivative claims be dismissed with prejudice for failure to satisfy the demand requirements under Colorado law. (Recommendation at 18-19).

Ramos incorporates and restates her arguments from her Opposition to the Motion (Docket No. 36), and in further support, states as follows:

**PRELIMINARY STATEMENT**

This is not a typical derivative case. Unlike the standard derivative claims for breach of fiduciary duty and misconduct filed by a non-insider against corporate officials, Ramos (Folium's former Executive Vice President of U.S. and Government Affairs) made specific and serious factual allegations that Defendants and majority

members Kashif Shan and Quan Nguyen are essentially running an international drug smuggling ring under the guise of a legitimate manufacturer of cannabidiol ("CBD") products, stealing tens of millions of dollars from the company in an ongoing accounting fraud, and taking adverse actions against employees (including Ramos) who threatened to blow the whistle. Most seriously, Ramos pleaded specific factual allegations that Shan sought to hire a hit man when another former senior officer raised similar concerns; stated that he (Shan) would burn down the business if he were found out; and transferred the ownership of his (Shan's) house into a shell company when another employee made a derivative demand concerning some of the same issues in this proceeding. Shan and Nguyen's conduct was <u>ongoing</u>: much of it was discovered through counsel's investigation shortly before the suit was filed, and much of it did not even begin until after Ramos was fired by Folium.

If all inferences are construed in Ramos' favor, as required on a Rule 12(b)(6) motion, these allegations demonstrate that there would be an "irreparable injury" to Folium if she were required to wait thirty days after serving Shan and Nguyen with a derivative demand informing them of the allegations in this Complaint. *See* C.R.S. § 7-80-714(1)(b)(II); *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019). Certainly, Ramos alleged irreparable injury to herself (and even serious physical harm or death) if she were to wait for thirty days after alerting Shan and Nguyen to a forthcoming lawsuit, but she also alleged injuries to the corporation from Shan and Nguyen covering their tracks and continuing to commit felonies with the company as their instrument. The injuries to the company and to Ramos are not mutually exclusive.

Ramos respectfully suggests that the Magistrate did not construe the pleadings in Ramos' favor as required under Rule12(b)(6), and imposed a far more stringent standard—namely, the standard for prevailing on a preliminary injunction—than is required under Colorado law to excuse the thirty-day waiting period for filing suit after serving a derivative demand. The Magistrate also erred in recommending that the matter be dismissed with prejudice: even if there were any deficiencies in the pleading (and there were not), Ramos should be allowed to make a new demand or to replead the complaint. The District Court should therefore overrule the Recommendation in part and rule that Ramos was excused from waiting for thirty days to file her complaint; has standing to file derivative claims against Shan and Nguyen; or may otherwise make a new demand or replead her derivative claims.

I. **Relevant Factual Allegations**

On or around April 25, 2017, Ramos became Folium's Executive Vice President of U.S. and Foreign Government Affairs. First Am. Verified Compl. ¶ 40. About two months after she began working at Folium, she was granted a 1% membership interest in Folium, as a reward for her good work. *Id.*

When a former employee, Ryan Lewis, had a dispute with Shan and Nguyen, Shan asked Ramos to hire someone to kidnap Lewis. First Am. Verified Compl. ¶ 28. Ramos refused. *Id.* Shan then approached her a few days later and asked her to find someone to kidnap and murder Lewis. *Id.* She again refused. *Id.*

On behalf of Folium, Shan terminated Ramos on August 28, 2018. First Am. Verified Compl. ¶ 54. Shan falsely accused her of stealing from the company and

working with competitors; in fact, he terminated her in retaliation for refusing to go along with the illegal conduct in which Shan was engaged, including the kidnapping and murder of Lewis. *Id.* Shan also threatened to "'smear her from coast to coast' and ruin her relationships with government lawmakers in every state." *Id.* ¶ 57.

Ramos learned of certain of Shan and Nguyen's criminal conspiracies while she was employed by Folium. First Am. Verified Compl. ¶ 61. She learned of other criminal conspiracies <u>after</u> she left Folium, and through counsel's investigation, before she filed suit. First Am. Verified Compl. ¶ 62. Those criminal conspiracies include, among others:

- Directing the transport of illegal marijuana across state lines for purposes of THC extraction – and then dumping the extracted THC in an illegal manner. First Am. Verified Compl. ¶¶ 64-78.

- Beginning in September 2018 (*i.e.*, after Ramos left Folium), directing the operation of an unlicensed hemp extraction facility in Rocky Ford, Colorado, described internally as the "burrito factory." First Am. Verified Compl. ¶¶ 79-85.

- Doctoring the "Certificates of Analysis" for CBD products so that the certificates verify that products are "THC Free" when in fact they are not. First Am. Verified Compl. ¶¶ 86-89.

- Directing that their CBD products be exported to Japan, the European Union, and Mexico, with fraudulent certifications that falsely show these products meet the standards required by those countries for the sale of CBD products. First Am. Verified Compl. ¶¶ 90-96.

- Selling a substantial portion of Folium's output directly to customers in cash for their personal benefit, without recording the sales on Folium's books and records. First Am. Verified Compl. ¶¶ 97-101.

- In 2019 (*i.e.*, after Ramos left Folium), directing that Folium pay them and their family members millions of dollars in illegal distributions. First Am. Verified Compl. ¶¶ 102-103.

Citing this conduct, Ramos has alleged (in pertinent part) claims derivatively on behalf of Folium against Shan and Nguyen for violations of RICO (First Claim for Relief);

the Colorado Organized Crime Control Act (Second Claim for Relief), and Breach of Fiduciary Duty (Third Claim for Relief). She has also filed claims for herself as an individual, which overlap with her derivative claims.

Ramos alleged, with substantial factual supporting allegations, that these conspiracies were "ongoing" in nature and that Shan and Nguyen were likely to cause Folium to commit numerous crimes absent Court intervention. First Am. Verified Compl. ¶ 30. That is, if Shan and Nguyen knew of the allegations, they would be likely to take steps to cover up their criminality, as they have on prior occasions (including opening a secret extraction facility to evade an order by the Colorado Springs Fire Department to shut down). First Am. Verified Compl. ¶ 31. As noted above, the response to Lewis' dispute was an attempt to hire a hit man to kill a former employee.

Shan once told Ramos that he would engage in "Jewish Lightning" if he was found out. *Id.* Ramos asked for an explanation since she had not heard of that term, and it seemed on its face offensive and derogatory. *Id.*. Shan responded, "blowing the motherf***er up." *Id.* Further, in response to the initial original Verified Complaint, Shan and Nguyen, "consistent with their regular practice of forging documents to numerous government agencies," also forged her name to documents that she did not sign and then attached them to their answers in this matter. First Am. Verified Compl. ¶¶ 47-49.

Shan and Nguyen are also likely to take steps to remove their assets from the reach of Folium if Ramos had been required to wait thirty days after receiving notice of the lawsuit. First Am. Verified Compl. ¶ 32. On August 9, 2019, undersigned counsel made a demand on the company, Shan, and Nguyen on behalf of another former

6

employee, Dale Takio. First Am. Verified Compl. ¶ 29. The demand identified some of the same allegations in Ramos's Complaint relating to Shan and Nguyen's self-dealing. *Id.* On the first business day after receiving the Takio demand, Shan transferred title to his house (assessed at over $1.5 million) to a limited liability company called "Motu LLC" for no value. First Am. Verified Compl. ¶ 32. Further, rather than investigate the allegations in the Takio demand, the Company responded by filing a complaint against Mr. Takio on August 20, 2019. (The parties are currently litigating in state court.) First Am. Verified Compl. ¶ 29.

Shortly before filing the original Verified Complaint, on November 18, 2019, Ramos made a demand on Folium to bring suit against Shan and Nguyen by sending copies of a letter and the unfiled original Verified Complaint via email and Federal Express to Folium's outside and in-house counsel. First Am. Verified Compl. ¶ 24.

With all inferences construed in favor of Ramos, if she had waited for thirty days after making the demand, it is clear that Shan and Nguyen would have used that time to engage in additional illegal activity, taken steps to cover up their illegal conduct (such as by forging yet more documents and/or stealing yet more from the company), transferred assets, and possibly even caused physical harm to Ramos to prevent her from bringing suit and exposing Shan and Nguyen's misdeeds.

## II.  The Magistrate Incorrectly Found That Ramos Was Required to Wait Thirty Days Before Filing a Demand.

As the Magistrate noted, the section of the Colorado Limited Liability Corporate Act (the "Colorado LLC Act") relating to a derivative demand, C.R.S. § 7-80-714, provides the following:

> (1) No member shall commence a derivative proceeding pursuant to this part 7 unless:
>
>> (a) A written demand has been made upon the limited liability company to take suitable action; and
>>
>> (b) Thirty days have expired from the date the demand was made; except that the thirty-day limitation shall not be required where:
>>
>>> (I) The member has been notified prior to the expiration of the thirty-day period that the demand has been rejected by the limited liability company; or
>>>
>>> (II) Irreparable injury to the limited liability company would result from waiting for the expiration of the thirty-day period.

The Magistrate overlooked that there is another provision in the Colorado LLC Act that is relevant to the issues here. Specifically, C.R.S. section 7-80-109 provides, "[t]he rule that statutes in derogation of the common law are to be strictly construed shall have no application to this article."

Under the statute and under common law, there are three exceptions to the thirty-day waiting period following the demand: irreparable injury, futility, and rejection of prior demand. Ramos has pleaded sufficient facts, taken as true and with all inferences to be drawn in her favor, that she has met all three exceptions and accordingly the Magistrate's recommendation is in error.

### A. Ramos Alleged Irreparable Injury to the Company.

Even though, as the Magistrate noted, there is little law (and none in Colorado) as to what constitutes "irreparable injury" for the purposes of C.R.S. § 7-80-714(1)(b)(II) exception, Ramos has alleged that there would be such injury if she gave Shan and Nguyen thirty days' notice before she filed suit. However, the overwhelming case law

supports that a corporation suffers "irreparable injury" when its management is shown to be engaging in continuing illegal conduct, such as RICO violations, embezzlement, and dissipation of assets—all of which were alleged by Ramos. *See, e.g.*, *CitiMortgage, Inc. v. Sellors,* No. 15-cv-1870 (PJS/TNL), 2017 U.S. Dist. LEXIS 205694, *30 (D. Minn. Nov. 21, 2017) (holding that plaintiff demonstrated irreparable injury when it demonstrated ongoing RICO violations); *Environmental Servs. v. Recycle Green Servs.,* 7 F. Supp. 3d 260, 280 (E.D.N.Y 2014) (holding that plaintiffs showed "irreparable harm," even where they filed the complaint in August 2013 and knew about the defendant's theft since 2011, where the facts supported that defendant's theft was continuing through the date of the filing of the complaint); *Chevron Corp. v. Donziger,* 974 F. Supp. 2d 362, 636 (S.D.N.Y. 2014) (finding irreparable injury from defendants' RICO violations due to continuing fraud); *Andrews v. Holloway,* No. 95-1047 (JBS), 1995 U.S. Dist. LEXIS 22121, *29 (D.N.J. Nov. 9, 1995) (finding irreparable harm when defendants were dissipating assets pending judgment); *A.T.N. Indus. v. Gross,* No. 4:14-cv-02473, 2014 U.S. Dist. LEXIS 200662, *61 (S.D. Tex. Nov. 26, 2014) (finding irreparable harm where defendants were dissipating assets in advance of a RICO action); *Lewis v. Lhu,* 696 F. Supp. 723, 729 (D.D.C 1988) (holding that Plaintiff established irreparable harm through a continuing pattern of fraudulent conduct that caused and would continue to cause irreparable harm).

The Magistrate found that "Plaintiff fails to explain how these allegations demonstrate irreparable injury to *Folium*," as opposed to herself. Recommendation at 14. To the contrary, Ramos explained how these criminal activities affected both her

9

*and* Folium. Folium would suffer irreparable injury if Ramos had to wait for thirty days to file because Shan and Nguyen would do whatever they could to cover their tracks (including without limitation burning down the business, looting the company's coffers, forging documents, and transferring their assets so as to hinder any recovery that Folium might obtain). Ramos clearly alleged that these injuries would be irreparable to both Ramos *and* Folium, as a corporate entity.

The injuries are not speculative: Ramos pleaded dozens of factual allegations providing specifics as to how the criminal acts were continuing, the ways in which Shan and Nguyen were harming the company, and the harm that would befall her *and* the company if she were not allowed to file immediately after making the demand. Ramos did not file for a preliminary injunction—it is difficult to demonstrate likelihood of success when the evidence is largely in the hands of Defendants—but Ramos did not need to file or prevail on a preliminary injunction motion to demonstrate "irreparable injury" under the statute. The immediate filing after a demand helped ameliorate the harms that would come from allowing Shan and Nguyen to take advantage of a thirty-day preview of these allegations, namely, by making the allegations known to investors, other members, counsel, the Court, and the public before documents could be forged, funds embezzled and witnesses (and Ms. Ramos) silenced.

The Magistrate found dispositive that Ramos did not immediately bring suit after she was terminated. Recommendation at 14. The Magistrate ignored the dozens of allegations in the Complaint about continuing misconduct, much of which did not begin until *after* Ramos left, including when Shan and Nguyen directed that Folium open a

new unlicensed extraction factory in September 2018; embezzled millions of dollars to themselves in unearned distributions in 2019; and fraudulently transferred assets to themselves right before this lawsuit was filed. The information comes from Ramos' post-employment investigation and investigation of undersigned counsel. The Magistrate is, in effect, blaming the victim: Ramos can hardly be faulted for not immediately filing a derivative complaint after being threatened by management, when the stakes were life and death.[1]

At bottom, the Magistrate did not construe all inferences in Ramos' favor, as required under a Rule 12(b)(6) Motion. *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019). In a case decided under a similar Pennsylvania law, the US Court of Appeals for the Third Circuit reversed a dismissal of a derivative claim because the allegations in the complaint were sufficient to meet the "irreparable harm" standard for excusing demand. *See Warden v. McLelland*, 288 F.3d 105 (3rd Cir. 2002). The Court ruled that the derivative plaintiffs sufficiently alleged "irreparable injury" to the corporation and were not required to file a pre-suit demand based on the allegation that defendants would have performed a "squeeze out" merger intended to deprive plaintiff of standing to bring the derivative claims on behalf of the company. *Id.* at 111 ("Although the complaint lacks specificity, . . . . [f]or purposes of a Rule 12(b)(6) motion, these allegations are sufficient.").

---

[1] Although it is not in the Complaint, Ramos promptly alerted the Colorado Springs police and other authorities after leaving Folium.

11

Ramos' allegations of irreparable injury are several measures more specific than those in *Warden* and detail the harm she would suffer if she were required to wait for thirty days, all while Shan and Nguyen would be planning—and executing—their next criminal acts. Accordingly, Ramos sufficiently pleaded irreparable injury under rule 12(b)(6), and the waiting period should have been excused.

**B. Ramos Alleged Futility of Demand.**

Ramos alleged, with specificity, the futility of making a demand on Shan and Nguyen, as they dominate Folium's management and control a majority membership interest in the company. *E.g.*, First Am. Verified Compl. ¶ 26. The Magistrate acknowledged that futility excuses demand in the context of a demand on a corporation, but recommended dismissing Ramos' derivative claims because the Colorado LLC Act, C.R.S. § 7-80-714, did not identify futility as an exception to the thirty-day waiting period. Recommendation at 16.

The Magistrate ignored that common law doctrine was not displaced by the Colorado LLC Act, per C.R.S. § 7-80-109. That is, the exceptions to the demand requirement that are found in common law are *not* displaced by the enactment of the Colorado LLC Act—and futility is a common law excuse for relief from the demand waiting requirement. *See, e.g.*, *Bell v. Arnold*, 175 Colo. 277, 487 P.2d 545, 547 (Colo. 1971)).

Although the Colorado Supreme Court has not addressed this issue, the Virginia Supreme Court considered an identical exception to a waiting period in the corresponding Virginia statute (except requiring ninety days rather than thirty days from

demand) and ruled that LLC members were excused from filing a demand on the company if such demand were futile. *See Davis v. MKR Dev't, LLC*, 814 S.E.2d 179 (Va. 2018). Just as the Colorado legislature did not displace existing law with the Colorado LLC Act, the Virginia legislature incorporated "principles of law and equity" into its version of the LLC Act. *Id.* at 112. Thus, the futility exception to demand was incorporated by reference, even if it was not specified in the statute as an exception to the demand requirement. *Id.*

The same analysis should apply here. In C.R.S. § 7-80-109, the Colorado legislature specified that Colorado common law doctrine, such as the doctrine excusing demand when it would be futile, would not be displaced by the Colorado LLC Act. Common law doctrine survives and so too does the futility exception to demand. Ramos has alleged futility of demand and her derivative claims should thus survive the Motion to Dismiss.

### C. A Prior Demand Was Rejected.

The Magistrate also found that Folium's rejection of the prior demand by Dale Takio concerning similar subjects was insufficient to satisfy the exception to the waiting period set forth in C.R.S.§ 7-80-714(1)(b)(I). The Magistrate found that the demand at issue must have been made by Ramos, not another former employee. Recommendation at 15.

This interpretation unduly restricts the statutory exception to the waiting period. C.R.S.§ 7-80-714(1)(a) provides only that a "demand" be made, *not* that it be made by the member filing suit. C.R.S.§ 7-80-714(1)(b)(I) provides that a member need not wait

13

thirty days to file suit after that demand has been made if "[t]he member has been notified prior to the expiration of the thirty-day period that the demand has been rejected by the limited liability company."

The statute does not specify in either C.R.S.§ 7-80-714(1) (a) or (b) that the demand has to be the demand *of that member*. Interpreting the statute in this manner would require replacing the word "the" before "demand" with "his" or "her." The statute does not specify who had to make the demand, just that the member be aware that it was denied. The purpose of the demand requirement was to provide notice to the corporate entity so it could evaluate an action, and that has been accomplished so long as a demand was made, regardless of who made it. Demand was thus excused since it had already been made by another member.

### III. The Magistrate Incorrectly Recommended Dismissal of the Derivative Claims with Prejudice.

The Magistrate was also incorrect in recommending a dismissal with prejudice. Dismissal of a derivative claim for failure to make a proper demand is not with prejudice as to the substance of the claims or to further demands from Ramos or other members. *See Pisnoy v. Ahmed (In re Sonus Networks, Inc.)*, 499 F.3d 47, 59-60 (1st Cir. 2007*); see also Gubricky v. Ells*, 255 F. Supp. 3d 1119, 1122 (D. Colo. 2017) (dismissing case for failure to make a demand without prejudice, and allowing new demand to be made).

Here, as in *Gubricky*, if the Court ultimately determines that the filing was improper before thirty days had elapsed (and it should not reach that conclusion) then the appropriate course of action is to allow Ramos to file a new demand and allow the suit to proceed if she satisfies the requirements of the Colorado LLC Act and common

law. Ramos' overlapping direct claims are proceeding through discovery. Moreover, as Ramos explained in her Opposition, she discovered new information that would allow her to file a new claim as to misconduct that was not identified in her prior demand, specifically information relating to the misuse of investor funds. Accordingly, this Court should decline to accept the Magistrate's recommendation prohibiting Ramos from filing a new demand or repleading, if necessary.

## CONCLUSION

For the reasons stated herein, the Court should sustain Ramos' Objections, overrule the Magistrate in part, and deny the Motion to dismiss her derivative claims against Folium.

Dated this 10th day of September, 2020.

Respectfully submitted,

FORTIS LAW PARTNERS, LLC

_s/David F. Olsky_
Henry M. Baskerville, Atty. Reg. #49431
David F. Olsky, Atty Reg. #46694
1900 Wazee Street, Suite 300
Denver, CO 80202
Phone Number: (303) 565-8066
Fax Number: (303) 295-9701
hbaskerville@fortislawpartners.com
dolsky@fortislawpartners.com

*Attorneys for Plaintiff/Counterclaim-Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, I electronically filed the foregoing **PLAINTIFF JUANITA RAMOS' OBJECTIONS TO THE MAGISTRATE JUDGE'S RECOMMENDATION, DATED AUGUST 27, 2020** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Perry R. Sanders Jr.
Justin T. Bailey
Sanders Law Firm
31 N. Tejon, Suite 400
Colorado Springs, CO 80903
PRSanders@PerrySandersLaw.com
perry@scclaw.net
justin@perrysanderslaw.com
*Attorneys for Defendants/Counterclaim-Plaintiffs*

                                              *s/Nicole Vanhooser*
                                              Nicole Vanhooser
                                              FORTIS LAW PARTNERS LLC