IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–03268–CMA–KMT

JUANITA RAMOS,

    Plaintiff/Counter-Defendant,

v.

WHOLE HEMP COMPANY LLC d/b/a FOLIUM BIOSCIENCES,
FOLIUM EQUITY HOLDING LLC,
KASHIF SHAN, and
QUAN NGUYEN,

    Defendants/Counter-Claimants.

## ORDER

This matter is before the court on 'Plaintiff/Counterclaim-Defendant Juanita Ramos's Motion to Compel Production of Documents Responsive to Her First Requests for Production," filed on July 23, 2020. [("Motion"), Doc. No. 49.] "Defendants' Opposition to Plaintiff Ramos' Motion to Compel," was filed on August 13, 2020, and "Plaintiff Juanita Ramos's Reply in Further Support of Her Motion to Compel Production of Documents Responsive to her First Requests for Production," was filed on August 27, 2020. [("Response"), Doc. No. 52; ("Reply"), Doc. No. 56.]

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) provides, as follows:

> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.* Although the Rule is broad, discovery is not without limits; irrelevant information remains undiscoverable. *Greene v. Raymond*, 41 F.R.D. 11, 13-14 (D. Colo. 1966). A party "may not use discovery as a fishing expedition," and courts have broad discretion to supervise discovery to ensure discovery requests are reasonable in scope and relevance. *Anthony v. United States*, 667 F.2d 870, 880 (10th Cir. 1981); *Greene*, 41 F.R.D. at 13-15.

Relevance, of course, has never been the only consideration under Rule 26. Courts must also look at other factors to determine whether requested discovery is proportional to a party's needs, including the importance of the information to the issues presented by the case, the relative access to information by the parties, and whether the burden or expense of the discovery outweighs the benefit. *Pertile v. Gen. Motors, LLC*, No. 15-cv-00518-WJM-NYW, 2016 WL 1059450, at *3 (D. Colo. Mar. 17, 2016); *see In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1184 (10th Cir. 2009) (observing, under the former Rule 26(b)(1), that all discovery was subject to the limitations of Rule 26(b)(2)(iii) that considered proportionality).

The Advisory Committee Notes to the 2015 Amendment to Rule 26 observed that "the change [in the Rule] does not place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26; *see also Rezaq v. Nalley*, 264 F.R.D. 653, 656 (D. Colo. 2010). When the discovery sought appears to be relevant, the party resisting the

discovery has the burden to establish the lack of relevancy by demonstrating, either that the discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004).

## ANALYSIS

Plaintiff, individually,[1] brings eight claims for relief in her Amended Complaint, including: violations of RICO, COCCA and breach of fiduciary duty against Kashif Shan ("Shan") and Quan Nguyen ("Nguyen"); violation of the federal Wiretapping Act, breach of contract and 'accounting and member communications' violations against Shan, Nguyen and Whole Hemp Company LLC d/b/a Folium Biosciences ("Folium"); judicial dissolution against Folium; and, declaratory judgment against Shan, Nguyen, Folium and Folium Equity Holding. [("Amended Complaint"), Doc. No. 31.]  Given the unlikely prospect of Plaintiff succeeding

---

[1] Ramos's derivative claims have been dismissed.  [*See* Doc. No. 59.]  The individual defendants, Kashif Shan and Quan Nguyen, did not file a Rule 12 motion, however the court notes that in the Tenth Circuit, a shareholder lacks standing to assert RICO claims where the alleged harm is derivative of harm to the corporation. *Niemi v. Lasshofer*, 728 F.3d 1252, 1260 (10th Cir. 2013) ("Colorado courts interpreting COCCA look to federal RICO law for guidance" and "it's long-settled law that a shareholder or guarantor lacks standing to assert RICO claims when their losses are only derivative of a corporation's—when the individuals' losses come about only because of the firm's loss."); *accord Bixler v. Fister,* 596 F.3d 751, 758-59 (10th Cir. 2010) (collecting cases). "An exception to this rule 'allows a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated.'"  *Bixler*, 596 F.3d at 757 (quoting *Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990)); *see Loncar v. W. Peak, LLC*, No. 08-cv-01592-PAB-CBS, 2010 WL 965519, at *3 n.2 (D. Colo. Mar. 15, 2010) (applying the direct injury exception to RICO claims brought by an LLC member).  Thus, for purposes of establishing RICO standing, Plaintiff must show a direct injury to her business or property that is distinct from any injury to Folium.  The Amended Complaint here does not appear to allege such distinct injury.

with RICO or COCCA claims against Shan and Nguyen, the court weighs the relevance of the discovery Plaintiff seeks to compel, primarily against the elements and proof required as to the remaining six claims.

Plaintiff asserts that Defendants have failed to produce, or have inadequately produced, documents in response to "Plaintiff Juanita Ramos's First Set of Requests for Production of Documents;" specifically, numbers 7, 10, 15, 20 and 25. [Doc. No. 50-1.]

**Request For Production No. 7: Produce all Documents related to Hemp Purchases from April 1, 2017 to the Present, including without limitation any Hemp Purchases in Colorado or Kentucky, the transportation of Hemp Biomass to Colorado, and the subsequent extraction.**

Folium is in the business of producing, manufacturing, and distributing bulk cannabinoid extracts derived from hemp. [Am. Compl. ¶ 2.] Notwithstanding that the parties dispute the meaning of "Hemp Biomass," it is facially obvious that Folium needs to obtain hemp in order to manufacture its CBD products; hemp is the base upon which everything else is built. Since all product production (including the extraction process), manufacturing, and distributing begins with hemp, the request for documents is overbroad.

In the Amended Complaint, Plaintiff alleges that, on at least two occasions, the Defendants purchased illegal hemp outside Colorado. The first instance was a purchase in California, which was transported to Colorado, and the second was a purchase of hemp in Kentucky, which was transported to Colorado. [Am. Compl. ¶¶ 73-75.] Plaintiff argues, in her briefing, that Request No. 7 actually only seeks documents about "Hemp Purchases," which "are at the heart of the request relate to Hemp Biomass that they purchased somewhere other than the usual supply chain, typically from out of state." [Reply 5.] Further, Plaintiff states that she is only seeking information about the purchase of hemp from third parties, apparently meaning

4

hemp sellers, who Defendants neither own, nor "control." [Mot. 10.] Perhaps, if Plaintiff had actually requested the information she really seeks, there would have been no objection. But the request, as it stands, seeks information about all purchases of hemp from any source located anywhere, including Colorado, without reference to any illegal or improper activity. The request is overbroad.

The request to compel a response to Request for Production No. 7 is, therefore, denied.

**Request For Production No. 10: Produce all Documents related to the activities, operations, and/or business that occurred at 20094 Highway 50, Rocky Ford, Colorado 81067, from April 1, 2017 to the present.**

Plaintiff alleges that this information is relevant to her breach of fiduciary duty claim.[2] The Amended Complaint alleges that, as a result of its CBD extraction facility in Colorado Springs being closed by the COS Fire Department, Folium moved its extraction operations to a building on a farm owned by a family member in Rocky Ford, Colorado. [Am. Compl. ¶¶ 79-80.] Plaintiff alleges that Folium does not have a license to extract CBD from hemp at any facility located on the particular farm in Rocky Ford, Colorado. [*Id*. at ¶ 82.] She also alleges that this same facility in Rocky Ford does not have proper permits to allow hemp extraction. [*Id*. at ¶ 83.] Plaintiff concludes that "Folium for months has thus been engaged in illegal extraction and manufacturing of CBD products." [*Id*. at ¶ 84.] Apparently, since this would, in Plaintiff's estimation, be illegal conduct, these activities could result in her alleged 1% holding[3] being devalued. [*Id*. at ¶¶ 146, 154.] If limited to seeking information about operations which only

---

[2] Plaintiff also alleges that running an unlicensed extraction facility is a predicate act for her RICO and COCCA claims. The court is unimpressed with this argument for reasons set forth *supra.* [*See* fn.1.]

[3] Defendants dispute that Plaintiff has any equity standing in Folium, or Folium entities.

involved the extraction and physical manufacture of cannabinoid products, the request is relevant to the claims.

The motion to produce documents to a <u>revised</u> Request No. 10 is granted. The Revised Request No. 10 shall read, as follows:

> Produce all Documents *related to the extraction of cannabinoids from hemp and/or manufacture of cannabinoid products, including CBD oil or other extracts from hemp* that occurred at 20094 Highway 50, Rocky Ford, Colorado 81067, from April 1, 2017 to the present.

With respect to the parties' dispute over methodology for searching ESI for documents which would be responsive to this revised request, the court finds that a search for the key words Rocky Ford, the name of a city, is overly broad, and will cause a disproportionate burden on the Defendants to review the ESI prior to production. Defendant estimates that the "hits" likely to be retrieved with a search term of only "Rocky Ford" will produce at least 17,000 emails and possibly more. Plaintiff's requested search term does not consider, for instance, the extent to which Folium may have been conducting business other than the physical extraction of CBD or other substances from hemp at the location. In that event, each email or document containing a return address in Rocky Ford would be retrieved, even if the location was a business office only, or was being used to run other businesses. Obviously, to the extent legal hemp was grown on the property in Rocky Ford, these emails would likewise be retrieved. Simply searching for Rocky Ford is obviously not narrow enough to expect a relevant, reasonable return from the search. The court encourages the litigants to continue to confer about ways to further refine an ESI keyword search to a more manageable, and therefore, more proportional volume.

To the extent Plaintiff continues to insist on an ESI search for the term Rocky Ford without other sufficient modifiers, the motion is denied.

**Request For Production No. 15: Produce all documents related to customer complaints regarding the quality of the products, including the product's THC levels and the product's label, from April 2017 to the present.**

Plaintiff, prior to filing the motion, agreed to modify this request to seek only "customer complaints specifically about the THC levels in the CBD products sold by Folium." [Mot. 11.] This request is now moot, because Defendants have agreed to produce documents relevant to the request, as modified. [Resp. 11.]

**Request For Production No. 20: Produce all Documents related to the changing of the tax treatment of Folium's employees from 1099 to W-2 or from W-2 to 1099, from January 1, 2017 to the present.**

The court is as mystified as Defendants about how this request is relevant to any claims brought in this case. It is not fraud to carry an employee as a 1099 independent contractor versus a W-2 employee. Often, these are negotiated terms of employment, or of continued employment. As Plaintiff herself claims, a conversion does not defraud the IRS; it merely, *inter alia*, shifts some of the tax burden from a company and onto an employee, if allowable. [*See* Reply 7 ("Defendants are deliberately underpaying employment taxes and forcing the employee to pay the IRS *in its stead*.") (emphasis added).]

Accordingly, the motion is denied with respect to Request for Production No. 20.

**Request for Production No. 25: Produce all Documents relating to Australis Capital's decision not to proceed with the reverse merger with Folium, including documents or information produced in due diligence.**

According to the Amended Complaint, Plaintiff began working for Folium on or about April 25, 2017. [Am. Compl. ¶ 40.] Plaintiff alleges that, on or about July 28, 2017, she became a one percent equity owner of Folium. [*Id.* at ¶ 44.] Plaintiff was terminated by Folium on August 28, 2018. [*Id.* at ¶ 54.] Defendants deny that Plaintiff ever actually acquired any equity

7

interest in any Folium entity, or alternatively, that if she did, such interest did not vest because of her actions resulting in her termination from the company. [("Amended Answer"), Doc. No. 32 at ¶¶ 6, 12, 42, 57-78.][4]

Defendants counterclaim that, "partially because of Ramos' continued hostile actions towards Defendants, including the widely-disseminated baseless allegations contained in her original Complaint and Amended Complaint, Australis pulled out of [a] planned merger." [*Id.* at ¶ 24.] Defendants allege that, had the merger gone through, Australis would have invested $3 million into Folium, and Folium's members would have owned eighty-nine percent of a new company created during the merger. [*Id.*] As Counterclaimants, they seek damages from Ms. Ramos, in the amount of $19,000,000.

Clearly, the request contained in Request 25—to the extent it seeks documents wherein Australis expressed, directly or indirectly, that Ms. Ramos's actions or accusations, as contained in the pleadings, was all or part of its reasoning for not going through with the planned merger— is relevant to Ms. Ramos's defense to the counterclaims, and the damages being sought by Defendants against her. This relevance, however, does not extend to every document the Counterclaimants produced to Australis as part of the due diligence process associated with the anticipated merger.

---

[4] The counterclaims, in their entirety, repeatedly disavow any equity interest held by Plaintiff. In fact, Counterclaim 1 seeks a declaratory judgment that Plaintiff was never granted any membership interest in Folium, and Counterclaims 6 and 7 respectively seek judicial determination that Plaintiff involuntarily withdrew from membership (if any), and declaratory judgment that Plaintiff was and is expelled as a member (if she ever was a member).

Plaintiff, in both the Motion and Reply, argues that she is seeking documents only relating to Australis Capital's decision, in the end, not to go forward with the merger with Folium. Plaintiff alleges that Australis Capital

> explained it decided not to proceed based on newly discovered information, which apparently also resulted in the termination of its CFO. Indeed, after the Motion was filed, the Australis Capital CEO, Scott Dowty was quoted by a reporter confirming that Australis pulled out of the merger because "we were duped!"

[Reply 8-9.]

The court agrees that the limitation more expansively explained by Plaintiff in the Reply is a reasonable interpretation of the request, if the phrase "including documents or information produced in due diligence" is eliminated.

The motion to produce documents to a revised Request No. 25 is granted. The Revised Request No. 25 shall read as follows:

> Produce all Documents relating to Australis Capital's *expressed, directly or indirectly,* decision not to proceed with the reverse merger with Folium.

For the foregoing reasons, it is

> **ORDERED** that

9

    1)  Plaintiff/Counterclaim-Defendant Juanita Ramos's Motion to Compel Production of Documents Responsive to Her First Requests for Production" [Doc. No. 49] is **GRANTED IN PART AND DENIED IN PART**.

    2)  Documents compelled by this Order will be produced by the Defendants **on or before October 20, 2020.**

    Dated October 6, 2020.

BY THE COURT:

_____
Kathleen M Tafoya
United States Magistrate Judge